ROBERT J. MAYNES, ISB No. 6905
*Attorney at Law*
P. O. Box 3005
Idaho Falls, ID 83405
Telephone: (208) 552-6442
Facsimile: (208) 522-1334
Email: mayneslaw@hotmail.com

*Debtor's counsel*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 10-40743 JDP |
| LEED CORPORATION (THE), | Chapter 11 |
| Debtor. | |

## MOTION FOR AUTHORITY TO INCUR SECURED CREDIT
## 11 USC § 364(c) and (d)

COME NOW the Debtor and Debtor-in-possession (*Debtor*) and hereby moves this Court for an order authorizing the Debtor to enter into the secured transaction hereafter described pursuant to 11 U.S.C. §364(c) and (d). This Motion is based upon the following additional information:

1.      DEBTOR.  Debtor is real estate developer, including construction and land development, as well as landscaping and related care and maintenance in southern Idaho, primarily based out of Shoshone, Idaho.  It has been in construction since 1991 and has successfully completed over one thousand landscaping projects.  The Debtor has built over fifty-five new residential homes and remodeled numerous homes in the Magic Valley and Shoshone areas.   To date, the Debtor has developed three popular subdivisions:  Desert Rose Estates, Riverview Estates and Old Shoshone Ranch Estates. The Debtor filed its petition under Chapter 11 of Title 11 of the Bankruptcy Code on

April 29, 2010, and continues in possession of its property and operation of its business as debtor in possession.

2.      In 2009, the Debtor was unable to complete fifteen residential properties which are the subject of this motion, due to the conduct of CL& M and its related lenders for which CL&M was the loan servicer.  CL&M was the loan servicer on the initial loans used to acquire these 15 homes; however, in the fall of 2009 CL&M failed to fund the required construction loan draws.   The Debtor subsequently discovered and understands/believes that CL&M and its principals were under investigation by the U.S. Department of Justice and related departments/bureaus for a number of fraudulent activities, including mail fraud and for participating in an alleged *Ponzi* scheme.  As a result of the financial artifices being used by CL&M and related entities, involuntary bankruptcy petitions were filed in the District of New Hampshire against CL&M and its related entities and principals, *see e.g.* Case No. 09-14566 JMD and consolidated cases. CL&M's failure to fund the Debtor's ongoing construction of these 15 homes, contrary to the related loan documents and contrary to representations made by CL&M and related entities resulted in the Debtor's short term cash flow difficulties and ultimately, in the Debtor's emergency chapter 11 petition.

3.      The Debtor is unable to obtain credit (except as hereinafter set forth) for its construction business operations for the forthcoming six months.

4.      The Debtor proposes to enter into the following secured transaction:

a.      Lender/Creditor:  Granite Loan Funding, LLC, a Utah limited liability company (*Granite*), and/or some other provider;

b.      Amount of Line of Credit:  Not to exceed $750,000.00 (*Granite credit facility*);

c.      Purpose:   To complete construction on partially built new residential housing on a revolving basis;

d.      Interest Rate/Credit Terms:  Fourteen percent (14%) per annum. Additionally, Debtor shall pay the following closing costs: 10 points (50,000.00), plus $10,000.00 to cover legal work on the closing documents, inspection fee and miscellaneous charges, 6-months pre-paid interest (44,800.00) resulting in a net loan amount of $500,000.00—in other words, these charges will be paid through the loan;

e.      Date of Repayment:  6 months from initial disbursement date, i.e. March 31, 2011; however, in the event there are no defaults the term may be extended for two (2) additional six-month (6-month) terms.   Amounts directly attributable to completed homes sold by the Debtor shall be repaid at closing;

f.      Collateral:

i.    A first priority lien hold position, on all real property lots improved/completed with the *Granite credit facility*.  **The *Granite credit facility* shall prime the existing liens and/or security interests of secured creditors who are not parties to this agreement.  This provision is contained in Appendix I(b)(5) of the Local Bankruptcy Rules**; and

ii.    Non-estate property as collateral:  None, but Debtor's President shall execute a personal guaranty of the *Granite credit facility*.

g.      Estimated Fair Market Value of Collateral Pledged:

| Property Address: | Estimated FMV | Estimated Completion FMV | Costs of Completion | Liens | Estimated Equity Upon Completion |
|---|---|---|---|---|---|
| | | | | | |

| | | | | | TBD |
|---|---|---|---|---|---|
| lot 12j 412 N. Birch 4bdr 2 bath | $50,000.00 | $290,000.00 | $118,180.00 | $215,000.00 | |
| lot 13j 410 N. Birch 4bdr 2bath | $50,000.00 | $290,000.00 | $120,070.00 | $215,000.00 | TBD |
| lot 16j 402 N. Birch 4bdr 2 bath | $90,000.00 | $290,000.00 | $104,245.00 | $215,000.00 | TBD |
| lot 1j 210 W. 4th 4bdr 2 bath | $90,000.00 | $290,000.00 | $105,275.00 | $215,000.00 | TBD |
| lot 6j 413 N. Apple 4bdr 2 bath | $140,000.00 | $292,000.00 | $54,285.00 | $215,000.00 | TBD |
| lot 8j 415 N. Apple 4bdr 2 bath | $100,000.00 | $292,000.00 | $59,285.00 | $215,000.00 | TBD |
| lot 2a 501 N. Apple 4bdr 2 bath | $110,000.00 | $290,000.00 | $69,285.00 | $215,000.00 | TBD |
| lot 4 a 505 N. Apple 4bdr 2 bath | $105,000.00 | $290,000.00 | $88,450.00 | $215,000.00 | TBD |
| lot 5 a 509 N. Apple 4bdr 2 bath | $80,000.00 | $292,000.00 | $94,165.00 | $215,000.00 | TBD |
| lot 7a 515 N. Apple 4bdr 2 bath | $60,000.00 | $290,000.00 | $109,180.00 | $215,000.00 | TBD |
| lot 9a 519 N. Apple 4bdr 2 bath | $60,000.00 | $292,000.00 | $122,250.00 | $215,000.00 | TBD |
| lot 19,20,21  504 Carmen St 4bdr 2 bath | $70,000.00 | $300,000.00 | $127,885.00 | $275,000.00 | TBD |
| lot 15 187 East Eric Road 4bdr 2 bath | $40,000.00 | $312,000.00 | $130,985.00 | $275,000.00 | TBD |
| lot 24 144 E. 420 N. Northview subd 4bdr 2 bath | $30,000.00 | $320,000.00 | $130,185.00 | $271,000.00 | TBD |

**NOTE:**  The above stated "Liens" category includes all known liens, including the initial construction loans as well as mechanics/materialmen liens, many of which are the subject of a bona fide dispute.  Specifically, the Debtor maintains that the liens held by the CL&M serviced loans (i.e. the primary construction loans in the face amount of $180,000.00 in each instance) are subject to this estate's claims under section 510(c).

Further, the Debtor is currently negotiating resolution of these claims and possible assignment of the respective notes with the New Hampshire Bankruptcy Trustee to this estate.  To the extent any liens may be avoided 11 U.S.C. § 551 is implicated and similarly any assignment of notes to this estate would preserve senior lien hold positions for the benefit of this estate.  Upon completion above referenced properties, the Debtor anticipates selling the same pursuant to 11 U.S.C. § 363(f), with the respective liens to attach to the proceeds for subsequent determination as to validity, priority and/or extent of such liens; however § 363(f) relief is not being requested as a part of this Motion.

  h.  Other parties claiming an interest in the collateral:

| Party | Asserted Interest |
|---|---|
| AAA Rental Service Co. | Mechanic's lien for $4,546.80 on Lots 5a, 7a and 9a |

| | |
|---|---|
| Agundez Concrete | Mechanic's liens for an aggregate $10,140.50 on Lots 12j, 13j, 16j, 15 and 24 |
| BFH 2009 Realty Trust<br>Steven M. Notinger, chapter 7 trustee (NH) | DOT and Note for $180,000.00 on Lots 19, 20 and 21 |
| BZ 2009 Realty Trust<br>Steven M. Notinger, chapter 7 trustee (NH) | DOT and Note for $180,000.00 on Lot 2a |
| David and Martha Orr | TBD |
| Franklin Building Supply | All of the above referenced lots in the aggregate amount of $170,042.17 |
| Greatland Project Development<br>Steven M. Notinger, chapter 7 trustee (NH) | DOTs and Notes for $180,000.00 each respectively on Lots 5a and 7a |
| Idaho Department of Labor | TBD |
| Idaho State Tax Commission | TBD |
| Internal Revenue Service | TBD |
| John Deere Landscapes | Mechanic's liens in an amount TBD |
| JP 2009 Realty Trust<br>Steven M. Notinger, chapter 7 trustee (NH) | DOT and Note for $180,000.00 on Lot 13j |
| Keith Thomas | DOT and Note in an amount TBD |
| Lincoln County Tax Collector | Statutory lien – TBD |
| Lou Gargasz | DOT and Note for $180,000.00 on Lot 12j |
| MCM Drywall | Mechanic's liens in an amount TBD |
| MGZ 2009 Realty Trust<br>Steven M. Notinger, chapter 7 trustee (NH) | DOT and Note for $180,000.00 on lot 16j |
| MSCRN 2009 Realty Trust<br>Steven M. Notinger, chapter 7 | DOT and Note for $180,000.00 on Lot 24 |

| trustee (NH) | |
|---|---|
| Nathan Bachman | TBD |
| Quality Truss | Mechanic's liens in an amount TBD |
| Richard M. Frucci Trust | DOT and Note for $180,000.00 on Lot 6j |
| Richard N. Krauth | DOT and Note for $180,000.00 on Lot 4a |
| RMBZ 2009 Realty Trust Steven M. Notinger, chapter 7 trustee (NH) | DOT and Note for $180,000.00 on Lot 9a |
| SGSB 2009 Realty Trust Steven M. Notinger, chapter 7 trustee (NH) | DOT and Note for $180,000.00 on Lot 1j |
| Spruce Mountain Associates, LLC | DOT and Not for $180,000.00 on Lot 15 |
| Timberline Exteriors, LLC | Mechanic's liens in an amount TBD |
| Vargas Roofing | Mechanic's liens in an amount TBD |
| WHRS 2009 Realty Trust Steven M. Notinger, chapter 7 trustee (NH) | DOT and Note for $180,000.00 on Lot 8j |

      i.     Relationship with Debtor/Debtor's principals:  None.  Proposed lender has no existing relationship with the Debtor or the Debtor's principals.

      5.     Debtor requests that each of the existing liens on the collateral be subordinated to *Granite*'s (or some other provider's) first priority lien hold position.  **The *Granite credit facility* shall prime the existing liens and/or security interests of secured creditors who are not parties to this agreement.  This provision is contained in Appendix I(b)(5) of the Local Bankruptcy Rules**

      6.     A line item budget of projected income and expenses for the next six months is attached hereto as Exhibit "1" and by reference made a part hereof as though

fully set forth herein.  Copies of the Line of Credit Agreement; Secured Promissory Note;

Development Loan Deed of Trust, Assignment of Rents and Leases, Security Agreement

and Fixture Filing; and Guaranty;  are attached hereto as Exhibit "2".

WHEREFORE, Debtor prays for authorization from this Court to enter into the

transaction described above, and to grant to Granite Loan Funding, LLC and/or some

other provider a first lien hold position, security interest in Debtor's real property

improved with funds from the *Granite credit facility*, which security interest shall be

superior to all other liens and encumbrances, and for such other relief as the Court deems

just.

DATED:        August 4, 2010

*/s/ Robert J. Maynes*_____
ROBERT J. MAYNES
Debtor's Counsel

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 4, 2010, I filed a copy of the attached MOTION FOR AUTHORITY TO INCUR SECURED CREDIT 11 USC § 364(c) and (d) with the Court via CM/ECF and the following parties are reflected as receiving the Notice of Electronic Filing as CM/ECF Registered Participants:

PARTIES SERVED:

Thomas Timbridge Bassett on behalf of Creditor Montrose Investments, LLC and Creditor Premier Financial Company
tom.bassett@klgates.com, pam.miller@klgates.com

Craig W Christensen on behalf of Creditor Farm Bureau Finance Company
cwcc@ida.net

David A Coleman on behalf of Creditor Robert and Kathi Meyers
davidacoleman@msn.com

Samuel A Diddle on behalf of Creditor Franklin Building Supply Co., Inc.
sdiddle@eberle.com, tsmith@eberle.com

Lane V Erickson on behalf of Creditor Timberline Exteriors, LLC
lve@racinelaw.net, ltz@racinelaw.net;fullerandcarr@ida.net

Charles W Fawcett on behalf of Creditor John Deere Landscapes, Inc.
cfawcett@skinnerfawcett.com

Kent A Higgins on behalf of Creditor Security Financial Funds LLC
khiggins@merrillandmerrill.com

R Ron Kerl on behalf of Creditor Deere & Company
Ron@cooper-larsen.com, jamieb@cooper-larsen.com

Mary P Kimmel on behalf of U.S. Trustee US Trustee
mary.p.kimmel@usdoj.gov

Jeffrey E Rolig on behalf of Creditor Jeffrey Quality Truss & Lumber, Inc.
jrolig@roliglaw.com

Peter J Salmon on behalf of Creditor GMAC MORTGAGE, LLC
ecfidb@piteduncan.com

US Trustee
ustp.region18.bs.ecf@usdoj.gov

Jeffrey M Wilson on behalf of Creditor Wells Fargo Dealer Services and Creditor 21st Mortgage
jeff@wilsonmccoll.com, cindy@wilsonmccoll.com

Richard J Worst on behalf of Creditor Agundez Concrete, Inc.
rjw@magicvalleylaw.com

MOTION FOR AUTHORITY TO INCUR
SECURED DEBT                                        8

I HEREBY CERTIFY FURTHER that on August 4, 2010, I served a copy of the above referenced pleading(s) on the following parties via postage prepaid, first class, U.S. Mail:

PARTIES SERVED:

Almer Huntley, Jr.
ASH International, Ltd.
2721 S. 900 E.
Hagerman, ID 83332
*Committee Member*

Kent McBride
Sun Valley Properties
204 N. Greenwood
Shoshone, ID 83352
*Committee Member*

Internal Revenue Service
Attn: Norma Marroquin
550 W. Fort St., Suite 300
Boise, ID 83724-0101

Dale H. Sluder
Central Idaho Construction Co.
P.O. Box 793
Shoshone, ID 83352
*Committee Member*

Mitch Campbell, individually and
dba Avauntae Property Management
P.O. Box 1785
Twin Falls, ID 83303
*2002(g) RFN*

Idaho Department of Labor
Lisa Johnson, Bankruptcy Specialist
317 W. Main Street
Boise, ID 83735

Louis Gargasz
c/o Kristen H.Sheppe, Esq.
Sheehan, Phinney, Bass & Green, PA
P.O. Box 3701
Manchester, NH 03105-3701

Louis Gargasz
P.O. Box 1223
Hollis, NH 03049-1223

Idaho State Tax Commission
Carolyn Kaas, Bankruptcy Supervisor
P.O. Box 36
Boise, ID 83722-0410

Richard Krauth
109 Retreat Point
Peachtree City, GA 30269-1439

Spruce Mountain Associates, LLC
Anne Peterson, RA
28 Peabody Row
Londonderry, NH 03053

Keith Thomas
3215 Ancoats
Douglasville, GA 30135
*Address Correction Requested*

Richard M. Frucci Trust
c/o Richard Frucci
P.O. Box 549
Mirror Lake, NH 03853-0549

AAA Rental & Service Co.
Attn: Todd Molitor, Pres.
P.O. Box 714
Jerome, ID 83338

Cathy Gilbert
Lincoln County Tax Collector
111 West B Street, Suite T
Shoshone, Idaho 83352

David & Martha Orr
2933 Hillway Dr.
Boise, ID 83702

Manuel Cordova dba
MCM Drywall
P.O. Box 144
Shoshone, ID 83352

Juan & Maria Vargas dba
Vargas Roofing
454 Fillmore Street
Twin Falls, ID 83301

Steven M. Notinger, Trustee
Attn: Deborah A. Notinger, Esq.
Donchess & Notinger P.C.
547 Amherst Street, Ste. 204
Nashua, NH 03063
*Rule 2002(g) RFN*

Nathan Bachman
7824 Laurel Ave.
Cincinatti, OH 45243

DATE: August 4, 2010

*/s/ Robert J. Maynes_____*
ROBERT J. MAYNES

| | Month: May 2010 Thru 6/10/10 | Month: June 2010 | Month: July 2010 | Month: Aug. 2010 | Month: Sept. 2010 | Month: Oct. 2010 | Month: Nov. 2010 | Month: Dec. 2010 | Month: Jan. 2011 | Month: Feb. 2011 | Month: Mar. 2011 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | 415 | 4,553 | 13,301 | 18,376 | 21,926 | 134,895 | 49,592 | 154,165 | 158,737 | 56,809 | 11,381 | 624,150 |
| **CASH RECEIPTS** | | | | | | | | | | | | |
| Rental Income | 2,945 | 6,902 | 7,000 | 7,000 | 12,419 | 30,522 | 30,522 | 30,522 | 30,522 | 30,522 | 30,522 | 219,400 |
| Collection of Receivables | | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 45,000 |
| Sale of Assets | | | | | | | | | | | | |
| Post-Petition Borrowing | | | | | 604,000 | | 200,000 | 200,000 | 100,000 | 100,000 | 200,000 | 1,404,000 |
| Other:  Sale of Homes | | | | | | 300,000 | 300,000 | 150,000 | 150,000 | 300,000 | 300,000 | 1,500,000 |
| Other: Misc. | 218 | | | | | | | | | | | |
| Other: Landscaping Net | 22,774 | 10,670 | 20,000 | 20,000 | 20,000 | 20,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 138,444 |
| **TOTAL CASH RECEIPTS** | 25,937 | 17,572 | 32,000 | 32,000 | 641,419 | 355,522 | 540,522 | 390,522 | 290,522 | 440,522 | 540,522 | 3,307,061 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | |
| Auto/Truck/Fuel Expenses | 4,875 | 2,826 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 38,301 |
| Employee Benefits | | | | | | | | | | | | |
| Insurance | | | 1,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 29,500 |
| Inventory Purchases | | | | | | | | | | | | |
| Payroll Expenses | 2,295 | | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 83,295 |
| Salaries/Wages | 11,992 | 5,528 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 116,521 |
| Payroll Taxes | included above | | | | | | | | | | | |
| Rent and Lease Payments | 301 | 50 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,151 |
| Repairs and Maintenance | 233 | 235 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 2,718 |
| Secured Debt Payments | | | | | | | | | | | | |
| Supplies | 63 | 86 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,050 |
| Utilities | 832 | 32 | | | | | | | | | | 864 |
| Professional Fees* | | | | | | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 45,000 |
| UST Quarterly Fees | | | 975 | | | 4,875 | | | 6,500 | | | 12,350 |
| Other: Misc. | 1,207 | 67 | 500 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 9,774 |
| Other:  Construction Costs | | | | | 500,000 | 200,000 | 200,000 | 250,000 | 250,000 | 250,000 | 250,000 | 1,900,000 |
| Other:  Lien Payoffs/Realtor Commissions | | | | | | 200,000 | 200,000 | 100,000 | 100,000 | 200,000 | 200,000 | 1,000,000 |
| **TOTAL CASH DISBURSEMENTS** | 21,799 | 8,825 | 26,925 | 28,450 | 528,450 | 440,825 | 435,950 | 385,950 | 392,450 | 485,950 | 485,950 | 3,241,523 |
| **NET CASH FLOW** | 4,138 | 8,748 | 5,075 | 3,550 | 112,969 | (85,303) | 104,572 | 4,572 | (101,928) | (45,428) | 54,572 | 65,538 |
| **Ending Cash Balance** | 4,553 | 13,301 | 18,376 | 21,926 | 134,895 | 49,592 | 154,165 | 158,737 | 56,809 | 11,381 | 65,953 | 689,689 |

**EXHIBIT "1"**

## LINE OF CREDIT AGREEMENT

This Line of Credit Agreement (the "*Credit Agreement*") is made and entered into this __ day of August, 2010, by and between GRANITE LOAN FUNDING, LLC, a Utah limited liability company, whose address is 320 West 500 South, Suite 200 Bountiful, Utah 84010 ("*Lender*") and THE LEED CORPORATION, an Idaho corporation and debtor-in-possession in that certain District of Idaho chapter 11 bankruptcy reorganization, Case No. 10-40743, ("*Borrower*").

In consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Line of Credit.  Lender hereby establishes for a period extending to March 31, 2011 (the "*Maturity Date*") a line of credit (the "*Credit Line*") for and on behalf of Borrower equal to the principal sum of SIX HUNDRED FOUR THOUSAND, EIGHT HUNDRED DOLLARS ($604,800.00) (the "*Credit Limit*").  In connection herewith, Borrower shall execute and deliver to Lender a Secured Promissory Note in the amount of the Credit Limit, substantially in the form attached hereto as Exhibit "A".  All sums advanced on the Credit Line or pursuant to the terms of this Agreement (each an "*Advance*") shall become part of the principal of the Secured Promissory Note.

2.      Advances.  Any request for an Advance shall be made by Borrower in writing, setting forth the amount of such requested Advance, signed by a duly authorized officer of Borrower, and delivered to Lender, and may be made from time to time as Borrower may choose, provided, however, no requested Advance will, when added to the outstanding principal balance of and interest accrued, if any, on all previous Advances hereunder, exceed the Credit Limit.  Lender shall deliver to Borrower or a depository account designated by Borrower, within five business days following receipt of a request for an Advance by Borrower, the amount requested as an Advance set forth in such request in immediately available funds.  Lender may refuse to make any requested Advance if an event of default has occurred and is continuing hereunder either at the time the request is given or the date the Advance is to be made, or if an event has occurred or condition exists which, with the giving of notice or passing of time or both, would constitute an event of default hereunder as of such dates.  Each requested Advance shall be specific to the real property then being constructed or improved by the Borrower, in order to facilitate Borrower's sale of such real property as set forth herein below.

3.      Interest; Default Interest.  All sums advanced by Lender to Borrower pursuant to this Agreement shall bear interest from the date each Advance is made until paid in full at an interest rate of fourteen percent (14%) per annum (the "*Interest Rate*").  Notwithstanding the foregoing, upon the occurrence of an event of default hereunder by Borrower, the principal amounts outstanding hereunder shall bear an interest rate of thirty-six percent (36%) per annum and commencing from the date a respective Advance was made, and shall continue at such rate until the event of default is cured.

4.      Repayment.   The aggregate unpaid principal amount of Advances made hereunder, together with any accrued interest and other unpaid charges or fees hereunder, shall

**EXHIBIT "2"**

be due and payable on the Maturity Date.  All payments shall be made to Lender at such place as Lender may, from time to time, designate in lawful money of the United States of America.  Any payment falling due on a Saturday, Sunday, or other day on which banks in the State of Idaho are authorized to be closed for the general transaction of business, shall be due on the next succeeding day; provided, however, for purposes of determining late charges or whether an event of default has occurred, such payment shall be considered to have been due on its regularly-scheduled payment date.  All payments received hereunder shall be applied, first, to any late charge; second, any costs or expenses incurred by Lender in collecting such payment or to any other unpaid charges or expenses due hereunder; third, to accrued interest; and fourth, to principal; provided, however, upon occurrence of an event of default, Lender may change the priority of the application of payments as it deems appropriate.  Borrower may prepay principal or accrued interest at any time without penalty or premium.

4.1     Sale of Collateral.  Notwithstanding the foregoing, to the extent that Borrower is able to sell the respective real property being constructed or improved by the respective Advances hereunder, only that portion of the Advances attributable to the real property to be sold shall be repaid at closing of the sale of such real property and Lender shall agree to facilitate the closing of any such sale.

5.     Conditions Precedent.  Lender shall not be required to make any advance hereunder unless and until:

(a)     All of the documents required by Lender, including the Promissory Note, have been duly executed and delivered to Lender and shall be in full force and effect;

(b)     The representations and warranties contained in this Agreement and the Promissory Note are then true with the same effect as though the representations and warranties had been made at such time.  The request for an Advance by Borrower shall constitute a reaffirmation to Lender that all representations and warranties made herein remain true and correct in all material respects to the same extent as though given the time such request is made, and that all conditions precedent listed in this Section 5 have been, and continue to be, satisfied in all respects as of the date such request is made; and

(c)     No event of default hereunder has occurred and is continuing, and no condition exists or event has occurred which, with the passing of time or the giving of notice or both, would constitute an event of default hereunder.

6.     Representations of Borrower.  In order to induce Lender to enter into this Agreement and to make the advances provided for herein, Borrower represents and warrants to Lender as follows:

(a)     Borrower is an Idaho corporation duly organized and validly existing under the laws of the State of Idaho with the power to own its assets and to transact business in Idaho, and in such other states where its business is conducted;

(b)     Borrower has the authority and power to execute and deliver any document required hereunder and to perform any condition or obligation imposed under the terms of such documents;

2

(c)     The execution, delivery and performance of this Agreement and each document incident hereto will not violate any provision of any applicable law, regulation, order, judgment, decree, articles of incorporation, by-law, indenture, contract, agreement, or other undertaking to which Borrower is a party, or which purports to be binding on Borrower or its assets; and

(d)     Other than the currently pending chapter 11 reorganization case, 10-40743, there is no action, suit, investigation, or proceeding pending or, to the knowledge of Borrower, threatened, against or affecting Borrower or any of its assets which, if adversely determined, would have a material adverse affect on the financial condition of Borrower or the operation of its business.

7.     <u>Affirmative Covenants</u>.  So long as any sum remains unpaid hereunder, in whole or in part, Borrower covenants and agrees that except with the prior written consent of Lender, which consent will not be unreasonably withheld, conditioned or delayed, Borrower shall do the following:

(a)     Borrower shall furnish to Lender such financial statements as Lender may from time to time require, including but not limited to, annual and quarterly financial statements. Such financial statements will be made available to Lender as soon as possible after the end of the appropriate periods as requested by the Lender.  Borrower shall furnish such additional information regarding its business affairs and financial condition as Lender may from time to time in good faith request;

(b)     Borrower shall notify Lender of any default under the terms hereof or of any litigation, proceeding, or development which may have a material adverse effect on Borrower's ability to perform under the terms of this Agreement;

(c)     Borrower shall duly observe and conform to all valid requirements of any governmental authority relative to the conduct of its business, properties, or assets and will maintain and keep in full force and effect its lawful existence and all licenses and permits necessary to the proper conduct of its business; and

(d)     Borrower shall (i) file all applicable federal, state, and local tax returns or other statements required to be filed in connection with its business, including those for income taxes, sales taxes, property taxes, payroll taxes, payroll withholding amounts, FICA contributions, and similar items; (ii) maintain appropriate reserves for the accrual of the same; and (iii) pay when due all such taxes, or sums or assessments made in connection therewith; provided, however, that (until foreclosure, sale, or similar proceedings have been commenced) nothing herein will require Borrower to pay any sum or assessment, the validity of which is being contested in good faith by proceedings diligently pursued and as to which adequate reserves have been made.

8.     <u>Negative Covenants</u>.  So long as any amounts due hereunder remain unpaid in whole or in part, Borrower covenants that except with the prior written consent of Lender, which consent will not be unreasonably withheld, conditioned or delayed, it will not enter into any transaction of merger or consolidation, or acquire the assets or business of a person or other

3

entity, or make any loans or advances to any person or other entity other than in the normal and ordinary course of business now conducted; make any investment in securities of any person or other entity; or guarantee or otherwise become liable upon the obligations of any person or other entity, except by endorsement of negotiable instruments for deposit or collection in the normal and ordinary course of business.

9.    Events of Default.  An event of default will occur if any of the following events occurs ("*Event of Default*"):

(a)    Failure to pay any principal or interest hereunder within ten (10) days following the Maturity Date;

(b)    Any representation or warranty made by Borrower in Section 6 of this Agreement or in connection with any borrowing or request for an Advance hereunder, or in any certificate, financial statement, or other statement furnished by Borrower to Lender is untrue in any material respect at the time when made;

(c)    Default by Borrower in the observance or performance of any other covenant or agreement contained in this Agreement, other than a default constituting a separate and distinct event of default under this Section 9;

(d)    Default by Borrower in the observance or performance of any other covenant or agreement contained in any other document or agreement made and given in connection with this Agreement, other than a default constituting a separate and distinct event of default under this Section 9, and the continuance of the same unremedied for a period of thirty (30) days after notice thereof is given to Borrower;

(e)    Any of the documents executed and delivered in connection herewith for any reason ceases to be valid or in full force and effect or the validity or enforceability of which is challenged or disputed by any signer thereof, other than Lender;

(f)    Borrower shall default in the payment of principal or interest on any other obligation for borrowed money other than hereunder, including under the Promissory Note, or defaults in the performance or observance of any obligation or in any agreement relating thereto, if the effect of such default is to cause or permit the holder or holders of such obligation to cause such obligation to become due prior to the stated maturity; or

(g)    All or any substantial part of the property of Borrower shall be condemned, seized, or otherwise appropriated, or custody or control of such property is assumed by any governmental agency or any court of competent jurisdiction, and is retained for a period of thirty (30) days.

10.    Remedies.  Upon the occurrence of an Event of Default as defined above (other than an Event of Default set forth in Sections 9(g), Lender shall notify Borrower of such Event of Default and Borrower shall have a period of ten (10) days to correct and cure such matter or provide Lender other assurance satisfactory to Lender.  If Borrower shall have failed to correct or cure such matter within ten (10) days following notice thereof from Lender, Lender may declare the entire unpaid principal balance, together with accrued interest thereon, to be immediately due

4

and payable without presentment, demand, protest, or other notice of any kind. Lender may suspend or terminate any obligation it may have hereunder to make additional Advances. To the extent permitted by law, Borrower waives any rights to presentment, demand, protest, or notice of any kind in connection with this Agreement. No failure or delay on the part of Lender in exercising any right, power, or privilege hereunder will preclude any other or further exercise thereof or the exercise of any other right, power, or privilege. The rights and remedies provided herein are cumulative and not exclusive of any other rights or remedies provided at law or in equity. Borrower agrees to pay all costs of collection incurred by reason of the default, including court costs and reasonable attorney's fees, whether or not the attorney is a salaried employee of Lender, including such expenses incurred before or after any legal action or bankruptcy proceeding involving Borrower has commenced, during the pendency of such proceedings, and continuing to all such expenses in connection with any appeal to higher courts arising out of matters associated herewith.

11.    Representations of Lender.  Lender hereby represents and warrants to Borrower as follows:

(a)    Lender represents that Lender is aware of the business affairs and financial condition of Borrower, including, but not limited to the Borrower's chapter 11 reorganization, and has acquired sufficient information about Borrower to reach an informed and knowledgeable decision to acquire the Promissory Note.

(b)    Lender acknowledges that he has received and reviewed the Promissory Note and all the information Lender considers necessary or appropriate for deciding whether to make the loan contemplated herein and accepted the Promissory Note. Lender further represents that Lender has had an opportunity to ask questions and receive answers from Borrower regarding the business, properties, prospects and financial condition of Borrower.

(c)    Lender is a lender to companies in the development stage and acknowledges that he can bear the economic risk of its financing obligations, and has such knowledge and experience in financial or business matters that he is capable of evaluating the merits and risks of this investment.

12.    General Provisions.  All representations and warranties made in this Agreement and the Promissory Note shall survive the execution and delivery of this Agreement and the making of any Advances hereunder. This Agreement will be binding upon and inure to the benefit of Borrower and Lender, their respective successors and assigns, except that neither party shall assign or transfer its respective rights or delegate its respective duties hereunder without the prior written consent of the other party; provided, however, that Lender may assign its respective rights and duties hereunder to an entity controlled by or under common control with Lender. This Agreement, the Promissory Note and all documents and instruments associated herewith will be governed by and construed and interpreted in accordance with the laws of the State of Idaho. Time is of the essence hereof. This Agreement will be deemed to express, embody, and supersede any previous understanding, agreements, or commitments, whether written or oral, between the parties with respect to the general subject matter hereof. This Agreement may not be amended or modified except in writing signed by the parties.

13.    **THIS AGREEMENT AND CORRESPONDING SECURED PROMISSORY NOTE SHALL BE SECURED BY A DEED OF TRUST.   THE DEED OF TRUST'S LIENHOLD POSITION, REGARDLESS OF ACTUAL DATE OF RECORDATION AND PERFECTION, SHALL BE THE DATE OF COURT APPROVAL OF THIS POST-PETITION LOAN TO THE BORROWER .**

14.    *Reserved.*

IN WITNESS WHEREOF, the parties have executed, or caused to be executed by their duly authorized representatives, this Agreement as of the date first above written.


GRANITE LOAN FUNDING, LLC (Lender)      THE LEED CORPORATION (Borrower)



By: _____      By: _____
Its:    Manager/Member                   Its:    President

6

$604,800.00                                                                                    August __, 2010

## SECURED PROMISSORY NOTE

FOR VALUE RECEIVED, The Leed Corporation, an Idaho corporation ("*Borrower*") unconditionally promises to pay to Granite Loan Funding, LLC, a Utah limited liability company, whose address is 320 West 500 South, Suite 200 Bountiful, Utah 84010 ("*Lender*") or its order, at its address set forth in the books and records of Borrower, in lawful money of the United States of America, the principal sum of SIX HUNDRED FOUR THOUSAND, EIGHT HUNDRED DOLLARS ($604,800.00) or the aggregate unpaid principal amount of all advances made by Lender to Borrower pursuant to the terms of a Line of Credit Agreement (the "*Credit Agreement*") of even date herewith, whichever is less, together with any interest thereon in accordance with the Credit Agreement, until paid in full, both before and after judgment.

The entire unpaid principal balance, together with accrued interest thereon, shall become due and payable on March 31, 2011.  To the extent there is no default under this Note and related Loan Documents, Lender may agree to extend for up to two (2) additional six-month (6-month) terms on the same terms and conditions as stated herein an in the related Loan Documents.  All payments shall be made to Lender at such place as Lender may, from time to time, designate in lawful money of the United States of America.  Any payment falling due on a Saturday, Sunday, or other day on which banks in the State of Idaho are authorized to be closed for the general transaction of business, shall be due on the next succeeding day; provided, however, for purposes of determining late charges or whether an event of default has occurred, such payment shall be considered to have been due on its regularly-scheduled payment date.  All payments received hereunder shall be applied, first, to any late charge; second, any costs or expenses incurred by Lender in collecting such payment or to any other unpaid charges or expenses due hereunder; third, to accrued interest; and fourth, to principal; provided, however, upon occurrence of an event of default, Lender may change the priority of the application of payments as it deems appropriate.  Borrower may prepay principal at any time without penalty.

This Note is made in connection with and as part of the Credit Agreement and is entitled to the benefits and subject to the terms and conditions thereof.  The terms and conditions of the Credit Agreement are hereby incorporated herein in their entirety.

**THIS SECURED PROMISSORY NOTE AND CORRESPONDING CREDIT AGREEMENT SHALL BE SECURED BY A DEED OF TRUST.  THE DEED OF TRUST'S LIENHOLD POSITION, REGARDLESS OF ACTUAL DATE OF RECORDATION AND PERFECTION, SHALL BE IN A SUPERPRIORITY POSITION AS APPROVED BY THE COURT AND AS OF THE DATE OF COURT APPROVAL BY THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF IDAHO.**

THE LEED CORPORATION


By: _____
Its:     President

7

UPON RECORDATION, RETURN TO:

GRANITE LOAN FUNDING, LLC
320 WEST 500 SOUTH, STE. 200
BOUNTIFUL, UT 84010

## DEVELOPMENT LOAN DEED OF TRUST,
## ASSIGNMENT OF RENTS AND LEASES,
## SECURITY AGREEMENT AND FIXTURE FILING

THIS DEVELOPMENT LOAN DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING (the "Deed of Trust") is made and entered into effective as of the ___ day of August, 2010, by and between , THE LEED CORPORATION, an Idaho corporation whose address is P.O. Box 2292, Twin Falls, ID 83303-2292 ("Trustor") in favor of _____, Attorney at Law ("Trustee"), for the benefit of GRANITE LOAN FUNDING, LLC, a Utah limited liability company ("Beneficiary") whose address is 320 West 500 South, Suite 200, Bountiful, Utah 84010.

### RECITALS:

A.      Trustor is the owner of fee simple title in and to certain real property located in Lincoln County, Idaho, consisting of fifteen partially constructed homes, as more particularly described in Exhibit "A", which is attached hereto and by this reference incorporated herein (the "Property").

B.      Borrower applied to Beneficiary for financing in the principal amount of SIX HUNDRED FOUR THOUSAND, EIGHT HUNDRED DOLLARS ($604,800.00), the proceeds of which shall be used by Trustor as development financing for the improvements to be installed on the Property.

C.      Beneficiary has committed to extend the financing to Borrower, provided that Beneficiary obtains liens against the Property in a first priority position as approved by the United States Bankruptcy Court for the District of Idaho.

NOW, THEREFORE, upon the terms, covenants and conditions set forth in this Deed of Trust, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, TRUSTOR HEREBY CONVEYS AND WARRANTS TO TRUSTEE, IN TRUST, WITH POWER OF SALE, and hereby grants to Beneficiary, as a secured party, a security interest in the following described real and personal property:

### GRANTING CLAUSE I:
### REAL PROPERTY

All right, title, interest and estate of Trustor in and to the Property.

8

GRANTING CLAUSE II:
ASSIGNED CONTRACTS

All right, title, interest and estate of Trustor, now owned or hereafter acquired, in and to the following to the extent applicable to the Property or the Improvements (as defined in Article I of this Deed of Trust):

(1)    All contract and agreements relating to the planning, design, engineering, or architecture of the Improvements;

(2)    All drawings, models, plans specifications, budgets, cost estimates, bid packages, bids, and other related documents relating to the development, installation or construction of the Improvements;

(3)    All contracts and agreements relating to the installation, construction or demolition of any of the Improvements, including all retainages, payment and performance bonds, and performance escrows described in or required by any of the foregoing;

(4)    All contracts and agreements relating to the development of the Property or the improvements, including all contacts with governmental authorities granting entitlements or development rights with respect to the Property, appraisals, soil reports, feasibility studies, environmental assessment reports, and engineering, mechanical and wetlands reports;

(5)    All contracts and agreements between Trustor and any utility company, water company or user association, or telecommunications company for the purpose of: (a) furnishing electricity, natural gas or oil, telephone, sewer, water, cable television, Internet or other such services to the Property; (b) providing hook-ups, connection, lines or other necessary laterals, or tie-ins to the Property and the Improvements installed or constructed on the Property, including any "will serve" letters benefiting the Property; or (c) granting any such utility or other company access to the Improvements or to space in or on the Property or the improvements to provide service to the Property;

(6)    All contracts and leases granted by Trustor, as lessor, to any individual or entity for the use of roof-top space or other areas on the Improvements or the Property for the placement of telecommunications equipment, antennae or transmission devices, or for the placement of billboards, signs or other advertising media;

(7)    All contracts and agreements for marketing, leasing, advertising, use or sale of the Improvements or any portion of the Improvements;

(8)    All contracts and agreements relating to the management of the Property and the Improvements, or with any franchisor relating to the operation or use of the Improvements;

(9)    All security deposits, connection fees, prepayments, reservation fees and other payments made by Trustor with respect to any of the foregoing; and

9

(10)    All modifications, amendments substitutions and replacements of any of the foregoing.

GRANTING CLAUSE III:
AWARDS

All right, title, interest and estate of Trustor, now owned, or hereafter acquired in and to:

(1)    All awards made for the taking by eminent domain or by any proceeding or purchase in lieu thereof of the Property or any portion of the Property of any Improvements now or hereafter situate thereon or of any estate or easement in the Property (including any awards for change of grade of streets); and

(2)    The proceeds of insurance paid on account of partial or total destruction of the Improvements now or hereafter located upon the Property or any portion thereof (regardless of whether or not Trustor is required to carry such insurance under this Deed of Trust or any other Loan Document).

GRANTING CLAUSE IV:
CONSTRUCTION MATERIALS

All right, title, interest and estate of Trustor, now owned or hereafter acquired, in and to all building materials, supplies and inventories acquired by Trustor with proceeds of the Loan (as defined in Article I of this Deed of Trust) and delivered to the Property for use in connection with or for incorporation into the Improvements of the Property.

GRANTING CLAUSE V:
EQUIPMENT

All right, title, interest and estate of Trustor, now owned or hereafter acquired, in and to:

(1)    All machinery, equipment, good, supplies, appliances, floor coverings, furnishings, window coverings, security systems, communications systems and equipment, artwork,  light fixtures, and other articles of tangible personal property of Trustor used or acquired for use on the Property;

(2)    All attachments, accessories and accessions thereto and all substitutions and replacements thereof and all parts therefore.

GRANTING CLAUSE VI:
FIXTURES AND INTERESTS

All rights, title, interest and estate of Trustor, now owned or hereafter acquired, in and to:

10

(1)    All buildings, improvements, renovations, works, structures, facilities and fixtures, including any future additions to, and improvements and betterments upon, and all renewals and replacements of, any of the foregoing and which are owned or acquired by Trustor and which are now or hereafter shall be constructed or affixed or constructively affixed to the Property, or to any portion of the Property; and

(2)    All easements, licenses, streets, ways, alleys, roads, passages, rights-of-way, waters, watercourses, water rights, ditches and ditch rights (whether now owned or hereafter acquired by Trustor and whether arising by virtue of land ownership, contract or otherwise), of any kind and nature, relating to or in any way appurtenant or appertaining to the Property or any portion of the Property.

GRANTING CLAUSE VII:
INTANGIBLES

All rights, titles, interest and estate of Trustor, now owned or hereafter acquired, in and to:

(1)    All general intangibles of every nature and intellectual property owned by Trustor pertaining to the Property or the Improvements including, without limitation, any software, and any trade names, service names, trademarks, service marks, marketing materials, telephone numbers, domain names and any other names, numbers or materials used to identify, advertise or promote the Property or the Improvements; and

(2)    All now existing or hereafter acquired chattel paper, account, deposit accounts, payment intangibles, letter of credit rights, supporting obligations, good will and other intangible personal property owned by Trustor and pertaining to the Property or the Improvements.

GRANTING CLAUSE VIII:
PERMITS AND LICENSES

All right, title, interest and estate of Trustor, now existing or hereafter acquired, in and to all permits, franchises, privileges, grants, consents, licenses, authorizations and approvals heretofore or hereafter granted by the United States, by the State of Idaho, or by any departments or agencies thereof, or any other governmental or public bodies, agencies or authorities (including, without limitation, City of Shoshone, Lincoln County, Idaho) to or for the benefit of Trustor and utilized in connection with the development, construction operation of the Improvements.

GRANTING CLAUSE IX:
RENTS, ISSUES, ETC.

All right, title, interest and estate of Trustor, now owned or hereafter acquired, in and to: all sales proceeds, rents, subrents, issues, royalties, income and profits of and from the Property or any portion of the Property.

GRANTING CLAUSE X:
<u>TENEMENTS AND HEREDITAMENTS</u>

All right, title, interest and estate of Trustor, now owned or hereafter acquired, in and to all and singular the tenements, hereditaments, rights, privileges and appurtenances belonging, relating, or in any way appertaining to any of the Property, or any portion of the Property, or which shall hereafter in any way belong, relate or in any way appertain thereto (including, without limitation, any and all development rights, air rights or similar or comparable rights), and the reversion and reversions, remainder and remainders, and estates, rights, titles, interests, possessions, claims and demands of every nature whatsoever, at law or in equity, which Trustor may have or may hereafter acquire in and to the Property or an portion of the Property.

GRANTING CLAUSE XI:
<u>PROCEEDS AND PRODUCTS</u>

All cash and noncash proceeds and all products of any of the foregoing, including, without limitation, insurance proceeds; however, to the extent the Borrower is not in default under its obligations hereunder, upon the sale of each of the respective fifteen homes, the proceeds due and payable at closing of any such sale shall be the Advances related to that specific home.

ARTICLE I
<u>DEFINITIONS</u>

Unless the context clearly indicates otherwise, certain terms used in this Deed of Trust shall have the meanings set forth below:

"<u>Event of Default</u>" means the occurrence and continuance of any one of the events listed in Section 11.1 of this Deed of Trust.

"<u>Hazardous Materials</u>" includes, but shall not be limited to, substances defined as "hazardous substances," "hazardous wastes," "hazardous materials," "extreme hazardous waste," "restricted hazardous waste," or "toxic substances" or words of similar import under any applicable local, state or federal law or under the regulations adopted or publications promulgated pursuant thereto, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. 6901 <u>et</u> <u>seq</u>.; the Hazardous Materials Transportation Act, as amended, 49 U.S.C. Section 9601 <u>et</u> <u>seq</u>.;   the Resource Conservation and Recovery Act, as amended 42 U.S.C. <u>et</u> <u>seq</u>.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. Section 1251 <u>et</u> <u>seq</u>., as the same may be amended from time to time; and in all rules adopted and regulations promulgated pursuant to any of the foregoing.

"<u>Impositions</u>" means all real property taxes and assessments, general and special and all other tax assessments and other governmental, municipal or other charges or impositions of any kind or nature whatsoever (including, without limitation, charges and assessments on water or water stocks used on or with the Property and levies or charges resulting from covenants

12

conditions and restrictions affecting the Trust Estate) which are assessed or imposed upon the Trust Estate, or become due and payable, and which create or may create a lien upon the Property or any portion of the Property, equipment or other facility used I the construction, renovation, operation or maintenance of the Trust Estate.

"Improvements" means any improvements now or hereafter installed or constructed on the Property.

"Loan" means the financing facility advanced or to be advanced by Beneficiary to or for the account of the Trustor under the terms of the Loan Agreement in the maximum principal amount of SIX HUNDRED FOUR THOUSAND, EIGHT HUNDRED DOLLARS ($604,800.000).

"Loan Agreement" means that certain Development Loan Agreement dated the same date as this Deed of Trust, by and between Trustor, as borrower, and Beneficiary, as lender, relating to the Loan, together with any and all amendments and modifications thereto.

"Loan Documents" means the Loan Agreement, the Note, this Deed of Trust, one or more guaranties, all other deeds of trust and security instruments given by of for the benefit of Trustor to Beneficiary as security for the Note, and any and all other documents between Trustor and Beneficiary evidencing or securing the Loan, as the same may now be or may hereafter be amended or modified.

"Note" means the Development Loan Promissory Note executed by Trustor, as maker, in favor of Beneficiary, as payee, under the terms of the Loan Agreement, together with any and all amendments and modifications thereto, in the maximum principal amount of the Loan.

"Obligations" means the obligations of Trustor described in Section 2.1 of this Deed of Trust, the payment and performance of which are secured by this Deed of Trust.

"Property" means that certain real property situate in Lincoln County, Idaho, described in Recital A above and referred to in Granting Clause I of this Deed of Trust, as more particularly described on Exhibit "A", attached to this Deed of Trust.

"Trustee Estate" means all of the items, documents, interests and properties referred to in Granting Clauses I through XI of this Deed of Trust.

ARTICLE II
OBLIGATIONS SECURED

2.1      Obligations.   This Deed of Trust is given for the purpose of securing the following Obligations of Trustor:

(a)      The payment and performance of each and every obligation of Trustor, evidenced by the Note, including, without limitation, the payment of principal of and interest on the Loan;

13

(b)     The payment and performance of each and every agreement and obligation of Trustor under this Deed of Trust, and under any other instrument given to evidence or further secure the payment and performance of any obligation of Trustor under the Loan, the Loan Agreement and all of the other Loan Documents; and

(c)     The payment of all sums expended and advanced by Trustee or Beneficiary pursuant to the terms of this Deed of Trust, together with interest thereon as provided in the Loan Agreement.

ARTICLE III
<u>REPRESENTATIONS AND WARRANTIES</u>

3.1     <u>Property</u>.        Trustor represents and warrants to Beneficiary as follows:

(a)     Except for the Permitted Encumbrances, Trustor is, or simultaneously with the execution of this Deed of Trust shall become, the owner of fee simple title in and to the Property;

(b)     Trustor possesses all requisite power and authority to execute and deliver this Deed of Trust;

(c)     Except for the Permitted Encumbrances, Trustor shall defend title to the Property against all claims and demands whatsoever;

(d)     To the best of Trustor's knowledge, upon funding of the Loan, the Property will be free and clear of and from any and all liens, claims, encumbrances, restrictions, encroachments and interests whatsoever, in favor of any third party, except those referred to in Exhibit "B" of this Deed of Trust;

(e)     The lien created by this Deed of Trust upon the Property is a valid and will create the lien priority as described in paragraph C of the Recitals;

(f)     Any and all obligations incurred by Trustor in connection with the acquisition of all or any portion of the Property are current and without default on the part of Trustor;

(g)     To the best of Trustor's actual knowledge:  (1) the Trust Estate is not in violation of any federal , state or local law, ordinance or regulation relating to industrial hygiene or to environmental conditions on, under or about the Trust Estate, including without limitation, soil and ground water conditions; (2) there are no Hazardous Materials constructed, deposited, stored, disposed, placed or located in, on or under the Trust Estate; and (3) Trustor has not received notice from any federal, state or local agency or department regarding the noncompliance by Trustor or the Trust Estate with respect to  any federal, state or local law, ordinance or regulation governing the use, handling, storage, generation, transportation or disposal of Hazardous Materials or the Mere presence of Hazardous Materials on the Property.

14

3.2    *Reserved.*

ARTICLE IV
MAINTENANCE OF TRUST ESTATE

Trustor shall: (a) maintain the Trust Estate at all times in good condition and repair (b) not commit any waste of the Trust Estate, or, except with the prior written permission of Beneficiary, remove damage, demolish, or structurally alter and of the Improvements now on the Property, or to be constructed on the Property hereafter; (c) complete promptly and in good and workmanlike manner the Improvements, or any other improvements on the Property, which may for any reason be constructed; (d) restore promptly and in good and workmanlike manner any of the Improvements, or any portion of the Property, which may for any reason be damaged or destroyed; (e) comply at all times with all laws, ordinances, regulations, covenants and restrictions in any manner affecting the Trust Estate; (f) not commit or knowingly permit any act upon the Trust Estate in violation of law; and (g) do all acts which by reason of the character or use of the Trust Estate may be reasonably necessary to maintain and care for the same, the specific enumeration herein not excluding the general. None of the foregoing shall prohibit Trustor from installing tenant improvements in connection with Trustor's leasing of space in the Improvements.

ARTICLE V
INSURANCE

5.1    Insurance    Trustor or Trustor's general contractor, as applicable, shall secure and at all times maintain and promptly pay when due all premiums for the following types of insurance:

(a)    During any period of construction, builder's risk extended coverage insurance against loss or damage by fire, lightning, windstorm, hail, explosion, riot, civil commotion, motor vehicles, aircraft, smoke, theft, vandalism, malicious mischief, and other risks from time to time included under extended  coverage policies in an amount not less than (100%) of the full replacement value of the Improvements.   All policies secured and carried in accordance with this Section 5.1 (a) shall contain the "Replacement Cost Endorsement," a lender's loss payable endorsement 438 BFU naming Lender as loss payee, and shall name Beneficiary as an additional insured.

(b)    During any period of construction, worker's compensation insurance against liability arising from claims of workmen with respect to and during the period of any work on or about the Property.

(c)    Following any period of construction, insurance against loss or damage to the Property andthe Improvements by fire, vandalism, malicious mischief, and any of the risks covered by insurance of the type now known as "Causes of Loss--Special Form" or comparable coverage in an amount not less than One Hundred Percent (100%) of the full replacement value of the Improvements.  Such insurance policy or policies shall contain the "Replacement Cost

15

Endorsement," a lender's loss payable endorsement 438 BFU naming Beneficiary as loss payee, and shall name Beneficiary as an additional insured.

    (d)  If the Property is located in a special flood hazard area as identified by the Federal Insurance Administration, federally subsidized flood insurance covering the risk of damage to the Improvements to be constructed on the Property caused by flooding in the total amount of the Loan or for the maximum amount of subsidized insurance available, whichever is less. In lieu of such flood insurance, Trustor shall submit to Beneficiary satisfactory to Beneficiary that no part of the Property is, or will be, within an area designated as a flood hazard area by the Federal Insurance Administration.

    (e)  Commercial General Liability insurance applicable to the Trust Estate in the minimum amounts of One Million Dollars ($1,000,000.00) per person and Two Million Dollars ($2,000,000.00) in the aggregate. Such liability insurance shall be issued by one of more insurance companies reasonably satisfactory to Beneficiary and shall name Beneficiary as an additional insured.

    (f)  Equipment and machinery insurance covering vessels, machinery, piping, and other equipment, provided the Improvements contain equipment of such nature, and insurance against loss of use arising from any such breakdown, in such amounts as are reasonably satisfactory to Beneficiary.

    (g)  Such other insurance and in such amounts as may from time to time reasonably be required by Beneficiary against the same to other hazards.

All policies of builder's risk and other casualty and bodily injury insurance required by the terms of this Deed of Trust shall contain an endorsement or agreement by the insurer that any loss shall be payable in accordance with the terms of such policy notwithstanding any act or negligence of Trustor which might otherwise result in forfeiture of the insurance. The policies shall provide that the insurer will waive all rights of set-off, counterclaim or deduction against Trustor.

    5.2  <u>Policies and Premiums</u>. All policies of insurance shall be issued by insurance companies which have a company rating of not less than "A" and financial performance rating of not less than "7" by A.M. Best Co. in "Best's Insurance Reports." All policies of commercial liability and other casualty insurance shall have included therein a standard mortgagee protection clause. Trustor shall furnish Beneficiary with an original policy of all policies of required insurance or an original certificate of insurance together with a true and correct copy of each such policy. All such policies shall contain a provision that such policies will not be cancelled or materially amended or altered, including reduction of coverage, without at least thirty (30) days prior written notice to Beneficiary. If Beneficiary consents to Trustor providing any of the required insurance through blanket policies carried by Trustor and covering more than on location, then Trustor shall cause the insurance company to furnish Beneficiary with an endorsement to such policy which sets forth the coverage, the limits of liability, the name of the carrier, the policy number, the expiration date and a statement that the insurance company will not cancel or materially modify or alter the coverage evidenced by the endorsement without first affording Beneficiary at least thirty (30) days prior written notice. In the vent Trustor fails to

provide, maintain, keep in force or deliver and furnish to Beneficiary the policies of insurance required by Section 5.1, Beneficiary may, but without any obligation to do so, procure such insurance for such risks covering Beneficiary's interest, and Trustor shall pay all premiums thereon promptly upon demand by Beneficiary.  If Trustor fails to pay any premium after demand by Beneficiary, Beneficiary, at Beneficiary's option, may advance any sums necessary to maintain and to keep in force such insurance.  Any sums so advanced, together with interest thereon at the default rate as provided for in the Loan Agreement, shall be secured by this Deed of Trust.

5.3    <u>Occurrence and Notice of Casualty</u>.  In the event of loss or damage to the Trust Estate; or any portion of the Trust Estate, Trustor shall immediately give notice thereof to Beneficiary. Beneficiary may, but without any obligation to do so, make proof of loss, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Beneficiary.  The insurance proceeds or any part thereof shall be deemed part of the security for the Obligations and shall be applied to restore or repair the portion of the Trust Estate damaged, provided that any insurance proceeds not so applied may be applied by Beneficiary, at Beneficiary's option, to reduce the indebtedness secured by this Deed of Trust (whether or not then due and payable).  Except to the extent that insurance proceeds are received by Beneficiary and applied to the indebtedness secured by this Deed of Trust, nothing herein contained shall be deemed to excuse Trustor from repairing or maintaining the Trust Estate as provided in Article IV of this Deed of Trust or restoring all damage or destruction to the Trust Estate, regardless of whether there are insurance proceeds available or whether any such proceeds are sufficient in amount.  The application or release by Beneficiary of any insurance proceeds shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

5.4    <u>Disposition of Policies on Foreclosure</u>.  In the event Beneficiary exercises the power of sale provisions of this Deed of Trust or takes any other transfer of title or assignment of the Trust Estate in extinguishment in whole or in part of the Obligations, all right, title and interest of Trustor in and to the policies of insurance required by Section 5.1, shall inure to the benefit of and pass to the successor in interest of Trustor or the purchaser or grantee of the Trust Estate.

ARTICLE VI<br>
INDEMNIFICATION AND OFF-SET

6.1    <u>Indemnification by Trustor</u>.  Trustor hereby indemnifies and holds Beneficiary harmless in accordance with the following:

(a)    If Beneficiary is made a party defendant to any litigation (except litigation wherein Trustor asserts a claim against Beneficiary and prevails) concerning this Deed of Trust or the Trust Estate or any part of the trust Estate or interest therein, or the occupancy thereof by Trustor, then Trustor shall indemnify, defend and hold Beneficiary harmless from any and all liability by reason of such litigation, including reasonable attorney fees and costs incurred by Beneficiary in any such litigation, whether or not the litigation is prosecuted to judgment.  If following the occurrence and continuance of an Event of Default, Beneficiary commences an

17

action against Trustor to enforce any of the material terms, covenants or conditions of this Deed of Trust or because of the breach by Trustor of any of the material terms, covenants or conditions, or for the recovery of any sum secured hereby, Trustor shall pay the reasonable attorney fees and costs actually incurred by Beneficiary in such action.  The right to such attorney fees and costs shall be deemed to have accrued on the commencement of such action and shall be enforceable whether or not such action is prosecuted to judgment.  If Trustor breaches any material term, covenant or condition of this Deed of Trust, Beneficiary may employ an attorney or attorneys to protect Beneficiary's rights hereunder and in the event of such employment following any breach by Trustor, Trustor shall pay Beneficiary reasonable attorney fees and costs in an amount equal to the amount of such fees and costs actually incurred by Beneficiary, whether or not an action is actually commenced against Trustor by reason of such breach.

(b)      If Beneficiary is held liable or could be held liable for, or is subject to any losses, damages, costs, charges ore expenses, directly or indirectly on account of any claims for work, labor or materials furnished in connection with or arising from the construction, repair or reconstruction of any of the improvements, then Trustor shall indemnify, defend and hold Beneficiary harmless from all liability or expense arising therefrom including reasonable attorney fees and costs.

(c)      Trustor, to the full extent permitted by law, shall indemnify, defend and hold harmless Beneficiary, Beneficiary's managers, members, employees, agents, participants, successors and assigns from and against any and all lost cost, expense or liability incurred in connection with any and all claims and proceedings (whether brought by private party or governmental agency) for bodily injury, property damage abatement or remediation, environmental damage or impairment, or any other injury or damage resulting from or relating to any Hazardous Materials located under or upon or migrating into, under, from or through the Property, which Beneficiary may incur due to the making of the Loan, the exercise of any of Beneficiary's rights under this Deed of Trust or under any other document evidencing or securing the Loan, or otherwise.  The foregoing indemnity shall apply:  (1) whether or not the release of the Hazardous Materials was caused by Trustor, a tenant or subtenant of Trustor, or a prior owner or tenant of the Property; and (2) whether or not the alleged liability is attributable to the handling, storage, generation, transportation or disposal of Hazardous Materials or the mere presence of Hazardous Materials on the Property.  The obligations of Trustor under this Section 6.1(c) shall survive the foreclosure of this Deed of Trust, a conveyance in lieu of foreclosure, the repayment of the Loan proceeds and the discharge and release of the lien and encumbrance of this Deed of Trust.

6.2      Off-Set.  All sums payable by Trustor under this Deed of Trust shall (unless otherwise specifically provided in this Deed of Trust) be paid without notice, demand, counterclaim, set-off, deduction or defense and without abatement, suspension, deferment, diminution or reduction.  The Obligations and liabilities of Trustor hereunder shall in no way be released, discharged or otherwise affected (except as expressly provided herein) by reason of: (a) any damage to or destruction of, or any condemnation or similar taking of the Trust Estate or any part thereof; (b) any restriction or prevention or interference with any use of the Trust Estate or any part thereof; (c) any title defect or encumbrance or any eviction from the Trust Estate or

any part thereof by title paramount or otherwise; (d) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Beneficiary, or any action taken with respect to this Deed of Trust by any trustee or receiver of Beneficiary, or by any court, in any such proceeding; (e) any claim which Trustor has or might have against Beneficiary; (f) any default or failure on the part of Beneficiary to perform or comply with any of the terms, covenants or conditions of this Deed of Trust or of any other agreement with Trustor or (g) any other occurrence whatsoever, whether similar or dissimilar to the foregoing.

## ARTICLE VII
## IMPOSITIONS

7.1     Payment of Impositions.  Subject to Section 7.3 of this Deed of Trust, Trustor shall pay, prior to delinquency, all Impositions.  However, if, by law, any Imposition is payable, or may at the election of the taxpayer be paid in installments, Trustor may pay the same together with any accrued interest on the unpaid balance of such Imposition in installments as the same become due and before any fine, penalty, interest or cost may be added thereto for the nonpayment of any such installment and interest.

7.2     Evidence of Payment.  Trustor shall, upon request by Beneficiary, furnish to Beneficiary, within thirty (30) days after the date upon which such Imposition is due and payable by Trustor, official receipts of the appropriate taxing authority, or other proof satisfactory to Beneficiary, evidencing the payments thereof.

7.3     Right to Contest.  Trustor shall have the right, before any date set for forfeiture, whether at tax sale, foreclosure on a tax lien, or otherwise, to contest or object to the amount of validity of any Imposition by appropriate legal proceedings, but such contest shall not be deemed or construed in any way as relieving, modifying or extending Trustor's covenant to pay any such Imposition at the time and in the manner provided in Section 7.1, unless Trustor has given prior written notice to Beneficiary of Trustor's intent so to contest or object to any Imposition, and, unless, at Beneficiary's option:  (a) Trustor shall demonstrate to Beneficiary's satisfaction that the legal proceedings shall conclusively operate to prevent the sale of the Trust Estate, or any part thereof, to satisfy such Imposition prior to final determination of such proceedings; or (b) Trustor shall furnish good and sufficient undertaking and sureties as may be required or permitted by law to accomplish a stay of such proceedings.

7.4     Tax on Deed of Trust.  If at any time after the date hereof there shall be assessed or imposed:  (a) a tax or assessment on the Trust Estate in lieu of or in addition to the Impositions payable by Trustor; or (b) a license fee, tax or assessment imposed on Beneficiary and measured by or based in whole or in part upon the amount of the outstanding Obligations or upon payments on the Note (whether principal or interest), then all such taxes, assessments and fees shall be deemed to be included within the term "Impositions" as defined in Article I of this Deed of Trust, and Trustor shall pay and discharge the same as herein provided with respect to the payment of Impositions.  Trustor shall have no obligation to pay any franchise, income, excess profits or similar tax levied on Beneficiary or on the Obligation s secured hereby.

7.5    Reserves for Taxes and Insurance.  In furtherance of Article V and Section 7.1 of this Deed of Trust and anything to the contrary herein notwithstanding, Trustor, upon request by Beneficiary following the occurrence and continuance of an Event of Default, shall pay to Beneficiary, on the date monthly installments of principal and accrued interest are payable under the Note, until the Note is paid on full, an amount equal to one-twelfth of the annual Impositions reasonably estimated by Beneficiary to pay the installment of Impositions next due on the Trust Estate; and one-twelfth of the annual aggregate insurance premium on all policies of insurance required in Article V.  Upon such request, Trustor shall thereafter cause all bills, statements or other documents relating to Impositions and insurance premiums to be sent to Beneficiary. Provided Trustor has deposited sufficient funds with Beneficiary pursuant to this Section 7.5, Beneficiary shall pay such amounts as may be due thereunder out of the funds so deposited with Beneficiary.  If at any time and for any reason the funds deposited with Beneficiary pursuant to this Section 7.5 are or will be insufficient to pay such amounts as may then or subsequently be due, Beneficiary shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Beneficiary.  Nothing contained herein shall cause Beneficiary to be deemed a trustee of such funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Beneficiary pursuant to this Section 7.5.  Beneficiary shall not be obligated to pay any interest on any sums held by Beneficiary pending disbursement or application hereunder and Beneficiary may impound or reserve for future payment of Impositions and insurance premiums such portion of payments as Beneficiary, in Beneficiary's absolute discretion, may deem proper.  In the event that upon request from Beneficiary pursuant to this Section 7.5 Trustor fails to deposit with Beneficiary sums sufficient to pay fully such Imposition sand insurance premiums at least thirty (30) days before delinquency thereof, Beneficiary, at Beneficiary's election, but without any obligation to do so, may advance any amounts required to make up the deficiency, which advances, if any, shall be secured by this Deed of Trust, and shall be repayable to Beneficiary, with interest from the date advanced, at the default rate of interest specified in the Loan Agreement.

ARTICLE VIII
ADDITIONAL COVENANTS

8.1    Payment of Utilities.  Trustor shall pay when due all utility charges relating to the Trust Estate which may become a lien or charge against the Trust Estate or any portion thereof, for gas, electricity, water or sewer services furnished to the Trust Estate and all assessments or charges of a similar nature, whether public or private, affecting the Trust Estate or any portion thereof whether or not such assessments or charges are liens thereon.

8.2    Defense of Title.  Trustor shall appear in and defend any action or proceeding purporting to affect the security hereof, the Truest Estate, or the rights or powers of Beneficiary or Trustee.  Should Beneficiary elect in good faith to appear in or defend any such action or proceeding, Trustor shall pay all costs and expenses, including costs of evidence of title and reasonable attorney fees and costs, incurred by Beneficiary or Trustee.

8.3    Performance in Trustor's Stead.  Should Trustor fail to make any payment or to do any act as provided in this Deed of Trust, then Beneficiary or Trustee, but without any obligation to do so, without notice to or demand upon Trustor and without releasing Trustor from

20

any obligation hereunder, may: (a) make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof (Beneficiary or Trustee being authorized to enter upon the Trust Estate for such purposes); (b) commence, appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; (c) pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either Beneficiary or Trustee appears to be superior to the lien of this Deed of Trust, and (d) in exercising any such powers, incur any liability, expend such reasonable amounts as Beneficiary may deem necessary therefore, including cost of evidence of title, employment of attorneys, and payment of reasonable attorney fees and costs. All such amounts expended by either or both Trustee or Beneficiary shall, at the election of Beneficiary, be added to the principal indebtedness secured by this Deed of Trust and shall accrue interest in accordance with the terms of the Note.

8.4     Repayment of Advances.  Trustor shall immediately repay to beneficiary all sums, other than loan proceeds, with interest thereon as provided in the Note, which at any time may be paid or advanced by Beneficiary for the payment of insurance premiums, taxes, assessments, other governmental, municipal, or other charges or Imposition, title searches, title reports or abstracts, and any other advances made by Beneficiary which are reasonably necessary to maintain this Deed of Trust as a valid and subsisting lien upon the Trust Estate, to preserve and protect Beneficiary's interest in this Deed of Trust, or to preserve, repair or maintain the Trust Estate. All such advances shall be wholly optional on the part of Beneficiary, and Trustor's obligation to repay the same, with interest, to Beneficiary shall be secured by the lien of this Deed of Trust.

8.5     No Removal of Fixtures.  Trustor shall not, during the existence of this deed of Trust and without the prior written consent of Beneficiary, remove from the Property any of the Improvements, except in the ordinary course of Trustor's business and except to the extent replaced by items of comparable quality and value.

8.6     Further Assurance.   Trustor shall execute (when applicable) and deliver to Beneficiary such further instruments, including, without limitation, Uniform Commercial Code Financing Statements and Continuation Statements and do such further acts as may be necessary or as may be reasonably required by Beneficiary to carry out more effectively the purposes of this Deed of Trust and to subject to the lien and encumbrance created or intended to be created hereby any property, rights or interests covered or intended to be covered by this Deed of Trust. Trustor hereby authorizes (to the extent such authorization is valid under applicable law) Beneficiary to execute and file, without Trustor's signature, such Uniform Commercial Code Financing Statements and Continuation Statements as Beneficiary may deem necessary in order to perfect o continue the perfection of the security interests created by this Deed of Trust.

8.7     No Further Encumbrances.  Except for the lien and encumbrance of this Deed of Trust, Trustor shall not create, permit or suffer to exist, and, at Trustor's expense, will defend the Trust Estate and take such other action as is necessary to remove any lien, claim charge, security interest or encumbrance in or to the Trust Estate, or any portion of the Trust Estate.

8.8     No Conveyance of Property.   Trustor shall not sell, convey or alienate the Property or any portion thereof, or any interest therein to any person or entity, without the prior written consent of Beneficiary.   In the event Trustor shall sell, convey or alienate all or any portion of the Property, or any interest therein, in violation of the foregoing, or be divested of title to the Property in any manner, whether voluntarily or involuntarily, then the entire principal indebtedness of the Loan, as evidenced by the Note and the other Loan Documents, and all other Obligations secured by this Deed of Trust, irrespective of the maturity date expressed therein, at the option of Beneficiary, and without prior demand or notice, shall become immediately due and payable.

8.9     Application of Payments.   If at any time during the term of this Deed of Trust Beneficiary receives or obtains a payment, installment or sum which is less than the entire amount then due under the Note secured by this Deed of Trust and any of the other Loan Documents, then Beneficiary shall, notwithstanding any instructions which may be given by Trustor, have the right to apply such payment, installment or sum, or any part thereof to such of the items or Obligations then due from Trustor or to Beneficiary, in Beneficiary's sole discretion, may determine.

8.10     Hazardous Materials.   Trustor shall comply with all applicable federal, state, and local laws, regulations, rules and ordinance governing the handling, storage, generation, transportation and disposal of Hazardous Materials as the same affect or may affect the operation of Trustor's present business on or with respect to the Trust Estate.   In addition, Trustor shall not, without the prior written consent of Beneficiary, undertake any new business venture or operation on or affecting the Trust estate which now requires or may hereafter require compliance with and federal state or local law, regulation, rule or ordinance governing Hazardous Materials.   If requested by Beneficiary from time to time during the continuance of this Deed of Trust, Trustor shall submit to Beneficiary report, in form satisfactory to Beneficiary, certifying that the Trust Estate is not being used in any regulated activities directly or indirectly involving the use, handling, storage, generation, transportation and disposal of Hazardous Materials.   Beneficiary reserves the right, in Beneficiary's sole and absolute discretion, to retain, at Trustor's expense, an independent professional consultant to review any report prepared by Trustor and to conduct its own investigation of the Trust Estate.   Trustor hereby grants to Beneficiary, its agents, employees, consultants and contractors, the right to enter upon the Trust Estate and to perform such tests as are reasonably necessary to conduct such a review or investigation.

8.11     Partial Releases.   The Loan Agreement provides that upon satisfaction of certain conditions described in the Loan Agreement, portions of the Property may be released from the lien and encumbrance of this Deed of Trust.   Trustor shall have the right, upon the satisfaction of the conditions and requirements set forth in Article II of the Loan Agreement, to require that Trustee shall execute and deliver to Trustor a deed of partial Reconveyance to the applicable property.

ARTICLE IX
CONDEMNATION AWARDS

Trustor shall promptly give notice to Beneficiary of any condemnation proceeding or any taking for public improvements.  If the Trust Estate or any portion thereof should be taken or damaged by reason of any public improvement or condemnation proceeding, Beneficiary shall be entitled:  (1) to receive all compensation, awards and other payments or relief for such taking or condemnation; (2) at Beneficiary's option and in Beneficiary's own name, to commence, appear in and prosecute in Beneficiary's own name any action or proceeding relating to such taking or condemnation; and (3) to make any compromise or settlement in connection with any such taking or condemnation.   All such compensation, awards, damages, causes of action, proceeds or other payments shall be deemed part of the security for the Obligation and are hereby assigned to Beneficiary.  Beneficiary, after deducting therefrom all costs and expenses (regardless of the particular nature thereof and whether incurred with or without suit or before or after judgment), including reasonable attorney fees incurred by Beneficiary in connection with such compensation, shall apply and an all moneys so received by Beneficiary to restore or repair damage to the remaining Trust Estate, provided that any proceeds not so applied may be applied by Beneficiary, at Beneficiary's option, to reduce the indebtedness secured by this Deed of Trust (whether or not then due).  The application or release by beneficiary of any condemnation awards or other compensation shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.  Subject to the foregoing, Trustor shall execute and deliver to Beneficiary such further assignments of such compensation, awards, damages, causes of action, proceeds or other payments as Beneficiary may from time to time require.

ARTICLE X
ASSIGNMENT OF RENTS AND LEASES

10.1   Assignment.  As additional security for the Obligations secured by this Deed of Trust, Trustor hereby assigns, sells, transfers and conveys to Beneficiary during the continuance of this Deed of Trust, all contracts, leases, subleases and agreements relating to the sale, lease, sublease or use of any portion of the Trust Estate or the Property, together with all sales proceeds, rents, subrents, issues, royalties, income and profits of and from the Trust Estate.  Until the occurrence of an Event of Default, Trustor may collect and use all such sales proceeds, rents, subrents, issues, royalties, income and profits, as they become due and payable, and may retain, use and enjoy the Trust Estate.  Upon the occurrence and continuance of an Event of Default hereunder, Trustor's right to collect and use any of such proceeds shall cease, and beneficiary, shall have the right, with or without taking possession of the Trust Estate, and, either in person, by agent or through a court appointed receiver (Trustor hereby consents to the appointment of beneficiary or Beneficiary's designee as such receiver), to sue for or otherwise collect all such sales proceeds, rents, subrents, issues, royalties, income and profits, including those past due and unpaid.  Any sums so collected, after the deduction of all costs and expenses of operation and collection (regardless of the particular nature thereof and whether incurred with or without suit or before or after judgment), including reasonable attorney fees, shall be applied toward the payment of the Obligations.  Such right of collection and use of such proceeds by Beneficiary shall obtain both before and after the exercise of the power of sale provisions of this Deed of

23

Trust, the foreclosure of this Deed of Trust and throughout any period of redemption. The rights granted under this Section 10.1 shall in no way be dependent upon and shall apply without regard to whether all or a portion of the Trust Estate is in danger of being lost, removed or materially injured, or whether the Trust Estate or any other security is adequate to discharge the Obligations secured by this Deed of Trust. Beneficiary's failure or discontinuance at any time to collect any of such proceeds shall not in any manner affect the right, power and authority of Beneficiary thereafter to collect the same. Nothing contained herein, nor Beneficiary's exercise of Beneficiary's right to collect such proceeds, shall be, or be construed to be, an affirmation by Beneficiary of any contractual interest, tenancy, lease, sublease, option or other interest in the Trust Estate or an assumption of liability under, or a subordination of the lien or charge of this Deed of Trust to any contractual interest, tenancy, lease, sublease, option or other interest in the Trust Estate. All purchasers, tenants, lessees, sublessees and other persons who have any obligation to make any payment to Trustor in connection with the trust Estate or any potion thereof are hereby authorized and directed to pay the rents, subrents, issues, royalties, income, profits and other payments payable by them with respect to the Trust Estate, or any portion thereof directly to Beneficiary on the demand of Beneficiary. Beneficiary's receipt of such sales proceeds, rents, subrents, issues, royalties, income and profits shall be a good and sufficient discharge of the obligation of the purchaser, tenant, lessee, sublessee or other person concerned to make the payment connected with the amount so received by Beneficiary.

10.2    No Waiver of Rights by Collection of Proceeds. The entering upon and taking possession of the Trust Estate or any portion of the Trust Estate or the collection of sale proceeds, rents, subrents, issues, royalties, income, profits, proceeds of fire and other insurance policies, or compensation or awards for any taking or damaging of the Trust Estate, or the application or release thereof as aforesaid, shall not cure or waive any Event of Default or notice of default hereunder, shall not invalidate any act done pursuant to such notice of default, and shall not operate to postpone or suspend the obligation to make, or have the effect of altering the size of, any scheduled installments provided for in any of the Obligations secured by this Deed of Trust.

10.3    Indemnification. Trustor shall indemnify and hold Beneficiary harmless from and against all claims, demands, judgments, liabilities, actions, costs and fees (including reasonable attorney fees and costs) arising from or related to receipt by Beneficiary of the sale proceeds, rents, subrents, issues, royalties, income and profits from the Trust Estate or any portion of the Trust Estate, except negligent willful acts of Beneficiary.

ARTICLE XI
EVENTS OF DEFAULT AND REMEDIES

11.1    Events of Default. The occurrence and continuance of any one of the following shall constitute an Event of Default under this Deed of Trust:

(a)    Failure by Trustor to observe and perform any term, covenant or condition to be observed or performed by Trustor contained in this Deed of Trust, the Loan Agreement, the Note or any of the other Loan Documents.

24

(b)    Any representation or warranty of Trustor contained in this Deed of Trust, the Loan Agreement, the Note or any of the other Loan Documents was untrue when made.

(c)    A default by Trustor under the terms of any other promissory note, deed of trust, security agreement, undertaking or arrangement between Trustor and Beneficiary now in existence or hereafter arising.

11.2    <u>Notice</u>.  Unless otherwise expressly provided by the terms of this Deed of Trust or the other Loan Documents, if an Event of Default shall occur, Beneficiary shall give written notice of such occurrence to Trustor as provided in the Loan Agreement.

11.3    <u>Division of Trust Estate</u>.  Upon the occurrence and continuance of an Event of Default and if there are Hazardous Materials then present on the Property, Beneficiary, at Beneficiary's election and without any obligation to do so, may divide the Trust Estate into any number of parcels to facilitate the sale of the Trust Estate at a foreclosure sale.  In connection therewith, Beneficiary may:  (a) enter upon the Trust Estate and conduct or cause to be conducted inspections and surveys of the Trust Estate; (b) divide the Trust Estate in such manner as to segregate any Hazardous Materials into one or more distinct parcels; and (c) elect to sell at foreclosure sale only those portions of the Trust Estate that are not contaminated by or do not contain Hazardous Materials.  Trustor hereby consents to such division and sale of the Trust Estate.

11.4    <u>Acceleration Notice</u>.  Upon the occurrence and continuance of an Event of Default, Beneficiary shall have the option, in addition to any other remedy Beneficiary may have under the Note, to declare by notice to Trustor all sums secured by this Deed of Trust immediately due and payable and elect to have the Trust Estate sold in the manner provided herein.  In the event Beneficiary elects to sell the Trust Estate, Beneficiary shall execute or cause Trustee to execute a written notice of default, and election to cause the Trust Estate to be sold to satisfy the Obligations.  Such notice shall be filed for record in Utah County, Utah.

11.5    <u>Exercise of Power of Sale</u>.  After the lapse of such time as may then be required by law following recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, except as provided by law, shall sell the Trust Estate on the date and at the time and place designated in the notice of sale, either as a whole or in separate parcels, and in such order as Beneficiary may determine (but subject to any statutory right to Trustor to direct the order in which the Property, if consisting of several known lots or parcels, shall be sold), at public auction to the highest bidder, the purchase price payable in lawful money of the United States at the time of Sale.  The person conducting the sale may, for any cause deemed expedient, postpone the sale from time to time until it shall be completed. In every such case, notice or postponement shall be given by public declaration thereof by such person at the time and place last appointed for the sale or as otherwise provided by law.  Trustee shall execute and deliver to the purchaser a Trustee's Deed conveying the property so sold, but witout any covenant or warranty, expressed or implied.  The recitals in the Trustee's Deed of any matters or facts relating to the exercise of the power of sale and the sale of the Trust Estate shall be conclusive proof of the truthfulness thereof.  Any person, including Beneficiary, may bid at the sale.  Trustee shall apply the proceeds of the sale to payment of:  (a) the costs and expenses

25

of exercising the power of sale and of the sale, including the payment of the Trustee's fees and attorney fees and costs; (b) all sums expended or advanced by Beneficiary in conjunction with any provisions of this Deed of Trust, not then repaid, with accrued interest thereon from the date of expenditure, at the default rate of interest provided in the Loan Agreement; (c) all sums then secured by this Deed of Trust, including interest and principal on the Note;  and (d) the remainder, if any, to the person or persons legally entitled thereto, or Trustee, in Trustee's discretion, may deposit the balance of such proceeds with the Clerk of the District Court of Utah County, Utah.

     11.6   *Reserved.*

     11.7   <u>Foreclosure as a Mortgage</u>.  If an Event of Default occurs and continues hereunder, Beneficiary shall have the option to foreclose this Deed of Trust in the manner provided by law for the foreclosure of mortgages on real property, and Beneficiary shall be entitled to recover in such proceedings all costs and expenses incident thereto, including reasonable attorney fees and costs, in such amounts as shall be fixed by the Court.

     11.8   <u>Receiver</u>.  If an Event of Default occurs and continues, Beneficiary, as a matter of right and without regard to the then value of the Trust Estate or the interest of Trustor therein, shall have the right upon notice to Trustor to apply to any court having jurisdiction over the subject matter to appoint a receiver or receivers of the Trust Estate.  Any such receiver or receivers shall have all the usual powers and duties of a receiver and shall continue as such and may exercise all such powers until completion of the sale of the Trust Estate or the foreclosure proceeding, unless the receivership is sooner terminated.

     11.9   <u>No Remedy Exclusive</u>.  No remedy conferred upon or reserved to Beneficiary under this Deed of Trust shall be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Deed of Trust, the Loan Agreement, the Note or the other Loan Documents, or now or hereafter existing at law or in equity or by statute.  No delay or failure to exercise any right or power accruing upon any Event of Default shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient.

     11.10  <u>Cross Default</u>.  The occurrence and continuance of an Event of Default under this Deed of Trust, the Note, the Loan Agreement, any other Loan Document, or any other agreement or arrangement between Trustor and Beneficiary now existing or entered into hereafter, shall constitute a default under all such documents, including, without limitation, this Deed of Trust, the Note, the Loan Agreement, and other Loan Documents as well as any other such agreement or arrangement.

ARTICLE XII
<u>MISCELLANEOUS PROVISIONS</u>

     12.1   <u>Notices</u>.  Except as otherwise provide in this Deed of Trust or in any other Loan Document, whenever Beneficiary or Trustor desire to give or serve any notice, demand, request

26

or other communication with respect to this Deed of Trust or any other Loan Document, each such notice shall be in writing and shall be effective only if the notice is delivered by personal service, by nationally recognized overnight courier, by facsimile, or by mail, postage prepaid, addressed as follows:

|  |  |
|---|---|
| If to Trustor: | The Leed Corporation<br>Lon Montgomery, President<br>P.O. Box 2292<br>Twin Falls, ID 83303-2292 |
| With a copy to: | Robert J. Maynes<br>Attorney at Law<br>P.O. Box 3005<br>Idaho Falls, ID 83403 |
| If to Beneficiary, to: | |
| If to Trustee, to: | |

Any notice delivered personally or by courier shall be deemed to have been given when delivered.  Any notice sent by facsimile shall be presumed to have been received on the date transmitted.  Any notice sent by mail shall be presumed to have been received five (5) business days after deposit in the United States mail, with postage prepared and properly addressed.  Any party may change its address by giving notice to the other party of its new address in the manner provided above.

12.2    Severability.  If any provision of this Deed of Trust shall be held or deemed to be or shall, in fact, be illegal, inoperative or unenforceable, the same shall not affect any other provision or provisions contained in this Deed of Trust or render the same invalid, inoperative or unenforceable to any extent whatsoever.

12.3    Amendments, Changes and Modifications.   This Deed of Trust may not be amended, changed, modified, altered or terminated without the prior written consent of both Beneficiary and Trustor.

12.4    Governing Law.   This Deed of Trust shall be governed exclusively by and construed in accordance with the applicable laws of the State of Idaho, without giving effect to principles of conflicts of laws.

12.5    <u>Interpretation</u>.  Whenever the context shall require, the plural shall include the singular, the whole shall include any part thereof, and any gender shall include both other genders.  The article and section headings contained in this Deed of Trust are for purposes of reference only and shall not limit, expand or otherwise affect the construction of any provisions hereof.

12.6    <u>Binding Effect</u>.  This deed of Trust shall be binding upon shall inure to the benefit of the respective successors and assigns of Beneficiary and Trustor; however, it shall only be effective upon approval by the United States Bankruptcy Court for the District of Idaho.

12.7    <u>Waivers</u>.  Beneficiary's failure at any time or times hereafter to require strict performance by Trustor o any of the undertakings, agreements or covenants contained in this Deed of Trust shall not waive, affect or diminish any right of Beneficiary hereunder to demand strict compliance and performance therewith.  Any waiver by Beneficiary of any Event of Default under this Deed of Trust shall not waive or affect any Event of Default hereunder, whether such Event of Default is prior to subsequent thereto and whether of the same or a different type.  None of the undertakings, agreements or covenants of Trustor under this Deed of Trust shall be deemed to have been waived by Beneficiary, unless such waiver is evidenced by an instrument in writing signed by a manager of Beneficiary and directed to Trustor specifying such waiver.

12.8    <u>Access</u>.  Beneficiary, or Beneficiary's authorized agents and representatives, is hereby authorized and shall have the right, at all reasonable times during the existence of this Deed of Trust and without prior written notice to Trustor, to enter upon the Trust Estate or any portion of the Trust Estate for the purpose of inspecting the Trust Estate or for the purpose of performing any of the acts that Beneficiary is authorized under this Deed of Trust to perform.

12.9    <u>Successor Trustee</u>.  Beneficiary may appoint a successor trustee at any time by filing for record in the office of the County Recorder of each county in which the Trust Estate or some part hereof is situated a substitution of trustee.  From the time the substitution is filed of record, the new Trustee shall succeed to all the powers, duties, authority and title of the Trustee named herein or of any successor trustee.  Each such substitution shall be executed and acknowledged, and notice thereof shall be given and proof thereof made in the manner provided by law.

12.10   <u>Acceptance of Trust</u>.  Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or any action or proceeding in which Trustor, Beneficiary, or Trustee shall be party, unless brought by Trustee.

12.11   <u>Request for Notice of Default</u>.  Trustor requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Trustor at the address set forth in Section 12.1 of this Deed of Trust.

*[Spacing Intentional]*

28

12.12 <u>Counterparts</u>.  This Deed of Trust may be executed in any number of counterparts, each of which when so executed and delivered, shall be deemed an original, but all such counterparts taken together shall constitute only one instrument.

      DATED effective as of the date first above written.

TRUSTOR:

The Leed Corporation, an Idaho corporation

By:   _____
Its:   President

STATE OF IDAHO     )
                 :*SS*
County of Bonneville   )

      The foregoing instrument was acknowledged before me this _____ of August, 2010, by Lon E. Montgomery, who is the President of The Leed Corporation, an Idaho corporation.

_____
NOTARY PUBLIC
Residing at:
Commission Expires:

<u>GUARANTY</u>

THIS GUARANTY ("Guaranty") is made and entered into effective as of the ___ day of August 2010, by, Lon E. Montgomery, whose address is _____ ("Guarantor"), to and for the benefit of Granite Loan Funding, LLC a Utah limited liability company, whose address is 320 West 500 South, Bountiful, Utah 84010 ("Lender").

RECITALS:

A.      The Leed Corporation, an Idaho corporation ("Borrower"), has requested that Lender make a loan (the "Loan"), in the principal amount of SIX HUNDRED FOUR THOUSAND, EIGHT HUNDRED DOLLARS ($604,800.00) to be secured by certain real property owned by Borrower located in Lincoln County, Idaho, and the improvement installed or constructed thereon, which real property is more particularly described on Exhibit "A" attached to and incorporated by reference in this Guaranty (the "Property").

B.      The Loan is to be evidenced and secured by the following instruments and documents to be entered into in favor of Lender an Acquisition and Development Loan Agreement, an Acquisition and Development Loan Promissory Note in the original principal amount of the Loan (the "Note"), and a Acquisition and Development Loan Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing (the "Deed of Trust") (all such documents and any other documents that evidence or secure the Loan are hereinafter collectively referred to as the "Loan Documents").

C.      Guarantor is the President of Borrower, and Guarantor will personally benefit from the granting of the Loan by Lender to Borrower.

D.      Lender requires, as a condition precedent to making the Loan, that Guarantor guarantee the payment of all principal, interest and other charges, costs and fees provided for in the Note and the other Loan Documents, and the performance by borrower of all terms, covenants and conditions to be performed, satisfied and observed by Borrower under the provisions of the Loan Documents.

E.      Lender has committed to fund the Loan based in part upon the execution of this Guaranty and Borrower and Guarantor have accepted the terms and conditions of the Loan set forth in the Loan Documents.

NOW, THEREFORE, in order to induce Lender to make the Loan to Borrower, and in consideration of other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor agrees as follows:

1.      <u>Guaranty</u>.  Guarantor hereby unconditionally and absolutely guarantees the following (collectively the "Obligations"):

(a)      The payment and performance of each and every covenant, condition and obligation of Borrower under the Note, the Deed of Trust and the other Loan Documents;

30

(b)     The payment of all disbursements, advances, debts, obligations and liabilities relating to the Loan, now or hereafter made, incurred or created, whether voluntarily or involuntarily or however arising, whether due or not due, by acceleration or otherwise, whether absolute or contingent, liquidated or unliquidated, whether incurred before or after the occurrence and continuance of an Event of Default (as defined in the Loan Agreement), which are owed by Borrower to Lender pursuant to any of the Loan Documents;

(c)     The payment of all fees, charges, expenses, reasonable attorney fees and costs of court chargeable to Borrower or incurred by Lender under this Guaranty or any of the Loan Documents;

(d)     Any deficiency amount resulting from the foreclosure or other sale of the Property or other property securing the Loan; and

(e)     Any and all extensions, amendments, modifications or renewals of any of the foregoing.

2.     <u>Satisfaction by Guarantor</u>.  In the event any of the Obligations are not satisfied when due, Guarantor, upon demand by Lender, shall forthwith satisfy such Obligations or, if the maturity thereof shall have been accelerated by Lender, Guarantor will forthwith satisfy all Obligations of Borrower.  No such satisfaction shall discharge the liability of Guarantor until all Obligations have been satisfied in full.  In addition, Guarantor shall pay to Lender, upon demand, all losses, reasonable costs and expenses, including, without limitation, attorney fees and court costs, incurred by Lender in attempts to satisfy the Obligations or the liability of Guarantor under this Guaranty.

3.     <u>Consent of Guarantor</u>.  Guarantor hereby authorizes Lender, without notice or demand and without affecting Guarantor's liability hereunder, from time to time, to:

(a)     Renew, compromise, extend, accelerate or otherwise change the time for payment of:  or otherwise change the term of the Obligations or any part hereof including, without limitation, the increase or decrease of the rate or amount of Obligations and the exchange, enforcement, waiver and release of any security therefore;

(b)     Apply to the Obligations any security underlying the Obligations and direct the order or manner of sale thereof as Lender in Lender's discretion may determine;

(c)     Release or substitute any endorser or any other guarantor of the Obligations without affecting the obligations of any remaining guarantor;

(d)     Assign this Guaranty in whole or in part;

(e)     Exchange, release or surrender to Borrower or to Guarantor, or to any pledgor or grantor any collateral for the Obligations, or waive, release or subordinate any

security interest, in whole or in part now or hereafter held by Lender as security for any of the Obligations;

        (f)     Waive or delay the exercise of any of Lender's rights or remedies arising out of or pertaining to the Loan against Borrower, Guarantor or any other person;

        (g)     Take or omit to take any action or enforce any right, power or remedy referred to or conferred by the Guaranty or any of the Loan Documents; and

        (h)     Apply payments by Borrower, Guarantor or any other person or entity to any of the Obligations.

    4.    <u>Waivers by Guarantor</u>.  Guarantor hereby waives:

        (a)     Any legal or equitable rights to require Lender to proceed against Borrower proceed against or exhaust any security for the Obligations or pursue any other remedy Lender may have against Borrower;

        (b)     Any right of subrogation Guarantor may have against Borrower and the enforcement of any remedy which Lender now has or may hereafter acquire against Borrower; and

        (c)     All notices of presentment, demand, protest and notice of nonperformance or nonpayment, and any other demands and notices required by law, except as such waiver may be expressly prohibited by law.

    5.    <u>*Reserved.*</u>

    6.    <u>Absolute Guaranty</u>.  The obligations of Guarantor under this Guaranty are absolute and conditional are independent of the Obligations of Borrower and any other guarantor of the Obligations.  A separate action or actions may be brought and prosecuted against Guarantor, whether action is brought against Borrower or any such other guarantor or whether Borrower or any such other guarantor is joined in any such action or actions.  The liability of Guarantor to Lender shall not in any manner be affected by any action taken or not taken by Lender, nor by the partial or completed unenforceability or invalidity of any other guaranty, surety agreement, pledge, assignment or other security for any of the Obligations.

    7.    <u>Subordination of Borrower's Indebtedness to Guarantor</u>.  The following matters are hereby subordinated to the Obligations of Borrower owed and to be owed to Lender:

        (a)     Any indebtedness of Borrower now or hereafter owed to or held by Guarantor;

        (b)     Any defense arising out of the absence, impairment or loss of any right of reimbursement or subrogation or other right or remedy of Guarantor against Borrower or any collateral for the Loan; and

(c)    Any benefit of, and any right to participate in, any security for the Obligations now or hereafter held Lender.

Any indebtedness of Borrower to Guarantor, if Lender so requests, shall be collected, enforced and received by Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the provisions of this Guaranty.

8.    <u>Accuracy of Financial Statements</u>.    Guarantor recognizes that Lender's commitment to fund the Loan on the basis of the execution of this Guaranty was based in material part on Lender's analysis of Guarantor's financial statements submitted to Lender in connection with Borrower's application for the Loan.  With respect to such financial statements, Guarantor hereby states, represents, warrants, covenants and agrees as follows:

(a)    The financial statements are complete and accurate, properly disclose all assets and liabilities with respect to which Guarantor has an interest or is obligated.

(b)    Except as expressly disclosed in the financial statements, no other person or entity has any interest n or lien or security interest upon or in any of the assets listed therein.

(c)    Between the date of the financial statements and the date of this Guaranty, there has been no material change in the financial condition of Guarantor as set forth in the financial statements, and Guarantor continues to own all of the assets in the manner described in the financial statements.

9.    <u>Financial Reporting</u>.  Guarantor shall furnish to Lender the following financial statements:

(a)    As soon as available and in any event within ninety (90) days after the end of each calendar year, Guarantor shall deliver to Lender personal financial statements for the preceding calendar year; and

(b)    As soon as available and in any event by October 31st of each year, Guarantor shall submit to Lender a copy of all federal, state and local tax returns filed by Guarantor, together with copies of all schedules and attachments thereto.

10.    <u>Borrower's Agents</u>.  Lender shall have no obligation to inquire into the powers and authority of Borrower or the agents acting or purporting to act on Borrower's behalf, and any Obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder.

11.    <u>Attorney Fees</u>.  Guarantor shall pay reasonable attorney fees and all other reasonable costs and expenses which may be incurred by Lender in the enforcement of this Guaranty regardless of whether an action is commenced or prosecuted to judgment.  In addition, Guarantor hereby consents to the jurisdiction to the courts of the state of Idaho and to venue in

the United States Bankruptcy Court for the District of Idaho as property forum and venue for resolution of disputes under this Guaranty.

12.    <u>Joint and Several Liability</u>.  In the event the Loan is guaranteed by more than one person, all such persons shall be jointly and severally liable for all liabilities and obligations created pursuant to the Loan Documents.  Any modifications of the terms of payment or extension of time of payments under the note of any of the other Loan Documents shall in no way impair their joint and several liability.

13.    <u>Amendments</u>.  Neither this Guaranty nor any provisions hereof may be changed, waived, discharged or terminated orally and may only be modified or amended by an instrument in writing, signed by both Lender and Guarantor.

14.    <u>Binding Effect</u>.   This Guaranty shall be binding, jointly and severally, upon Guarantor, and the successors and assigns of Guarantor.  This Guaranty shall inure to the benefit of Lender, and Lender's successors and assigns.

15.    <u>Waivers by Lender</u>.  Lender's failure at any time or times hereafter to require strict performance by Borrower of any of the undertakings, agreements or covenants contained in the Loan Documents, or by Guarantor of any of the undertakings, agreements or covenants contained in this Guaranty, shall not waive, affect or diminish any right of the Lender to demand strict compliance and performance therewith.   None of the undertakings, agreements or covenants of Guarantor under this Guaranty shall be deemed to have been waived by Lender, unless such waiver is evidenced by an instrument in writing signed by an officer of Lender and directed to Guarantor specifying such waiver.

16.    <u>Survival</u>.  This Guaranty shall survive the disbursement of the Loan proceeds, and each an every one of the obligations and undertakings of Guarantor contained herein shall be continuing obligations and undertakings and shall not cease and terminate until all of the Obligations shall have been fully paid, performed and discharged.

17.    <u>Assignment</u>.  Lender may assign Lender's rights under this Guaranty, in whole or in party, to any other person, firm or corporation.

18.    <u>Notices</u>.  Except as otherwise provided herein, whenever Lender or Guarantor desire to give or serve any notice, demand, request or other communication with respect to this Guaranty, each such notice shall be in writing and shall be effective only if the notice is delivered by personal service, by nationally-recognized overnight courier, by facsimile, or by mail, postage prepaid, addressed a follows:

        If to Lender:

34

If to Guarantor:

Any notice delivered personally or by courier shall be deemed to have been given when delivered.  Any notice sent by facsimile shall be presumed to have been received on the date transmitted.  Any notice sent by mail shall be presumed to have been received five (5) business days after deposit in the United States mail, with postage prepaid and properly addressed.  Any party may change its address by giving notice to the other party of its new address in the manner provided above.

19.    Severability.  If any term or provision of this Guaranty shall, to any extent, be determined by a court of competent jurisdiction to be void, voidable or unenforceable, such void, voidable or unenforceable the remaining portion of this Guaranty shall be interpreted in a manner that results in the reasonable enforcement and application of this Guaranty.

20.    Interpretation.  Whenever the context shall require, the plural shall include the singular, the whole shall include any part thereof and any gender shall include both other genders.  The paragraph headings contained in this Guaranty are for purposes of reference only and shall not limit, expand or otherwise affect the construction of any provisions hereof.

21.    Governing Law.  This Guaranty and all matters relating hereto shall be governed by, construed and interpreted in accordance with the laws of the State of Idaho, without giving effect to principles of conflicts of law.

22.    Remedies Cumulative.  All of Lender's rights and remedies under this Guaranty shall be cumulative.  Any failure of Lender to exercise any right or remedy under this Guaranty or under any of the Loan Documents shall not be construed as a waiver of the right to exercise the same or any other right or remedy at any time and from time to time, thereafter.

23.    Jury Waiver.    GUARANTOR AND LENDER HEREBY JOINTLY AND SEVERALLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS INSTRUMENT AND TO ANY OF THE LOAN DOCUMENTS, THE OBLIGATIONS HEREUNDER OR THEREUNDER, ANY COLLATERAL SECURING THE OBLIGATIONS, OR ANY TRANSACTION ARISING THEREFROM OR CONNECTED THERETO.   GUARANTOR AND LENDER EACH REPRESENTS TO THE OTHER THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

Dated effective as of the date first above written:

GUARANTOR:        _____

EXHIBIT "A"

Legal Descriptions

1.      412 North Birch Street, Shoshone, County of Lincoln, ID 83352

Part of Block "J" Richard's Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereto, on record in the Office of the Recorder of said County, described as follows:

Commencing at the Southwest corner of Block "J" Richard's Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereof, on record in the Office of the Recorder of said County, said point being North 89 46'09" East 30.00 feet and North 00 12'05" West 30.00 feet from the intersection point of West 4th Street and Birch Street; thence North 00 12'05" West 170.00 feet and being the TRUE POINT OF BEGINNING; thence North 00 12'05" West 50.00 feet; thence North 89 46'09" East 150.02 feet; thence South 00 12'05" East 50.00 feet; thence South 89 46'09" West 150.02 feet to the TRUE POINT OF BEGINNING.

HEREWITH CALLED LOT 12j

2.      410 North Birch Street, Shoshone, County of Lincoln, ID 83352

Part of Block "J" Richard's Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereto, on record in the Office of the Recorder of said County, described as follows:

Commencing at the Southwest corner of Block "J" Richard's Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereof, on record in the Office of the Recorder of said County, said point being North 89 46'09" East 30.00 feet and North 00 12'05" West 30.00 feet from the intersection point of West 4th Street and Birch Street; thence North 00 12'05" West 120.00 feet and being the TRUE POINT OF BEGINNING; thence North 00 12'05" West 50.00 feet; thence North 89 46'09" East 150.02 feet; thence South 00 12'05" East 50.00 feet; thence South 89 46'09" West 150.02 feet to the TRUE POINT OF BEGINNING.

HEREWITH CALLED LOT 13j

3.      402 North Birch Street, Shoshone, County of Lincoln, ID 83352

Part of Block "J" Richard's Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereto, on record in the Office of the Recorder of said County, described as follows:

Commencing at the Southwest corner of Block "J" Richard's Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereof, on record in the Office of the Recorder of said County, said point being North 89 46'09" East 30.00 feet and North 00 12'05" West 30.00 feet from the intersection point of West 4th Street and Birch Street and being the TRUE POINT OF BEGINNING; thence North 00 12'05" West 70.00 feet; thence North 89 46'09" East 150.02 feet; thence South 00 12'05" East 70.00 feet; thence South 89 46'09" West 150.02 feet to the TRUE POINT OF BEGINNING.

HEREWITH CALLED LOT 16j

4.       210 West 4th Street, Shoshone, County of Lincoln, ID 83352

Part of Block "J" Richard's Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereto, on record in the Office of the Recorder of said County, described as follows:

Commencing at the Southwest corner, said point being North 89 46'09" East 30.00 feet and North 00 12'05" West 30.00 feet from the intersection point of West 4th Street and Birch Street; thence North 89 46'09" East 166.02 feet to the TRUE POINT OF BEGINNING; thence North 00 12'05" West 192.00 feet; thence North 89 46'09" East 73.21 feet; thence South 00 12'05" East 192.00 feet; thence South 89 46'09" West 72.23 feet to the TRUE POINT OF BEGINNING.

HEREWITH CALLED LOT 1j

5.       413 North Apple Street, Shoshone, County of Lincoln, ID 83352

The North 8 feet of Lot 5, all of Lot 6 and the South 20 feet of Lot 7 of Block "J" of the RICHARDS ADDITION of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereof, on record in the Office of the Recorder of said County.

HEREWITH CALLED LOT 6j

6.       415 North Apple Street, Shoshone, County of Lincoln, ID 83352

The North 20 feet of Lot 7 and all of Lot 8 of Block "J" of the RICHARDS ADDITION of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereof, on record in the Office of the Recorder of said County.

HEREWITH CALLED LOT 8j

7.       501 North Apple Street, Shoshone, County of Lincoln, ID 83352

All of Lot 1 and the South 28 feet of Lot 2 of Block 2 of the First Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereof, on record in the Office of the Recorder of said County.

HEREWITH CALLED LOT 2a

8.       505 North Apple Street, Shoshone, County of Lincoln, ID 83352

The North 2 feet of Lot 2 and all of Lot 3, and the South 18 feet of Lot 4 of Block 2 of the First Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereof, on record in the Office of the Recorder of said County.

HEREWITH CALLED LOT 4a

9.      509 North Apple Street, Shoshone, County of Lincoln, ID 83352

All of Lot 5 and the South 8 feet of Lot 6 and the North 12 feet of Lot 4 of Block 2 of the First Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereof, on record in the Office of the Recorder of said County.

HEREWITH CALLED LOT 5a

10.     515 North Apple Street, Shoshone, County of Lincoln, ID 83352

The North 22 feet of Lot 6, and the South 28 feet of Lot 7 of Block 2 of the First Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereof, on record in the Office of the Recorder of said County.

HEREWITH CALLED LOT 7a

11.     519 North Apple Street, Shoshone, County of Lincoln, ID 83352

The North 2 feet of Lot 7 and all of Lot 8 and the South 18 feet of Lot 9 of Block 2 of the First Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereof, on record in the Office of the Recorder of said County.

HEREWITH CALLED LOT 9a

12.     504 Carmen Street, Shoshone, County of Lincoln, ID 83352

Lots 19, 20 and 21 in Block 11 of Mountain View Addition, Lincoln County, State of Idaho as the same is platted in the official plat thereof, now of record in the office of the Recorder of said County.

HEREWITH LOTS 19, 20 and 21

13.     187 East Eric Road, Shoshone, County of Lincoln, ID 83352

Lot 15 of Sky High Estates IV, Lincoln County, State of Idaho as the same is platted in the official plat thereof, now of record in the office of the Recorder of said County.

HEREWITH LOT 15

14.     144 East 420 North, Shoshone, County of Lincoln, ID 83352

Lot 24 in Northview Subdivision, Lincoln County, Idaho, as the same is platted in the official plat thereof, now of record in the office of the Recorder of said County.

HEREWITH LOT 24