ROBERT J. MAYNES, ISB No. 6905
*Attorney at Law*
P. O. Box 3005
Idaho Falls, ID 83405
Telephone: (208) 552-6442
Facsimile: (208) 522-1334
Email: mayneslaw@hotmail.com

*Debtor's counsel*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 10-40743 JDP |
| LEED CORPORATION (THE), | Chapter 11 |
| Debtor. | |

---

## SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION

---

The Leed Corporation, the Debtor, proposes the following *Second Amended Plan of Reorganization* ("Plan"). It is important that you read this plan carefully, and in conjunction with the Debtor's *Second Amended Disclosure Statement* to evaluate the impact such plan will have upon your claim or interest.

## PLAN SUMMARY

This Plan consists of four components of the Debtor's operation, namely (1) the landscaping operations, (2) the rental operations and real property sales, (3) the winding down of construction operations, and (4) the pending litigation. It is the Debtor's stated purpose under this Plan to first, return the Debtor's primary business operations back to its landscaping business which has proven to be profitable over the years. Second, to retain those rental properties that have a positive cash flow of the existing indebtedness as

determined under 11 U.S.C. 506 or as stipulated to by the relevant secured creditors (including the real property in which interest has been waived for a limited time period), during the term of the Plan until such time as the Debtor determines the properties should be sold (or refinancing is obtained on more favorable terms)—with the Net Sale Proceeds being distributed to the unsecured creditors upon closing of the sale on each property. Third, constructions operations shall be restricted to the completion of the Old School Project, which homes can be completed, in light of the settlement agreements proposed herein and related financing, and sold for a profit—which Net Sale Proceeds shall be distributed to the unsecured creditors upon close of the sale of each home. Last, this Plan provides that the Net Litigation Recovery, if any, shall be distributed to unsecured creditors, as more fully described herein below.   The Plan further provides that with respect to all operations, except the landscaping operations, that the Debtor shall continue to manage its affairs under the Plan subject to the oversight and input of the Official Committee of Unsecured Creditors for the duration of the Plan.

## *DEFINITIONS*

Unless the context otherwise requires, the following terms, when used in this Second Amended Plan of Reorganization and the Second Amended Disclosure Statement shall have the following meanings:

1.    ADMINISTRATIVE CLAIM:  A cost or expense of administration of this Chapter 11 case, including any actual and necessary expense of preserving or liquidating the estate, any actual and necessary expense of operating the business of the Debtor, and all allowances approved by the Court in accordance with the Bankruptcy Code.

2    ALLOWED CLAIM:  "Allowed Claim" shall mean a Claim:

(i)    in which a proof of Claim has been filed with the Court on or prior to the Bar Date, which claim has been determined by the Bankruptcy Court to be allowed by law; or

(ii)   which is scheduled in the Debtor's schedules of assets and liabilities and statement of financial affairs filed with the Court pursuant to §521 of the Bankruptcy Code and which has not been listed (or is no longer listed on the Confirmation Date, if previously so listed) as disputed, contingent or unliquidated; or

(iii)   in respect of which a proof of Claim has been filed with the Court pursuant to §502(h) or §502(i) of the Bankruptcy Code; and in any case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule or an order of the Court, or as to which, if objections have been interposed, the Claim has been allowed by order of the Court.

3.   <u>ALLOWED INTEREST:</u>   "Allowed Interest" shall mean an interest in respect of which a proof of Interest has been filed with the Court on or prior to the Bar Date.

4.   <u>BANKRUPTCY CODE:</u>   "Bankruptcy Code" or "Code" shall mean the United States Bankruptcy Code, 11 U. S. C. §101 et seq. , and any amendments thereof.

5.   <u>CLAIM:</u> "Claim" shall mean any right to payment or right to an equitable remedy against Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

6.   <u>CLASS:</u> "Class" shall mean any class into which Claims or Interests are classified pursuant to the terms of the Plan.

7.   <u>CONFIRMATION DATE:</u>   The first business day occurring on or after the (14th) day after the Order of Confirmation is entered by the Court provided, however, that if a stay of the order confirming the Plan is in effect on such first business day, then the Confirmation Date shall be the first business day thereafter on which (i) no stay of the order confirming the Plan is in effect and (ii) the order confirming the Plan has not been vacated.

8.   <u>CONTESTED CLAIM:</u> "Contested Claim" shall mean any Claim which is listed on the schedules filed by the Debtor as contingent, unliquidated or disputed or is, or becomes, the subject of an objection filed with the Court in accordance with the provisions of the Bankruptcy Code and which remains unresolved.

9.   <u>COURT:</u> "Court" shall mean the United States Bankruptcy Court for the District of Idaho, presiding over the cases or, if necessary the United States District Court for said district having original jurisdiction over bankruptcy cases and the judges thereof.

10.   <u>EFFECTIVE DATE:</u>   The effective date of the Plan shall be the Confirmation Date as that term is defined above.

11.    IN FULL:  "In full" shall mean the amount owing as of the date of the filing of petition, the amount provided in a proof of claim owing as of the date of the filing of the petition, or the amount listed in the bankruptcy schedules filed with the Bankruptcy Court, whichever is less.  "In full" shall further mean a payment without post-petition interest, unless specifically provided for hereinafter.

12.    NET LITIGATION RECOVERY:  "Net Litigation Recovery" means any and all funds recovered for the benefit of this estate, exclusive of the payment of attorney's fees and costs.  It also includes the Net Sale Proceeds on real property in which liens are successfully avoided.

13.    NET PROFIT:  "Net Profit" shall mean the operating funds remaining to the Debtor after payment of all operating costs, taxes, capital improvements, plan payments to members of the secured and priority unsecured creditors classes as set forth herein, etc., during each Plan Year, as defined herein below, calculated annually.

14.    NET SALE PROCEEDS:  "Net Sale Proceeds" shall mean that portion of the proceeds remaining to the Debtor, i.e. the Debtor's interest, from the sale of any of the real property, exclusive of realtor's commission, title fees, and ordinary and customary closing costs and fees.

15.    NET RENTS:  "Net Rents" shall mean the rental proceeds remaining after payment of accruing post-petition real property taxes, associated insurance premiums, management fees, maintenance and repairs, advertising, etc.

16.    PLAN TERM:  "Plan Term" shall mean the eight (8) years immediately following the Effective Date, without any prepayment penalty.

17.    PLAN YEAR:  "Plan Year" shall mean the year(s) immediately following the Effective Date.  For example, Plan Year One shall be the 12 months immediately following the Effective Date, Plan Year Two shall be months 13 to 24 immediately following the Effective Date, and so on.

18.    PERSON:  "Person" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organizations, or a government or any agency or political subdivision thereof.

19.    REVENUE CODE:  "Revenue Code" shall mean the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 1 et seq.

ARTICLE ONE
<u>CLASSIFICATION CLAIMS AND INTEREST</u>

All allowed claims and allowed interests have been placed in the following classes.  The Debtor has determined which claims fall into the classes described below.  A Proof of Claim or interest which asserts a claim or an interest which is properly included in more than one class is in a class to the extent it qualifies within the description of such class and is in a different class to the extent it qualifies within the description of such different class.

1.      PRIORITY CLAIMS

A.      CLASS PC1:  Class PC1 consists of all allowed claims against the Debtor entitled to priority pursuant to 11 USC §507(a)(2) or §507(a)(3) of the Bankruptcy Code, but excluding the allowed claims included in Classes PC2 and PC3.  This classification also includes those claims premised on §503(b)(1) of the Bankruptcy Code, which arose from transactions pursuant to §364(a) of the Bankruptcy Code.  The members of this class include the following:

1.      The Internal Revenue Service, pursuant to 11 USC § 507(a)(2) and 11 USC § 503(b)(1)(B);

2.      The State Tax Commission, State of Idaho, pursuant to 11 USC § 507(a)(2) and 11 USC § 503(b)(1)(B); and

4.      The United States Trustee's Office.

B.      CLASS PC2:  Class PC2 consists of all allowed claims having priority by reason of the provision of 11 USC §507(a)(2) and § 330(a).  The members of this class include the following:

SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 5

1.      Robert J. Maynes, the attorney representing the Debtor in Possession;

2.      Nathan M. Olsen, Esq., co-counsel representing the Debtor-in-possession with regards to the Debtor's Rule 9011 Motion for Sanctions and in the adversary proceeding against Meyers et al.

3.      W.L. (Lee) Grigg, ABA of Tax Management Services, LLC;

4.      Hartman Appraisals, the Debtor's proposed appraiser;

5.      Exit Realty, the Debtor's proposed realtor/broker;

6.      Paul Landaker, the Debtor's proposed marketing expert; and

7.      Such other professionals as the Court may subsequently approve.

C.      CLASS PC3:  Class PC3 consists of all allowed claims having priority by reason of the provision of 11 USC §507(a)(4).  There appear to be no members of this class.

D.      CLASS PC4:  Class PC4 consists of all allowed claims against the Debtor entitled to priority pursuant to 11 USC §507(a)(8), consisting of claims of governmental units for taxes or duties in such amounts as may be allowed by the Bankruptcy Court.  This class includes the claims of the Internal Revenue Service (IRS); the Idaho Department of Labor and the Idaho State Tax Commission.

E.      CLASS PC5:  Class PC5 consists of all allowed claims having priority by reason of the provision of 11 USC §507(a)(1) and §507(a)(5) through §507(a)(7) of the Bankruptcy Code.  There appear to be no members of this class.

2.      SECURED CLAIMS

A.      CLASS SC1:  Class SC1 consists of the post-petition, §364(d) loans provided by Equity Trust Company custodian FBO Neal C. Hocklander IRA.

B.      CLASS SC2:  Class SC2 consists of the contested secured interests of BFH 2009 Realty Trust, BZ 2009 Realty Trust, D&M 2009 Realty Trust, Greatland Project Development, Inc., JP 2009 Realty Trust, MGZ 2009 Realty Trust, MSCRN 2009 Realty Trust, RMBZ 2009 Realty Trust, SBSB 2009 Realty Trust, WHRS 2009 Realty Trust, Richard M. Frucci, Louis Gargasz, Richard N. Krauth, Equity Trust Co., Custodian FBO Bruce A. Quimby IRA, Spruce Mountain Associates, LLC, Equity Trust Co., Custodian FBO Raymond P. Kleopper II IRA, Pensco Trust Co., Custodian FBO David L. DeVeber IRA, NTC and Company, FBO Robert T. Keating IRA, Equity Trust Co., Custodian FBO Andrea S. Quimby, and Equity Trust Co., Custodian FBO Bruce A. Quimby IRA, and specifically of the bankruptcy estates of Financial Resources Mortgage, Inc., C L & M, Inc., Greatland Project Development, Inc., D & M 2009 Realty Trust, WHRS2009 Realty Trust, and many other debtors jointly administered in Case No. 09-14565-JMD.

C.      CLASS SC3: Class SC3 consists of the allowed secured claim of David and Martha Orr.

D.      CLASS SC4:  Class SC4 consists of the contested secured claims of those persons asserting secured claims in the Old School Lots pursuant to Idaho's

Mechanic Lien Statute, including, but not limited to, Vargas Roofing, Agundez Concrete, Franklin Building Supply, Timberline Exteriors, John Deere Landscape, Woodmaster, Quality Truss, and Kenny Cardona.

   E. CLASS SC5:  Class SC5 consists of the allowed secured claim of Deere & Company/ John Deere Credit (listed in Schedule D under John Deere Credit, Account No. B2008-1047478-7) Specifically, this class SC5 relates to the claim asserted by Deere & Company in its Adversary Complaint filed as Adv. Docket No. 1 in Adversary Case No. 10-08091 JDP.

   F. CLASS SC6:  Class SC6 consists of the allowed secured claim of Farm Bureau Finance Company (Proof of Claim No. 13).

   G. CLASS SC7:  Class SC7 consists of the allowed secured claim of Farm Bureau Finance Company (Proof of Claim No. 14).

   H. CLASS SC8:  Class SC8 consists of the allowed secured claim of Farm Bureau Finance Company (Proof of Claim No. 15)

   I. CLASS SC9:  Class SC9 consists of the allowed secured claim of Wells Fargo Dealer Services related to VIN -63553 (Proof of Claim 23).

   J. CLASS SC10:  Class SC10 consists of the allowed secured claim Wells Fargo Dealer Services related to VIN -15782 (Proof of Claim 24).

   K. CLASS SC11:  Class SC11 consists of the allowed secured claim of Wells Fargo Dealer Services related to VIN -63007.

   L. CLASS SC12:  Class SC12 consists of the allowed secured claim of Idaho Mutual Trust, LLC (IMT).

M.      CLASS SC13:  Class SC13 consists of the allowed secured claim of 21st Mortgage Corporation (Proof of Claim No. 19).

N.      CLASS SC14:  Class SC14 consists of the allowed secured claim of 21st Mortgage Corporation (Proof of Claim No. 20).

O.      CLASS SC15:  Class SC15 consists of the allowed secured claim of Deere & Company/ John Deere Credit (Proof of Claim No. 16).

P.      CLASS SC16:  Class SC16 consists of the allowed secured claim of Neal Hocklander (Schedule D).

Q.      CLASS SC17:  Class SC17 consists of the allowed secured claim of the Idaho State Tax Commission.

R.      CLASS SC18:  Class SC18 consists of the allowed secured claims of the Internal Revenue Service.

S.      CLASS SC19:  Class SC19 consists of the allowed secured claims of GMAC, specifically, Claims 42, 44, 45, 52, 62, 63, and 64 and as noted in the Debtor's schedules. of Security

T.      CLASS SC20:  Class SC20 consists of the allowed secured claim Financial Fund, LLC.

U.      CLASS SC21: Class SC21 consists of the allowed secured claim of Twin Falls County.

V.      CLASS SC22:  Class SC22 consists of the allowed secured claim of EMC.

W.      CLASS SC23:  Class SC23 consists of the allowed secured claims of Bank of America (BOA).

X.      CLASS SC24:  Class SC24 consists of the contested secured claim of Lincoln County.

Y.      CLASS SC25:   Class SC25 consists of the contested secured claims or interests, and unsecured claims or interests of the Defendants named in Adversary Case No. 10-08086 JDP, namely Robert & Kathi Meyers, Mitch and Laura Campbell and affiliated business entities and persons.

Z.      CLASS SC26:  Class SC26 consists of the allowed secured claim of Gerald Martens or his successors in interests.

AA.      CLASS SC27:   Class SC27 consists of the contested secured claims of Rusty and Ann Parker (Proof of Claim 61).

BB.      CLASS SC28:  Class SC28 consists of the allowed secured claim of Montrose Investments.

CC.      CLASS SC29:  Class SC29 consists of the contested secured claim of Vanderbilt Mortgage.

DD.      CLASS SC30:  Class SC30 consists of contested secured claim of Spruce Mountain Associates, LLC.

EE.      CLASS SC31:  Class SC31 consists of the contested secured claim of Shaun Miner.

FF.      CLASS SC32.  Class SC32 consists of the contested secured claim of Greentree Mortgage.

GG.      CLASS SC33: Class SC33 consists of the contested secured claim of Ocwen Loan Services.

3.    UNSECURED CLAIMS

A.    CLASS UC1:  Classification of Unsecured Claims.  The following unsecured claims, if any, will receive the indicated dollar amounts, in equal annual installments during the term hereof, on their allowed claim.  Payments shall commence upon confirmation of this Plan and filing of an allowed claim.

*There are no classified claims.*

B.    CLASS UC2:  Class UC2 consists of all allowed unsecured claims in the estate.

4.    EQUITY INTERESTS

A.    CLASS EI1:  Class EI1 consists of the two prepetition equity interest holders, namely, the pre-petition shareholders of the corporation:

Lon E. Montgomery
726 N. 350 E.
Shoshone, ID 83352

Joshua McCuistion
272 Primrose Way
Shoshone, ID 83352

B.    CLASS EI2.  Class EI2 consists of the post-petition equity interest holder:

Lon E. Montgomery
726 N. 350 E.
Shoshone, ID 83352

ARTICLE TWO
DESIGNATION AND TREATMENT OF UNIMPAIRED CLASSES

Classes PC1, PC3, PC5, and SC22 are unimpaired by the Debtor's Plan.  All unimpaired classes shall be treated as set forth in Article Four in their respective classes on account and in complete satisfaction of all such allowed claims.

## ARTICLE THREE
## TREATMENT OF IMPAIRED CLASSES

All impaired classes of claims shall receive the distributions set forth in Article Four on account and in complete satisfaction of all such allowed claims.  All claims specified herein, excepting PC1, PC3, PC5 and SC22 are impaired pursuant to §1124 of the Bankruptcy Code. Contested claims shall receive no distribution under the Plan until such time such claims become allowed claims and only to such extent as such claims are allowed claims.

## ARTICLE FOUR
## DISTRIBUTIONS--TREATMENT OF CLAIMS AND INTERESTS

1.      PRIORITY CLAIMS:

A.      CLASS PC1:  Class PC1 consists of all allowed claims against the Debtor entitled to priority pursuant to 11 USC §507(a)(2) or §507(a)(3) of the Bankruptcy Code, with the exception of those allowed claims included in Classes PC2, and PC3.  This classification also includes those claims premised on §503(b)(1) of the Bankruptcy Code, which arose from transactions pursuant to §364(a) of the Bankruptcy Code.  Debtor is current on their post-petition U.S. Trustee's fees as established under 28 U.S.C. § 1930(a)(6).  During the term of the Plan, Debtor shall continue to pay post-petition taxes and U.S. Trustee's fees as they accrue and are due.  The members of this class include the following:

1.      The Internal Revenue Service, pursuant to 11 USC § 507(a)(2) and 11 USC § 503(b)(1)(B);

2.      The State Tax Commission, State of Idaho, pursuant to 11 USC § 507(a)(2) and 11 USC § 503(b)(1)(B); and

3. The United States Trustee's Office.

B. CLASS PC2: Class PC2 consists of all allowed claims having priority by reason of the provision of 11 USC §507(a)(2) and § 330(a). The members of this class include the following:

1. Robert J. Maynes, the attorney representing the Debtor in Possession;

2. Nathan M. Olsen, Esq., co-counsel representing the Debtor-in-possession with regards to the Debtor's Rule 9011 Motion for Sanctions and in the adversary proceeding against Meyers et al.

3. W.L. (Lee) Grigg, ABA of Tax Management Services, LLC;

4. Hartman Appraisals, the Debtor's proposed appraiser;

5. Exit Realty, the Debtor's proposed realtor/broker;

6. Paul Landaker, the Debtor's proposed marketing expert; and

7. Such other professionals as the Court may subsequently approve.

Fees and cost reimbursements shall be paid to members of this Class PC2 in the total amount as allowed by the Court, from Net Sale Proceeds in which the members of this class shall share pro rata, for the term of the Plan. Any Court approval of such professionals' fees shall further be a modification of the Chapter 11 confirmed plan to provide for the payment of such fees, or as otherwise ordered by the Court.

CLASS PC2.1:  With respect to the litigation, an effect of confirmation shall be that all time incurred by legal counsel with regards to the adversary proceeding(s) shall be paid on a contingency fee basis as follows, with counsel collectively being paid 1/3 of the gross litigation recovery, plus expenses, should the matter settle in advance of 60 days prior to the first scheduled trial date, and 40% of the gross litigation recovery, plus expenses, should the matter settle within 60 days of trial, proceed to trial or upon appeal.

C.      CLASS PC3: Class PC3 consists of all allowed claims having priority by reason of the provision of 11 USC § 507(a)(4).  This class shall be paid in full on the effective date of the plan or within 120 days thereafter, and as approved by the Bankruptcy Court, if required.  There appear to be no members of this class.

D.      CLASS PC4:  Class PC4 consists of all allowed claims against the Debtor entitled to priority pursuant to 11 USC §507(a)(8), consisting of claims of governmental units for taxes or duties in such amounts as may be allowed by the Bankruptcy Court.  This class includes the claims of the Internal Revenue Service and the State of Idaho, State Tax Commission.  This class shall be paid in full from Net Sale Proceeds on a 50-50 split of said proceeds with PC2; however, to the extent and in the event there are no Net Sale Proceeds generated during a given calendar quarter, the Debtor shall make monthly payments in the following quarter based on a term of 48 months, calculated based on commencing in the first full month after the Effective Date.; but only to the extent that the monthly payments required under a term of 48 month term would otherwise be considered in arrears.

These Priority Claims are as follows:

1.      Pre-petition Priority Claims tax obligations:

| Internal Revenue Service | $33,297.21 |
| Idaho State Tax Commission | 8,305.77 |
| Idaho Dept. of Labor | 1,495.05 |
| **TOTAL** | $43,098.03 |

2. Secured tax obligations to be paid under PC4:

| Internal Revenue Service | $28,805.28 |
| Idaho State Tax Commission | 1,180.41 |
| **TOTAL** | $29,985.69 |

Claims held by members of this class shall accrue interest on the unpaid balance from the Confirmation Date as allowed and provided pursuant to 11 U.S.C. § 511.

If the debtor or the successor in interest fails to make any deposits of any currently accruing employment tax liability or fails to make payment of any tax to the members of this class within 30 days of the due date of such deposit or payment, or if the debtor or the successor in interest fails to file any required tax return within 30 days of the due date of such return, then the members of this class may declare that the debtor is in default under the terms of this Plan.  Failure to declare a default does not constitute a waiver by the members of this class of the right to declare that the successor in interest or debtor is in default.

If the members of this class declare the debtor or the successor in interest to be in default of the debtor's obligations under the Plan, then the entire pre-petition liability shall become due and payable immediately upon written demand to the debtor or successor in interest.

If full payment is not made within fourteen (14) days of such demand, or other arrangement, in writing, then the members of this class may collect unpaid liabilities through the administrative collection provisions of nonbankruptcy law.  The debtor and

all debtor's property shall be liable for such unpaid liabilities as if no bankruptcy had been filed.

    2.    SECURED CLAIMS:

### Old School Lots and Related Claimants

    A.    CLASS SC1:  Class SC1 consists of the post-petition, 11 USC § 364(d) loans provided by Equity Trust Company custodian FBO Neal C. Hocklander IRA.  **AN EFFECT OF CONFIRMATION SHALL BE THAT MEMBERS OF THIS CLASS SHALL HAVE A SUPER PRIORITY LIEN, SENIOR TO ALL OTHER LIENS ON THAT CERTAIN REAL PROPERTY REFERRED TO HEREIN AS THE OLD SCHOOL PROJECT LOTS AND THAT THE NOTES, LINE OF CREDIT AGREEMENT AND SECURITY INSTRUMENT(S) ATTACHED HERETO AS EXHIBIT "A" ARE APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF IDAHO.**  In brief, there are two loans being provided pursuant to Exhibit A.  Loan #1 is to fund the payments to Classes SC2 and SC3 (the NH Trustee and the Orrs, respectively).  Loan #2 is to fund construction of the partially completed homes with homes being completed and sold as the market permits.  Payments shall be made to members of this class pursuant to the loan documents attached as Exhibit A hereto.  Notwithstanding the provisions set forth in this section, Exhibit A is incorporated herein by reference and shall control to the extent this section contradicts the terms and conditions set forth in Exhibit A, if any such contradiction exists.

    B.    CLASS SC2:  Class SC2 consists of the  contested secured interests of BFH 2009 Realty Trust, BZ 2009 Realty Trust, D&M 2009 Realty Trust,

Greatland Project Development, Inc., JP 2009 Realty Trust, MGZ 2009 Realty Trust,

MSCRN 2009 Realty Trust, RMBZ 2009 Realty Trust, SBSB 2009 Realty Trust, WHRS

2009 Realty Trust, Richard M. Frucci, Louis Gargasz, Richard N. Krauth, Equity Trust

Co., Custodian FBO Bruce A. Quimby IRA, Spruce Mountain Associates, LLC, Equity

Trust Co., Custodian FBO Raymond P. Kleopper II IRA, Pensco Trust Co., Custodian

FBO David L. DeVeber IRA, NTC and Company, FBO Robert T. Keating IRA, Equity

Trust Co., Custodian FBO Andrea S. Quimby, and Equity Trust Co., Custodian FBO

Bruce A. Quimby IRA, and specifically of the bankruptcy estates of Financial Resources

Mortgage, Inc., C L & M, Inc., Greatland Project Development, Inc., D & M 2009 Realty

Trust, WHRS2009 Realty Trust, and many other debtors jointly administered in Case No.

09-14565-JMD.   Members of this class shall be paid pursuant to the terms of the

Settlement Agreement attached hereto as Exhibit "B" and incorporated herein by

reference.

    C.  CLASS SC3:  Class SC3 consists of the allowed secured claim of

David and Martha Orr.  Members of this class have liens in two subdivisions:  The Old

School Lots and the Riverview Subdivision.  The secured claim held by members of this

class in the Old School Lots shall be paid, and the lien(s) released, pursuant to the

Stipulation Modifying First Amended Plan and for Relief from Stay (Docket No. 324),

attached hereto as Exhibit "C" and subject to the terms and conditions set forth in that

stipulation.  *Each secured creditor in this class shall retain the lien securing the claim,*

*until the allowed secured claims have been paid as provided herein.*

D.      CLASS SC4:  Class SC4 consists of the contested secured claims of those persons asserting secured claims in the Old School Lots pursuant to Idaho's Mechanic Lien Statute, including, but not limited to, Vargas Roofing, Agundez Concrete, Franklin Building Supply, Timberline Exteriors, John Deere Landscape, Woodmaster, Quality Truss, and Kenny Cardona.  Given the value of the collateral subject to the liens asserted by members of this class, their respective lienhold positions, and noncompliance, for the most part, with section 546(b), these claimants shall not be treated as secured, but shall only be paid as members of UC2 only.  **AN EFFECT OF CONFIRMATION SHALL BE A DETERMINATION THAT SUCH LIENS ARE EFFECTIVELY VALUELESS PURSUANT TO 11 USC § 506 GIVEN THE SENIOR ENCUMBRANCES AND THAT THE LIENS HELD BY MEMBERS OF THIS CLASS ARE RELEASED UPON CONFIRMATION.**

### *Stipulated Plan Treatment*

E.      CLASS SC5:  Class SC5 consists of the allowed secured claim of Deere & Company/John Deere Credit (listed on Schedule D under John Deere Credit, Account No. B2008-1047478-7).  Specifically, this class SC5 relates to the claim asserted by Deere & Company in its Adversary Complaint filed as Adv. Docket No. 1 in Adversary Case No. 10-08091 JDP.  The allowed secured claims held by members of this class shall be paid in full pursuant to the terms and conditions of that certain *Stipulation for Adequate Protection and Treatment of Claim* (Exhibit A of Docket No. 226), which is incorporated herein by reference as if set forth in full.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

F.    CLASS SC6:  Class SC6 consists of the allowed secured claim of Farm Bureau Finance Company (Proof of Claim No. 13).  The allowed secured claims held by members of this class shall be paid in full pursuant to the terms and conditions of that certain *Stipulation for Plan Treatment and Adequate Protection Payments* (Docket No. 202), which is incorporated herein by reference as if set forth in full.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

G.    CLASS SC7:  Class SC7 consists of the allowed secured claim of Farm Bureau Finance Company (Proof of Claim No. 14).  The allowed secured claims held by members of this class shall be paid in full pursuant to the terms and conditions of that certain *Stipulation for Plan Treatment and Adequate Protection Payments* (Docket No. 202), which is incorporated herein by reference as if set forth in full.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

H.    CLASS SC8:  Class SC8 consists of the allowed secured claim of Farm Bureau Finance Company (Proof of Claim No. 15).  The allowed secured claims held by members of this class shall be paid in full pursuant to the terms and conditions of that certain *Stipulation for Plan Treatment and Adequate Protection Payments* (Docket No. 202), which is incorporated herein by reference as if set forth in full.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

I.    CLASS SC9:  Class SC9 consists of the allowed secured claim of Wells Fargo Dealer Services related to VIN -63553 (Proof of Claim 23).  The allowed

secured claims held by members of this class shall be paid in full pursuant to the terms and conditions of that certain *Stipulation for Stay Relief and Adequate Protection Plan Treatment and Adequate Protection Payments* (Docket No. 222), which is incorporated herein by reference as if set forth in full—this stipulation sets forth plan treatment for the vehicle, VIN -63553, establishing a fair market value of $13,000.00 payable in monthly installments of $204.87 (which commenced in January 2011) and accruing interest on the unpaid balance at a rate of 4.25% per annum until paid in full. *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

J.    CLASS SC10: Class SC10 consists of the allowed secured claim of Wells Fargo Dealer Services related to VIN -15782 (Proof of Claim 24). The allowed secured claims held by members of this class shall be paid in full pursuant to the terms and conditions of that certain *Stipulation for Stay Relief and Adequate Protection Plan Treatment and Adequate Protection Payments* (Docket No. 222), which is incorporated herein by reference as if set forth in full—specifically, pursuant to the terms of the stipulation the vehicle identified as VIN -15782 has been surrendered in satisfaction of the allowed secured claim. *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

K.    CLASS SC11:  Class SC11 consists of the allowed secured claim of Wells Fargo Dealer Services. The allowed secured claims held by members of this class shall be paid in full pursuant to the terms and conditions of that certain *Stipulation for Stay Relief and Adequate Protection Plan Treatment and Adequate Protection Payments* (Docket No. 222), which is incorporated herein by reference as if set forth in

full—specifically, pursuant to the terms of the stipulation the vehicle identified as VIN -

63007 has been surrendered in satisfaction of the allowed secured claim.. *Each secured*

*creditor in this class shall retain the lien securing the claim, until the allowed secured*

*claims have been paid as provided herein.*

   L. CLASS SC12:  Class SC12 consists of the allowed secured claim

of Idaho Mutual Trust, LLC (IMT).  The allowed secured claims held by members of this

class shall be paid in full pursuant to the terms and conditions of that certain *Stipulation*

*for Adequate Protection and for Plan Treatment* (Docket No. 228), which is incorporated

herein by reference as if set forth in full.  *Each secured creditor in this class shall retain*

*the lien securing the claim, until the allowed secured claims have been paid as provided*

*herein.*  Specifically, members of this class have a lien a piece of real property,

commonly known as 275 E. 506 N., Shoshone, Idaho.  The Debtor and IMT have

stipulated to the bifurcation of IMT's claim:  $125,000.00 as the fair market value of the

collateral, shall be paid as a secured claim as follows:  (a) $500.00 a month for the first

12 months post-confirmation; (b) $550.00 a month for months 13 through 24; (c) $600.00

a month continuing thereafter; (d) the remaining balance shall be paid on or before the

end of the seventh (7th) year post-confirmation, plus accrued interest, which shall accrue

at a variable rate adjusted monthly consisting of the WSJ prime rate plus 1.5%.  These

terms are intended as a brief summary of the terms and conditions set forth in that certain

*Stipulation for Adequate Protection and for Plan Treatment* (Docket No. 228), to the

extend there are any contradictions between this summary and the stipulation, the

stipulation shall control.  The unsecured deficiency amount of $79,594.65 shall be paid

pursuant to Class UC2 as more fully set forth herein below.

M.     CLASS SC13:  Class SC13 consists of the allowed secured claim of 21st Mortgage Corporation (Proof of Claim No. 19) as it relates to that certain real property commonly known as 82 Parker Gulch Road, Shoshone, ID 83352.  An effect of confirmation shall be that the value of the collateral for this claim shall be established to be $65,000.00 as the allowed amount of this secured claim, which shall be paid in equal monthly installments of $410.84, the unpaid balancing accruing interest at a 6.5% a.p.r. over a term of 360 months commencing in the first full month after the Effective Date, with a balloon payment for the remaining balance then due and owing payable due at the end  of the seventh year after the Effective Date.  In exchange for the stated valuation of collateral and interest rate, Leed waives the right to pursue an avoidance claim against members of this class.  Claimant shall have thirty (30) days after the Effective Date in which to file an amended proof of claim asserting an unsecured deficiency, which would be paid as a member of class UC2 only.  Failure to timely submit such an unsecured claim shall constitute a waiver of the unsecured portion of claimant's claim only.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.  Except as set forth herein the members of this class and the Debtor waive any claims they might have against each other, respectively.*

N.     CLASS SC14:  Class SC14 consists of the allowed secured claim of 21st Mortgage Corporation (Proof of Claim No. 20) as it relates to that certain real property commonly known as 148 E. 450 N. Shoshone, ID 83352.   An effect of confirmation shall be that the value of the collateral for this claim shall be established to be $65,000.00 as the allowed amount of this secured claim, which shall be paid in equal

monthly installments of $410.84, the unpaid balancing accruing interest at a 6.5% a.p.r.

over a term of 360 months commencing in the first full month after the Effective Date,

with a balloon payment for the remaining balance then due and owing payable due at the

end  of the seventh year after the Effective Date.  In exchange for the stated valuation of

collateral and interest rate, Leed waives the right to pursue an avoidance claim against

members of this class.  Claimant shall have thirty (30) days after the Effective Date in

which to file an amended proof of claim asserting an unsecured deficiency, which would

be paid as a member of class UC2 only.  Failure to timely submit such an unsecured

claim shall constitute a waiver of the unsecured portion of claimant's claim only.  *Each*

*secured creditor in this class shall retain the lien securing the claim, until the allowed*

*secured claims have been paid as provided herein.  Except as set forth herein the*

*members of this class and the Debtor waive any claims they might have against each*

*other, respectively.*

### *Additional Plan Treatment*

O.    CLASS SC15:  Class SC15 consists of the allowed secured claim

of Deere & Company/John Deere Credit (Proof of Claim No. 16), which relates to that

certain 4120 Compact Utility Tractor, Loader, MRHL60, 65"Heavy Duty Rotary Tiller,

ALI672E Boom Mounted Front Blade, Frontier BB2172 Medium Heavy Box Blade, and

RR2072 Rock Rake, as more fully described in that certain Stipulation for Adequate

Protection filed on August 9, 2010 as Docket No. 82.  An effect of confirmation shall be

that the value of the collateral for this claim shall be established to be $17,000.00 and as

the allowed amount of this secured claim, which shall be paid in equal monthly

installments at a 5% a.p.r. over a term of 72 months commencing in the first full month

after the Effective Date.  In exchange for the stated valuation of collateral and interest rate, Leed waives the right to have the adequate protection payments applied against the secured portion of this claim.  Claimant shall have thirty (30) days after the Effective Date in which to file an amended proof of claim asserting an unsecured deficiency, which would be paid as a member of class UC2 only.  Failure to timely submit such an unsecured claim shall constitute a waiver of the unsecured portion of claimant's claim only.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

P.      CLASS SC16:  Class SC16 consists of the allowed secured claim of Neal Hocklander (Schedule D).  Members of this class shall be paid in full in monthly installments of $317.63 over 84 months with a balloon payment for the remaining balance being due in month 85 after the Effective Date. Interest on the unpaid balance shall accrue at a 3.25% a.p.r. and monthly payments will commence the first full month after the Effective Date.  Monthly payments shall be made first via set off for landscaping work done for the benefit of members of this class, and then cash payments from the Debtor.

Q.      CLASS SC17:  Class SC17 consists of the allowed secured claim of the Idaho State Tax Commission.  Members of this class shall be paid in full pursuant to the terms for claim treatment set forth under Class PC4.  *Each secured creditor in this class shall retain the lien securing the claim, to the same extent, priority and validity as existed on the petition date, until the allowed secured claims have been paid as provided herein.*

R.    CLASS SC18:  Class SC18 consists of the allowed secured claim of the Internal Revenue Service.  Members of this class shall be paid in full pursuant to the terms for claim treatment set forth under Class PC4.  *Each secured creditor in this class shall retain the lien securing the claim, , to the same extent, priority and validity as existed on the petition date, until the allowed secured claims have been paid as provided herein.*

S.    CLASS SC19:  Class SC19 consists of the allowed secured claims of GMAC, specifically, Claims 42, 44, 45, 52, 62, 63, and 64, and as noted in the Debtor's schedules.  An effect of confirmation shall be that the allowed secured claims included in this class shall be reduced to the amounts stated herein below (i.e. the Cram Down Amount), and paid on the allowed secured claim amount, or surrendered, as set forth herein:

| No. | | Property Address | Cram Down Amount | Interest Rate (a.p.r.) | Maturity Date | Monthly Payment Amount |
|---|---|---|---|---|---|---|
| 42 | GMAC | 208 W. B Street | 40,000.00 | 5.0 | 5/31/2038 | 225.22 |
| 44 | GMAC | 116 E. A Street | 40,000.00 | 5.0 | 5/31/2038 | 225.22 |
| 45 | GMAC | 319 N. Dorothy | 40,000.00 | 5.0 | 5/31/2038 | 225.22 |
| 52 | GMAC | 4197 N. 1212 E., Buhl | SURRENDER | NA | SURRENDER | NA |
| 62 | GMAC | 2280 E. 3950 N, Filer | SURRENDER | NA | SURRENDER | NA |
| 63 | GMAC | 104 Sunset Drive | 143,000.00 | 5.0 | 360 months | 767.65 |
| 64 | GMAC | 524 N. Fir Street | 110,000.00 | 5.0 | 360 months | 590.50 |
| Sch. | GMAC | 102 Riverview | SURRENDER | NA | SURRENDER | NA |
| Sch. | GMAC | 103 Riverview | SURRENDER | NA | SURRENDER | NA |
| Sch. | GMAC | 107 Riverview | 127,000.00 | 5.0 | 360 months | 681.76 |
| Sch. | GMAC | 110 Riverview | 115,000.00 | 5.0 | 360 months | 617.34 |
| Sch. | GMAC | 111 Riverview | SURRENDER | NA | SURRENDER | NA |

*Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*  Payments shall commence sixty days after the Effective Date unless the Debtor files, or has filed, an adversary

complaint asserting claims against members of this class.  Notwithstanding the "Cram Down Amounts" stated herein, the Debtor retains the right to avoid the asserted liens of members of this class, and any other class set forth herein.  No payments shall be made to members of this class during the pendency of any adversary proceeding brought by the Debtor against members of this class.

   T. CLASS SC20:  Class SC20 consists of the allowed secured claim of Security Financial Fund, LLC.  The property in which this claimant asserts an interest is hereby by surrendered, as of the Effective Date, to this claimant in full satisfaction of the indebtedness.

   U. CLASS SC21:  Class SC21 consists of the allowed secured claim of Twin Falls County.  This class shall be paid in full as follows:  The property in which this claimant asserts an interest is hereby by surrendered, as of the Effective Date, to this claimant in full satisfaction of the indebtedness.

   V. CLASS SC22:  Class SC22 consists of the allowed secured claim of EMC.  Pursuant to Schedule D, as of the petition date the balance owed to this class was $46,227.74 and there is existing equity.  Members of this class shall be paid pursuant to their prepetition loan documents without modification under this plan.  This class is unimpaired under the Plan.

   W. CLASS SC23:  Class SC23 consists of the allowed secured claims of Bank of America ("BOA"), specifically those claims listed in Schedule D of the Debtor's Schedules, as the same may be amended from time to time.  An effective of confirmation shall be that the allowed secured claims included in this class shall be

reduced to the amounts stated herein below (i.e. the Cram Down Amount), and paid on

the allowed secured claim amount as set forth herein:

| No. | | Claim Amount | Property Address | FMV of Collateral (Cram Down Amount) | Interest Rate (a.p.r.) | Term |
|-----|-----|--------------|------------------|--------------------------------------|------------------------|------|
| D | BOA | 10,000.00 | 516 N. Birch | NA | 0.00 | NA |
| D | BOA | 87,903.53 | 418 N. Date | 80,000.00 | 4.75 | 360 months |
| D | BOA | 196,000.00 | 1944 E. 1300 S., Gooding, ID | 126,000.00 | 4.75 | 360 months |
| D | BOA | 66,309.24 | 516 N. Birch | 53,000.00 | 4.75 | 360 months |

*Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*  Payments shall commence sixty days after the Effective Date unless the Debtor files, or has filed, an adversary complaint asserting claims against members of this class.  Notwithstanding the "Cram Down Amounts" stated herein, the Debtor retains the right to avoid the asserted liens of members of this class, and any other class set forth herein.  No payments shall be made to members of this class during the pendency of any adversary proceeding brought by the Debtor against members of this class.

X.      CLASS SC24:  Class SC24 consists of the allowed secured claim of Lincoln County.  This class shall be paid in full in deferred cash payments in regular monthly installments for a term of 48 months, commencing in the first full month after the Effective Date for all property taxes due and owing as of the petition date, but only as to properties retained by the Debtor under the Plan.  To the extent any properties have been surrendered, the Debtor shall not be obligated to pay the associated property taxes with such properties.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

Y.     CLASS SC25:   Class SC25 consists of the contested secured claims or interests, and unsecured claims or interests of the Defendants named in Adversary Case No. 10-08086 JDP, namely Robert & Kathi Meyers, Mitch and Laura Campbell and affiliated business entities and persons.   Pending a final determination of the adversary proceeding, including a final resolution of any and all appeals, no payments shall be made to members of this class.   The Net Rents received with respect to the real property in which the Defendants assert an interest shall be placed in the Debtor's Litigation Reserve Account pending further order of the Court or stipulation of the parties.   Any settlement between the members of this class and the Debtor shall, upon Court approval, constitute a further modification of this Plan, as will the final determination of the adversary proceeding.   *Each secured creditor in this class shall retain the lien securing the claim to the same extent, validity and priority as existed on the petition date, if at all, until the allowed secured claims have been paid as provided herein.*

Z.     CLASS SC26:   Class SC26 consists of the allowed secured claim of Gerald Martens or his successors in interests.   This claim represents, in part, a part of the executory contract addressed elsewhere in this Plan.   Briefly, the executory contract is hereby rejected; however, the Debtor reserves all rights to assert claims for set offs against members  of this class, as well  to assert any claims against members of this class arising under the Bankruptcy Code or State Law, if any.

With regards to the security interest held by members of this class in the Desert Rose Subdivision, the unpaid balance thereon shall accrue interest at 4.75% interest and shall be paid as lots are sold on a pro rata basis by lot, with the unpaid balance being

divided by the remaining lots.  It is expressly represented to members of this class that no lots shall be sold until resolution of the Meyers/Campbell proceeding and that resolution of that adversary proceeding against the Debtor and in the Defendants' favor may result in the Debtor surrendering the lots in full and complete satisfaction of the indebtedness held by members of this class.  Further, members of this class have neglected to pay for post-petition landscaping services and applied the same to the prepetition unsecured balance contrary to section 362(a), however, the Debtor agrees to waive this claim in exchange for the members of this class accepting the plan treatment stated herein.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

AA.    CLASS SC27:  Class SC27 consists of the allowed secured claims of Rusty and Ann Parker, specifically Proof of Claim No. 61 pertaining to that certain real property commonly known as 283 E. 520 N., Shoshone, ID and Proof of Claim 68 pertaining to that certain real property commonly known as Lots 2 through 7 of Cowboy Subdivision.  The Cowboy Subdivision Lots are surrendered as of the Effective Date as full satisfaction of Claim No. 68.  With regards to 283 E. 520 N., Shoshone, Idaho, this claim (Claim No. 61) shall be paid $500.00 a month for 360 months, with interest accruing at 5.0% a.p.r.  There shall be no prepayment penalty.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

BB.    CLASS SC28:  Class SC28 consists of the allowed secured claim of Montrose Investments.  Members of this class shall be paid as follows:

With regards to the secured interest in that certain real property commonly known as 422 N. Date, Shoshone, Idaho members of this class shall be paid $75,000.00 with monthly payments of $402.82 for 360 months, with interest accruing at 5.0% a.p.r.  There shall be no prepayment penalty.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

With regards to that certain real property commonly known as 516 N. Fir Street, Shoshone, Idaho members of this class shall be paid $50,000.00 with monthly payments of $268.41 for 360 months, with interest accruing at 5.0% a.p.r.  There shall be no prepayment penalty.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

With regards to the Riverview Subdivision, members of this class agree to provide the Debtor an additional twelve (12) months, interest free, to refinance the loans on the property associated with this class, with an extension for an additional twelve (12) months at the then current WSJ prime rate plus 2.0 percent for such extension time period, at the Debtor's sole discretion.  If the Debtor is unable to obtain a refinance loan on the Riverview Subdivision during this time period, the Riverview Subdivision shall be surrendered to the members of this class in full satisfaction of the indebtedness.  In furtherance of such refinancing, members of this class agree to provide post-petition financing up to $15,900.00 for the due diligence fee referenced in the attached Letter of Intent from Accelerated Lending Group, Inc., attached hereto as Exhibit "D."  This post-petition loan such constitute part and parcel of the claim held by members of this class as a future advance under the existing loan.  *Each secured creditor in this class shall retain*

*the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

CC.     CLASS SC29:  Class SC29 consists of the contested secured claim of Vanderbilt Mortgage.  This claimant has foreclosed its security interest post-petition notwithstanding actual notice of the automatic stay and the chapter 11 petition commencing this case.  This claimant was further notified by the Debtor that foreclosure was contrary to the automatic stay.  As such, this claimant shall not receive any payments under the Plan and the Debtor reserves all rights to pursue sanctions for contempt of court and all damages arising from the wrongful foreclosure.  The Debtor further reserves all rights to recover the property.

DD.     CLASS SC30:  Class SC30 consists of the contested secured claim of Spruce Mountain Associates, LLC.  This claim may be subject to avoidance under the Bankruptcy Code and Idaho law.  Debtor anticipates filing an adversary action to address the validity, force and effect of claimant's asserted lien and security interest.  The Debtor expressly reserves the right to assert any and all claims against members of this class on behalf of the estate, including, but not limited to claims arising under lender liability laws.  During the pendency of such adversary proceeding no payments shall be made to members of this class.  Any settlement between the members of this class and the Debtor shall, upon Court approval, constitute a further modification of this Plan.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

EE.     CLASS SC31:  Class SC31 consists of the contested secured claim of Shaun Miner.  This claimant appears to have perfected its security interest post-

petition contrary to the dictates of section 362(a) and outside the statutory grace period for such lien perfection. As such, this claimant shall only be paid as an unsecured claimant pursuant to Class UC2. The Debtor reserves all rights to pursuant its claims for sanctions pursuant to section 362 and otherwise under the Bankruptcy Code against members of this class. It appears that this claimant has filed a post-petition lien release to correct the stay violation referenced above. As such, this claim shall be paid solely as a member of class UC2 below.

FF. CLASS SC32: Class SC32 consists of the contested secured claim of Greentree Mortgage. Members of this class failed to timely file a proof of claim and were scheduled as "unliquidated", thus pursuant to Rule 3003, members of this class shall not be treated as creditors for purposes of voting and distribution. **AN EFFECT OF CONFIRMATION SHALL BE THE DETERMINATION THAT MEMBERS OF THIS CLASS' LIENS ARE EFFECTIVELY VALUELESS UNDER SECTION 506 SUCH THAT SUCH LIENS ARE RELEASED UPON CONFIRMATION.**

GG. CLASS SC33. Class SC33 consists of the contested secured claim of Ocwen Loan Servicing, specifically those claims listed in Schedule D of the Debtor's Schedules, as the same may be amended from time to time, as it relates to that certain real property commonly know as 4233 N. 1360 E., Buhl, ID. Members of this c**LASS FAILED TO TIMELY FILE A PROOF OF CLAIM AND WERE SCHEDULED AS "UNLIQUIDATED", THUS PURSUANT TO RULE 3003, MEMBERS OF THIS CLASS SHALL NOT BE TREATED AS CREDITORS FOR PURPOSES OF VOTING AND DISTRIBUTION**. An effective of confirmation shall be that the allowed secured claims, security interests or asserted liens included in this class shall be

reduced to the amounts stated herein below (i.e. the Cram Down Amount), and paid on

the allowed secured claim amount as set forth herein:

| No. | | Claim Amount | Property Address | Cram Down Amount | Interest Rate (a.p.r.) | Term |
|------|--------|-----------|---------------------------|-----------|-----|------------|
| D | OCWEN | 124,992.46 | 4233 N. 1360 E., Buhl, ID | 91,000.00 | 5.0 | 360 months |

*Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*  Payments shall commence

sixty days after the Effective Date unless the Debtor files, or has filed, an adversary

complaint asserting claims against members of this class.  Notwithstanding the "Cram

Down Amounts" stated herein, the Debtor retains the right to avoid the asserted liens of

members of this class, and any other class set forth herein.  No payments shall be made to

members of this class during the pendency of any adversary proceeding, if any, brought

by the Debtor against members of this class.

      3.      UNSECURED CLAIMS:

      A.      CLASS UC1:  Classification of Unsecured Claims.  The following

unsecured claims, if any, will receive the indicated dollar amounts, in equal annual

installments during the term hereof, on their allowed claim.  Payments shall commence

upon confirmation of this Plan and filing of an allowed claim.

      *There are no classified claims.*

      B.      CLASS UC2:  Class UC2 consists of all allowed unsecured claims

against the Debtor.  The unsecured claims are described in Appendix "D" to the

Disclosure Statement, and also include partially secured claimants, if any, that comply

with the requirements to assert an unsecured, deficiency claim as set forth herein below.

With respect to management of the rental properties and sale or real property, the Official

Committee of Unsecured Creditors shall work with the Debtor to determine management and sale strategies that are most advantageous for the benefit of members of this class.  In the event the Committee and the Debtor cannot agree, the Debtor shall have the ultimate authority to make the final determination.  Net Rents and Net Sale Proceeds shall be paid to members of this class until 100% of the claims held by this class have been paid during the Plan Term—there is no guarantee that 100% shall be paid during the Plan Term, but the Debtor shall use its best efforts to obtain that result.  There shall be no prepayment penalty.  In addition, fifty percent (50%) of the Debtor's landscaping operations Net Profit shall be paid annually until 100% of the claims held by this class have been paid during the Plan Term—there is no guarantee that 100% shall be paid during the Plan Term, but the Debtor shall use its best efforts to obtain that result.

The Debtor proposes to pay the undisputed amount to the members of this class and resolve the disputed amounts as described in this plan.  All claims in this class uncontested by the Debtor as well as contested claims in this class that may ultimately be approved by the Court shall receive during each Plan Year during the term of the plan a *pro rata* share of the following respective distributions:

| PLAN YEAR | PERCENTAGE OF NET PROFIT From Landscaping Operations |
|---|---|
| One | 50% |
| Two | 50% |
| Three | 50% |
| Four | 50% |
| Five | 50% |
| Six | 50% |
| Seven | 50% |
| Eight | 50% |

In addition,

| PLAN YEAR | PERCENTAGE OF NET RENTS and NET SALE PROCEEDS |
|---|---|
| One | 100% |
| Two | 100% |
| Three | 100% |
| Four | 100% |
| Five | 100% |
| Six | 100% |
| Seven | 100% |
| Eight | 100% |

In addition, the Net Litigation Recovery, if any, received by the Debtor shall be paid to members of this class.

**Notwithstanding anything stated above to the contrary, in no event shall the distribution to members of this class under the Plan be more than 100% of the allowed claim amount.** To the extent that projections, opinions or assumptions stated in the Disclosure Statement or this Plan may prove to be incorrect, deficiency claims are filed, and/or objections to claims are filed, such distribution percentage would be adjusted accordingly.

**To the extent secured claimants have previously filed proofs of claim prior to the claims bar date and are entitled to an unsecured deficiency under § 506 of the Bankruptcy Code, the same claimants with timely proofs of claim shall have thirty (30) days from the Confirmation Date in which to file an <u>amended</u> proof of claim asserting such deficiency. Failure to timely file an amended proof of claim asserting such deficiency will be an absolute bar to any claim for a deficiency. The Debtor shall have the right to object to any asserted deficiency claim, as the Debtor deems advisable.**

4.    EQUITY INTERESTS

A.    CLASS EI1:    Class EI1 consists of two interests.    Lon E. Montgomery and Joshua A. McCuistion are the prepetition shareholders of the Debtor. Members of this class shall not retain any interest in the Debtor, except as members of Class EI2, if applicable, as set forth below.    Consequently, subsequent to the Order of Confirmation, these prepetition shareholders may no longer be shareholders of the corporation.

B.    CLASS EI2: Class EI2 consists of the post-petition equity interest holder, namely, Lon E. Montgomery.    An effect of confirmation shall be that each member of Class EI2 shall be vested with the respective stock ownership in the Reorganized Debtor as set forth below:

| Name of Post-petition Stockholder | Percentage |
|---|---|
| Lon E. Montgomery | 100% |

An effect of confirmation shall be to extinguish the equity interest of the prepetition shareholders and vest ownership of the Debtor in the above named equity interest holder of this class EI2, with new stock certificates being issued representing an interest in the reorganized Debtor.    No cash distributions shall be made to members of this class, on account of their respective equity interests, during the term of the Plan.

ARTICLE FIVE
EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Unless specifically rejected herein, or in previous orders of this court, Debtor has or is assuming in this Plan of Reorganization the executory contracts and unexpired leases as set forth and described in the Disclosure Statement, and as set forth herein below.

*LEASEHOLD INTERESTS/EXECUTORY CONTRACTS*

To the extent not assumed as noted herein below the Debtor rejects all prepetition leases and executory contracts:

| PARTY | PROPERTY | ASSUME/REJECT/MODIFICATIONS |
|---|---|---|
| Edward E. Montgomery<br>701 Pine<br>Buhl, ID 83316 | 4235 N. 1360 E., Buhl, ID | Assume. Debtor is current with no default. |
| Harley Sanders<br>P.O. Box 37<br>Oakley, ID 83346 | Phase 5, Riverview, 7th St., Shoshone, ID—lease with option to purchase—entire phase valued at $1,488,000.00 per May 2011 Broker's Price Opinion. | Assume as modified herein. Specifically, the parties shall agree that this property shall be converted to jointly owned property with net profits associated with the property shared 70% to Mr. Sanders and 30% for the benefit of the bankruptcy estate. Costs and expenses associated with the property shall be split on the same percentage basis. In exchange for the above modification, upon payment to Mr. Sanders of725,000.00 of Net Sale Proceeds under the above stated percentages, Mr. Sanders shall transfer and assign any remaining right, title or interest in the property to estate to be administered under the terms of the Plan and the remaining profit shall be divided under the aforementioned percentages, with the Debtor's interest being used for the benefit of the Plan. |
| Lon & Rebecca Montgomery<br>726 N. 1360 E.<br>Shoshone, ID 83352 | 104 Sunset Dr., Shoshone, ID | Assume as modified herein. Specifically, the parties shall agree that this property shall be jointly owned with net profits associated with the property shared 60% to Mr. and Mrs. Montgomery and 40% for the benefit of the bankruptcy estate. Costs and expenses associated with the property shall be split on the same percentage basis. |
| Mitch Campbell<br>P.O. Box 1785<br>Twin Falls, ID 83303 | 141 Syringa Loop, Shoshone, ID | This alleged lease is the subject of Adversary Proceeding 10-08086 JDP wherein the Debtor has asserted that this |

| | | |
|---|---|---|
| | | is in fact a disguised financing agreement that has not been properly perfected. To the extent the Court determines this to be a valid lease, the same is hereby rejected; to the extent the Debtor prevails in the adversary proceeding, the net litigation recovery would be available to prepay unsecured creditors under the Plan. |
| Robert & Kathi Meyers<br>c/o David A. Coleman, Esq.<br>P.O. Box 525<br>Twin Falls, ID 83303-0525 | 525 N., 527 N., 531 N. Fir Street, Shoshone, ID<br><br>152 E., 182 E., 191 E. Syringa Loop, Shoshone, ID<br><br>South Park Development Beverly Street, Shoshone, ID<br><br>201 E., 203 E., 205 E., 207 E., 301 E., 303 E. 6th Street, Shoshone, ID<br><br>Lot 10/12, Block 2 Riverview Subdivision, Shoshone, ID<br><br>318 N. Date St., Shoshone, ID | This alleged lease is the subject of Adversary Proceeding 10-08086 JDP wherein the Debtor has asserted that this is in fact a disguised financing agreement that has not been properly perfected. To the extent the Court determines this to be a valid lease, the same is hereby rejected; to the extent the Debtor prevails in the adversary proceeding, the net litigation recovery would be available to prepay unsecured creditors under the Plan. |
| Thomas Cooper<br>Sandra Crenshaw<br>4235 N. 1360 E.<br>Buhl, ID 83316 | 4235 N. 1360 E., Buhl, ID | Assume. Debtor is current with no default. |
| Avauntae Property Management | Property management agreement. | Terminated post-petition. REJECT to the extent not otherwise terminated. Please note that this agreement is the subject of Adversary Proceeding 10-08086 JDP. The validity and impact of this purported agreement remains to be determined in that adversary proceeding and the ultimate disposition of said |

| | | adversary proceeding shall be, to the extent necessary, a modification of this portion of the Plan. |
| --- | --- | --- |
| Robert & Kathi Meyers | Assignment of Rents, Profits and Lease or Purchase and Sale Agreements dated 11/24/2009 | Please note that this agreement is the subject of Adversary Proceeding 10-08086 JDP. The validity and impact of this purported assignment remains to be determined in that adversary proceeding and the ultimate disposition of said adversary proceeding shall be, to the extent necessary, a modification of this portion of the Plan. |
| Robert & Kathi Meyers/Mitch Campbell | Employment Agreement | Please note that this agreement is the subject of Adversary Proceeding 10-08086 JDP. The validity and impact of this purported agreement remains to be determined in that adversary proceeding and the ultimate disposition of said adversary proceeding shall be, to the extent necessary, a modification of this portion of the Plan. |
| Sandra J. Huntley | 107 and 110 Riverview Dr. Shoshone, Idaho | Assume as modified herein. Specifically, the parties shall agree that these properties shall be jointly owned with net profits associated with the property be shared 50% to Mrs. Huntley and 50% for the benefit of the bankruptcy estate. Costs and expenses associated with the property shall be split on the same percentage basis. These properties are subject to first liens for the benefit of GMAC, which are being crammed down in the Plan under the auspices of *Johnson v. Home State Bank*, 501 U.S. 78 (1991) and progeny, which allow the Debtor to restructure such claims despite the lack of liability of the estate for the notes. |
| Nathan D. Bachman | Old Shoshone Ranch agreements and related loan documents | REJECT, subject to the modifications and releases stated herein. Leed releases any and all claims or interest it might assert as a member of the Old Shoshone Ranch, LLC through its principal Lon |

| | | |
|---|---|---|
| | | Montgomery, in exchange Mr. Bachman and Old Shoshone Ranch, LLC shall release Leed and Mr. Montgomery from any and all liability arising from any and all claims of any nature whatsoever, that have or might have been asserted against Leed or Mr. Montgomery. |
| Lincoln County, Idaho | Development Agreement | Assume as modified herein. Notwithstanding the County's apparent violations of section 362(a), Leed agrees to waive such violations in exchange for the County's agreement to honor the existing Development Agreement for the term of the Plan and to honor related building permits for an additional 12 months subsequent to the Effective Date. |
| City of Shoshone | Development agreement, with associated permits. | Assume as modified herein. City hereby agrees to honor the existing Development Agreement and to honor related building permits for an additional 12 months subsequent to the Effective Date. |

ARTICLE SIX
PROVISIONS FOR IMPLEMENTATION OF THE PLAN
AND MEANS FOR EXECUTION OF THE PLAN

1.    For a period of eight (8) years from the effective date of the plan, (the "Plan Term"), funds necessary for the satisfaction for creditors' claims shall be generated from the following sources:

A.    LANDSCAPING OPERATIONS:  Fifty-percent of the Net Profit generated from the Debtor's landscaping operations annually shall be dedicated to fund the Plan as set forth herein.  The remaining fifty-percent shall be used to fund ongoing landscaping operations on an annual basis.

B.    RENTAL INCOME:  One hundred percent of the Net Rents generated from the Debtor's rental operation pending the sale of such real property shall be dedicated to fund the Plan as set forth herein.

C.    SALE OF REAL PROPERTY:  One hundred percent of the Net Sale Proceeds generated from the sale of real property shall be dedicated to fund the Plan as set forth herein.

D.    NET LITIGATION RECOVERY:  One hundred percent of the Net Litigation Recovery, if any, shall be dedicated to fund the Plan as set forth herein.

2.    Debtor shall pay all administrative expenses in full, as approved by the Court, pursuant to the terms of this Plan.

3.    Notwithstanding any other provision of this Plan of Reorganization, disputed claims as set forth in the Debtor's Bankruptcy Schedules on file herein and claims which may be contested shall be paid only upon their allowance by the Bankruptcy Court in conformance with the classification of the allowed amount of such claim as set forth herein.

4.    All property of the Debtor shall be retained by the Debtor, except as specifically provided for otherwise herein before.

5.    The Debtor shall retain and may enforce any civil action, claim, or interest against any party whatsoever while the Plan is in effect.

6.    The Debtor may elect to contest various claims filed by creditors as the Debtor in its business judgment and subject to the input from the Office Committee of Unsecured Creditors deems advisable.

ARTICLE SEVEN
MODIFICATION OF PLAN

1.      Modifications of the Plan may be proposed in writing by the Debtor at any time before confirmation, provided that such Plan, as modified, meets the requirements of 11 USC §§ 1122 and 1123, and the Debtor have complied with 11 USC §1125 of the Code.

2.      In addition, the Plan may be modified at any time after confirmation and before its substantial consummation, provided that such Plan, as modified, meets the requirements of 11 USC §§1122 and 1123 of the Code and the Court, after notice and a hearing, confirms such Plan as modified, under 11 USC §1129 of the Code, and the circumstances then existing justify such modifications.

3.      A holder of a claim or interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

4.      Any modification of the Plan will supersede and render null and void the previous provision that was modified.

5.      The Debtor may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the final Order of the Court confirming the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan so long as the interests of claimants or interest holders are not materially or adversely affected.

ARTICLE EIGHT
RETENTION OF JURISDICTION

Until this Plan has been fully consummated through the entry of an order completely closing the case, the Bankruptcy Court shall retain jurisdiction over all matters necessary to ensure that the purposes and intent of this Plan are carried out, including but not limited to the following:

1.      Determination of requests for payment of claims entitled to priority under §507(a)(2) of the Code, including compensation of parties entitled thereto;

2.      In the event an appeal is perfected from the order confirming the Plan, the Court shall also retain jurisdiction appropriate to protect the interests of the estate and to enter such orders as are necessary to protect the interests of creditors during the pendency of such appeal;

3.      Hear and determine any objection to a claim or interest when such objection is filed with the Court by the Debtor;

4.      Hear and determine all questions and disputes regarding title to the property of the Debtor or the Debtor's estate;

5.      Correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the order of confirmation as may be necessary to carry out the purpose and intent of the Plan;

6.      To liquidate damages in connection with any disputed claims;

7.      To adjudicate all claims of a security or ownership interest in any property of the estate or in any proceeds thereof;

8.      To allow and classify claims of any creditor, reexamine claims as provided under the Code, and to hear and determine any objection to a claim or interest when the Debtor files such objection with the Court;

9.      Issue any order necessary to implement the Plan or order of confirmation, including, without limitation, such declaratory and injunctive orders as are appropriate to protect the Debtor, the Debtor's estate, and the reorganized Debtor in its estate from actions of creditors, interest holders, or other parties in interest;

10.     Hear and determine any dispute relating to the terms or implementation of the Plan or Order of Confirmation, or to the rights or obligations of any party in interest with respect thereto and correct any defect, cure any omission, or reconcile any

consistency in the Plan or the order of confirmation as may be necessary to carry out the purpose and intent of the Plan;

11.    To hear and determine any modification of the Plan pursuant to §1127 of the Bankruptcy Code;

12.    To hear and determine any dispute, claim for relief application, adversary proceeding or contested matter pending commenced on or commenced after the confirmation date involving the collection or liquidation of assets of the Debtor, including, without limitation, any proceeding commenced for the purpose of voiding, recovering or preserving for the benefit of the estate any transfer of property, obligation incurred by the Debtor, lien or setoff.  Such retention of jurisdiction will continue over any action filed prior to the entry of a final decree closing this case;

13.    Hear and determine any matter related to the assumption, assignment, or rejection of an executory contract or unexpired lease of the Debtor; and

14.    Entry of a final decree or order closing this Chapter 11 case.

Nothing contained herein shall be construed as restricting the Debtor in the conduct of its business and operation unless the plan specifically provides to the contrary.

ARTICLE NINE
<u>DISCHARGE</u>

Except as otherwise provided for in the Plan or in the order of Confirmation, entry of the Order of Confirmation acts as a discharge effective as of the effective date of the Plan, of (i) any and all claims arising or occurring prior to the effective date, and (ii) any and all claims of the kind specified in §§ 502(g), 502(h), or 502(i) of the Code.  Such discharge will be effective under §1141 of the Code whether or not a Proof of Claim is filed or deemed filed, such claim is allowed, or the holder of such claim has accepted the Plan.  Further, confirmation of the plan terminates all rights and interests of pre-petition equity security holders as set forth in the Plan.

ARTICLE TEN
EFFECT OF CONFIRMATION

In addition to provisions stated elsewhere in this Plan that take effect upon confirmation, the following provisions shall also apply upon confirmation:

1.      Upon confirmation of the Plan all property of the estate shall vest in the Debtor, and shall be held and owned by the Debtor, free and clear of all liens, claims and interests of all creditors of the Debtor, except to the extent provided for in the Plan.

2.      Upon confirmation of the Plan, any and all compromises contained within the terms of the Plan shall be deemed to be approved by the Court pursuant to F.R.B.P. Rule 9019.

3.      Pending performance and completion of the Plan and unless the Court has otherwise expressly ordered or this Plan otherwise expressly provides, all creditors, shall be stayed from proceeding against the Debtor, the Debtor's assets, or the assets of the estate.

ARTICLE ELEVEN
PREPAYMENT OF CLAIMS

The Debtor reserves the right to prepay any or all of the claims hereinabove set forth, without penalty.  No notice of prepayment shall be required.

ARTICLE TWELVE
MISCELLANEOUS

1.      The headings in the Plan are for the convenience of reference only and neither constitute a portion of the Plan nor in any manner affect the construction or meaning of the provisions of the Plan.

2.      The authority of the Debtor to agree to modifications, supplements or amendments of or to any agreements or instruments referred to in the Plan or utilized in

the Debtor's business shall be as provided in such agreement or instruments, and subject to applicable Idaho law.

3.      Except to the extent that the Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed and construed and enforced in accordance with the laws of the State of Idaho.

4.      The rights, duties and obligations of any person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors or assigns of such person. The terms, provisions and statements of fact depicted in the Disclosure Statement are hereby incorporated as if set forth in full herein by reference and constitute terms of this Plan.

5.      Whenever any payment or distribution to be made under this Plan shall be due on a day other than a business day, such payment or distribution shall instead be made, without interest, on the immediately following business day.

[*SPACING INTENTIONAL*]

6.     Any notice, pleading, or document, required to be served by law or according to the provisions of this Plan, shall be in writing and shall be served in person or by Certified Mail upon the Debtor as follows:

|  |  |
|---|---|
| Debtor: | The Leed Corporation<br>Lon E. Montgomery, President<br>P.O. Box 2292<br>Twin Falls, ID  83303-2292 |
| Attorney for Debtor | Robert J. Maynes<br>*Attorney at Law*<br>P.O. Box 3005<br>Idaho Falls, ID  83403-3005 |

Or at such other address that Debtor may designate in writing in a Notice of Change of Address filed with the Court or served upon creditor(s).

7.     *Reserved.*

DATED:     June 23, 2011

THE LEED CORPORATION

By: /s/ Lon E. Montgomery
     LON E. MONTGOMERY
     President

# <u>SECURED PROMISSORY NOTE</u>
*(Loan #1)*

$242,000.00                                                          <u>Shoshone, Idaho</u>
                                                                  <u>Date: April    , 2011</u>

For value received, the undersigned does hereby promise to pay to the order of Equity Trust Company custodian FBO Neal C. Hocklander IRA, its successors and assigns (the "Lender") the principal sum of Two Hundred Forty-Two Thousand and no/100 Dollars  ($242,000.00), together with interest on the principal balance of this Secured Promissory Note (the "Note"), from time to time remaining unpaid, from the date of disbursement by Lender hereof at the applicable interest rate (hereinafter defined) in lawful money of the United States of America, which shall be legal tender in payment of all debts at the time of such payment.  Both principal and interest and all other sums due hereunder shall be payable at the office of Lender at _____, or at such other place as Lender may from time to time designate in writing.  Said principal and interest shall be paid over a term, at times, and in the manner set forth below.

1.      **Collateral.**  This Note is secured by a Deed of Trust of even date herewith encumbering certain real property located in Lincoln County, Idaho as more particularly described in the Deed of Trust, such property consisting of Borrower's interest in fifteen (15) lots, commonly known as the Old School Project.  The parties acknowledge that three of the lots are not technically within the Old School subdivision; however, for purposes of this Note the parties are including these three lots in the "Old School Project."  The Deed of Trust securing this Note will be in a first lien position approved by the United Bankruptcy Court.

2.      **Payment Provision.**  Interest accrued on the unpaid principal balance of this Note, from the date of disbursement at the rate of twelve percent (12%) per annum, together with unpaid principal balance shall be due and payable upon the sale and closing of each of the fifteen (15) Old School Project lots, with one-fifteenth (1/15) of the unpaid principal and interest being due with respect to each lot.

2.1      **Loan Fees/Points.**  Borrower acknowledges that the loan disbursement amount shall be Two Hundred Twenty Thousand and no/100 Dollars ($220,000.00), with the additional amount under this Note being attributable to loan fees/points—consisting of ten (10) points for this loan.

3.      **Maturity.**  The unpaid principal balance of this Note and all accrued unpaid interest thereon, if not sooner paid, shall be due and payable in full on or before the last day of the twenty-fourth (24th) month following the date of disbursement, but in no event extending beyond May 31, 2013.

4.      **Application of Payments.**  All payments shall be applied first to the payment of loan fees, points, and accrued unpaid interest on this Note and the balance, if any, shall be applied to the reduction of the outstanding principal balance of this Note.  Interest due hereunder shall be calculated on the basis of a 360-day year composed of twelve 30-day months; provided however in no event shall the interest payable under the terms of this Note exceed the maximum rate of interest permitted under applicable law.

5.      **Default.**  Should default be made in the payment of the amounts due hereunder, then such default shall mature the entire indebtedness evidenced hereby, without notice, at the option of the holder hereof.  Every person at any time liable for the payment of the debt evidenced hereby, waives presentment for payment, demand and notice of non-payment of this Note, and consents that the holder may extend the time of payment of any part of the whole of the debt at any time at the request of any other person liable hereunder.  Any delay on the part of the Payee in exercising any rights hereunder shall

**Secured Promissory Note**
(*Loan #1*)
Page 2 of 2

not operate as a waiver of said rights; acceptance of any payment after its due date shall not be deemed a waiver of the right to require prompt payment when due of all other sums, acceptance of any payment after the Payee has declared the entire indebtedness due and payable shall not cure any default of the maker or operate as a waiver of any rights of the Payee hereunder.

This Note shall be paid without claim of set-off or deduction of any nature or for any cause whatsoever.

Upon default, the maker agrees to pay all costs and reasonable attorney fees of collection.

_____, 2011

THE LEED CORPORATION


By:    _____
Its:    Lon E. Montgomery, President

# SECURED PROMISSORY NOTE and line of credit agreement

*(Loan #2—Revolving Line of Credit)*

$100,000.00                                                                Shoshone, Idaho

Date: April    , 2011

For value received, the undersigned does hereby promise to pay to the order of Equity Trust Company custodian FBO Neal C. Hocklander IRA, its successors and assigns (the "Lender") the principal sum of One Hundred Thousand and no/100 Dollars  ($100,000.00), together with interest on the principal balance of this Secured Promissory Note (the "Note"), from time to time remaining unpaid, from the date of disbursements by Lender hereof at the applicable interest rate (hereinafter defined) in lawful money of the United States of America, which shall be legal tender in payment of all debts at the time of such payment.  Both principal and interest and all other sums due hereunder shall be payable at the office of Lender at _____, or at such other place as Lender may from time to time designate in writing.  Said principal and interest shall be paid over a term, at times, and in the manner set forth below.

1.    **Collateral.**  This Note is secured by a Deed of Trust of even date herewith encumbering certain real property located in Lincoln County, Idaho as more particularly described in the Deed of Trust, such property consisting of Borrower's interest in fifteen (15) lots, commonly known as the Old School Project.  The parties acknowledge that three of the lots are not technically within the Old School subdivision; however, for purposes of this Note the parties are including these three lots in the "Old School Project."  The Deed of Trust securing this Note will be in a first lien position approved by the United Bankruptcy Court.

2.    **Payment Provision.**  Upon the sale and closing of each of the Old School Project lots, the loan draws disbursed under this Note shall be paid, without interest, in the amount attributable to the lot then being sold.  Lender shall also be paid thirty (33%) of the Net Profit (in lieu of other interest or points under this Note) from each of the Old School Project lots at the time of closing.  "Net Profit" shall mean the sale proceeds remaining after payment of the lien attributable to the first lien (Loan #1), the loan draws disbursed with respect to the lot being sold, and closing costs (including, but not limited to realtor commission, title fees, and customary closing costs).

3.    **Maturity.**  The unpaid principal balance of this Note, if not sooner paid, shall be due and payable in full on or before the last day of the twenty-fourth (24th) month following the date of the first disbursement or loan draw issued pursuant to this Note.

4.    **Default.**  Should default be made in the payment of the amounts due hereunder, then such default shall mature the entire indebtedness evidenced hereby, without notice, at the option of the holder hereof.  Every person at any time liable for the payment of the debt evidenced hereby, waives presentment for payment, demand and notice of non-payment of this Note, and consents that the holder may extend the time of payment of any part of the whole of the debt at any time at the request of any other person liable hereunder.  Any delay on the part of the Payee in exercising any rights hereunder shall not operate as a waiver of said rights; acceptance of any payment after its due date shall not be deemed a waiver of the right to require prompt payment when due of all other sums, acceptance of any payment after the Payee has declared the entire indebtedness due and payable shall not cure any default of the maker or operate as a waiver of any rights of the Payee hereunder.

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

  This Note shall be paid without claim of set-off or deduction of any nature or for any cause whatsoever.

  Upon default, the maker agrees to pay all costs and reasonable attorney fees of collection.

    _____, 2011

    THE LEED CORPORATION


By:  _____
Its:  Lon E. Montgomery, President

## LINE OF CREDIT AGREEMENT

This Line of Credit Agreement (the "*Credit Agreement*") is made and entered into this __ day of April, 2011, by and between Equity Trust Company custodian FBO Neal C. Hocklander IRA, whose address is _____ ("*Lender*") and THE LEED CORPORATION, an Idaho corporation and debtor-in-possession in that certain District of Idaho chapter 11 bankruptcy reorganization, Case No. 10-40743, ("*Borrower*").

In consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Line of Credit.  Lender hereby establishes for a period extending for twenty four months after the first disbursement hereunder, but in no event extending beyond to May 31, 2013 (the "*Maturity Date*") a line of credit (the "*Credit Line*") for and on behalf of Borrower equal to the principal sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) (the "*Credit Limit*").  In connection herewith, Borrower shall execute and deliver to Lender a Secured Promissory Note in the amount of the Credit Limit, substantially in the form attached hereto as Exhibit "A".  All sums advanced on the Credit Line or pursuant to the terms of this Agreement (each a "*Loan Draw*") shall become part of the principal of the Secured Promissory Note (Loan #2).

Loan Draw.  Any request for a Loan Draw shall be made by Borrower in writing, setting forth the amount of such requested Loan Draw, but in no event exceeding $15,000.00 per Loan Draw, signed by a duly authorized officer of Borrower, and delivered to Lender, and may be made from time to time as Borrower may choose, provided, however, no requested Loan Draw will, when added to the outstanding principal balance of and interest accrued, if any, on all previous Loan Draws hereunder, exceed the Credit Limit.  Each Loan Draw shall designate which Old School Lot for which the draw is being requested and Borrower covenants that each Loan Draw shall only be used to pay costs for improvement of the specified Old School Lot.  Loan Draws shall be approved by the Lender based on Lender's inspection of the respective Old School Lots and acceptable construction progress being demonstrated from the inspection(s) by the Borrower.  Upon approval of the Loan Draw, Lender shall deliver to Borrower or a depository account designated by Borrower, within five business days following approval of the Loan Draw, the amount requested as a Loan Draw set forth in such request in immediately available funds.  Lender may refuse to make any requested Loan Draw if an event of default has occurred and is continuing hereunder either at the time the request is given or the date the Loan Draw is to be made, or if an event has occurred or condition exists which, with the giving of notice or passing of time or both, would constitute an event of default hereunder as of such dates.

Borrower agrees that any and all advances made hereunder shall be for Borrower's benefit, whether or not said advances are deposited to Borrowers' account, transferred directly to Borrower, or paid to a third party for Borrower's benefit.  To the extent that Lender advances monies to third parties as directed by Borrower or for the benefit of Borrower, those advanced are covered by this Agreement as if the money had been given directly to the Borrower.  Advances under this Note may be made pursuant to oral or written request from Borrower, but Lender may require, at its sole option, that any or all oral requests be confirmed in writing.  Borrower agrees to be liable for all sums advanced in accordance with this Note regardless whether the sums advanced are received directly from the Lender, or caused to be made available from third party or related entities by the Lender.  It is anticipated by the parties that all funds advanced by the Lender shall be either to reimburse Borrower for business expenses or for Lender to pay invoices submitted to Borrower.  Borrower understands that it will be required to provide documentation to verify that the requested advances is for a legitimate business expenses and Lender will have sole and absolute discretion to determine whether the expense is an appropriate business expense.

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

Advances will be made no more than twice monthly and unless otherwise agreed by the parties, advances will be made on the 1st and the 15th of each month.

Lender shall have no obligation to advance funds under this Note #2 if:

(a) Borrower is in default under this terms of any agreement that Borrower has with Lender, including, but not limited to this Note and any other agreement made in connection with the signing of this Note;

(b) Failure to make reasonable progress on the completion of the homes being built in the Old School Project (as that term is defined in Note #1 and Note #2) as determined solely by Lender;

(c) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Holder;

(d) Lender deems itself insecure under this Note or any other agreement between the Lender and Borrower;

(e) Borrower has borrowed the maximum amount available to them under this Note;

(f) The time for this Revolving Promissory Note has expired or completion of the 15 homes being built in the Old School Project;

(g) Any other reason deemed appropriate by Lender.

Repayment. Upon the sale and closing of each of the Old School Project lots, a minimum of 1/15th of Loan #1 and then under Loan #2 the loan draws disbursed under Loan # 2 shall be paid, without interest, in the amount attributable to the lot then being sold. Lender shall also be paid thirty (33%) of the Net Profit (in lieu of other interest or points under this Note) from each of the Old School Project lots at the time of closing. "Net Profit" shall mean the sale proceeds remaining after payment of the lien attributable to the first lien (Loan #1), the loan draws disbursed with respect to the lot being sold, and closing costs (including, but not limited to realtor commission, title fees, and customary closing costs).

Conditions Precedent. Lender shall not be required to make any advance hereunder unless and until:

All of the documents required by Lender, including the Promissory Notes (Loan #1 and Loan #2), have been duly executed and delivered to Lender and shall be in full force and effect;

The representations and warranties contained in this Agreement and the Promissory Notes (Loan #1 and Loan #2) are then true with the same effect as though the representations and warranties had been made at such time. The request for a Loan Draw by Borrower shall constitute a reaffirmation to Lender that all representations and warranties made herein remain true and correct in all material respects to the same extent as though given the time such request is made, and that all conditions precedent listed in this Section 5 have been, and continue to be, satisfied in all respects as of the date such request is made; and

EXHIBIT "A" TO
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 4

Secured Promissory Note and Line of Credit Agreement
(*Loan #2*)

No event of default hereunder has occurred and is continuing, and no condition exists or event has occurred which, with the passing of time or the giving of notice or both, would constitute an event of default hereunder.

Approval of Loan #1, Loan #2 and the related settlement agreements with the New Hampshire Bankruptcy Trustee,  and David and Martha Orr, by the United States Bankruptcy Court for the District of Idaho.  In the case of the settlement with the New Hampshire Bankruptcy Trustee, approval of the United States Bankruptcy Court for the District of New Hampshire, as well.

Representations of Borrower.  In order to induce Lender to enter into this Agreement and to make the advances provided for herein, Borrower represents and warrants to Lender as follows:

Borrower is an Idaho corporation duly organized and validly existing under the laws of the State of Idaho with the power to own its assets and to transact business in Idaho, and in such other states where its business is conducted;

Borrower has the authority and power to execute and deliver any document required hereunder and to perform any condition or obligation imposed under the terms of such documents;

The execution, delivery and performance of this Agreement and each document incident hereto will not violate any provision of any applicable law, regulation, order, judgment, decree, articles of incorporation, by-law, indenture, contract, agreement, or other undertaking to which Borrower is a party, or which purports to be binding on Borrower or its assets; and

Other than the currently pending chapter 11 reorganization case, 10-40743, there is no action, suit, investigation, or proceeding pending or, to the knowledge of Borrower, threatened, against or affecting Borrower or any of its assets which, if adversely determined, would have a material adverse affect on the financial condition of Borrower or the operation of its business.

Affirmative Covenants.  So long as any sum remains unpaid hereunder, in whole or in part, Borrower covenants and agrees that except with the prior written consent of Lender, Borrower shall do the following:

Borrower shall furnish to Lender such financial statements as Lender may from time to time require, including but not limited to, annual and quarterly financial statements.  Such financial statements will be made available to Lender as soon as possible after the end of the appropriate periods as requested by the Lender.  Borrower shall furnish such additional information regarding its business affairs and financial condition as Lender may from time to time in good faith request;

Borrower shall notify Lender of any default under the terms hereof or of any litigation, proceeding, or development which may have a material adverse effect on Borrower's ability to perform under the terms of this Agreement;

Borrower shall duly observe and conform to all valid requirements of any governmental authority relative to the conduct of its business, properties, or assets and will maintain and keep in full force and effect its lawful existence and all licenses and permits necessary to the proper conduct of its business; and

Borrower shall (i) file all applicable federal, state, and local tax returns or other statements required to be filed in connection with its business, including those for income taxes, sales

**Secured Promissory Note and Line of Credit Agreement**
*(Loan #2)*

taxes, property taxes, payroll taxes, payroll withholding amounts, FICA contributions, and similar items; (ii) maintain appropriate reserves for the accrual of the same; and (iii) pay when due all such taxes, or sums or assessments made in connection therewith; provided, however, that (until foreclosure, sale, or similar proceedings have been commenced) nothing herein will require Borrower to pay any sum or assessment, the validity of which is being contested in good faith by proceedings diligently pursued and as to which adequate reserves have been made.

Negative Covenants.  So long as any amounts due hereunder remain unpaid in whole or in part, Borrower covenants that except with the prior written consent of Lender, it will not enter into any transaction of merger or consolidation, or acquire the assets or business of a person or other entity, or make any loans or advances to any person or other entity other than in the normal and ordinary course of business now conducted; make any investment in securities of any person or other entity; or guarantee or otherwise become liable upon the obligations of any person or other entity, except by endorsement of negotiable instruments for deposit or collection in the normal and ordinary course of business.

Events of Default.  An event of default will occur if any of the following events occurs ("*Event of Default*"):

Failure to pay any principal or interest hereunder within ten (10) days following the Maturity Date;

Any representation or warranty made by Borrower in Section 6 of this Agreement or in connection with any borrowing or request for an Advance hereunder, or in any certificate, financial statement, or other statement furnished by Borrower to Lender is untrue in any material respect at the time when made;

Default by Borrower in the observance or performance of any other covenant or agreement contained in this Agreement, other than a default constituting a separate and distinct event of default under this Section 9;

Default by Borrower in the observance or performance of any other covenant or agreement contained in any other document or agreement made and given in connection with this Agreement, other than a default constituting a separate and distinct event of default under this Section 8, and the continuance of the same unremedied for a period of ten (10) days after notice thereof is given to Borrower;

Any of the documents executed and delivered in connection herewith for any reason ceases to be valid or in full force and effect or the validity or enforceability of which is challenged or disputed by any signer thereof, other than Lender;

Borrower shall default in the payment of principal or interest on any other obligation for borrowed money other than hereunder, including under the Promissory Notes (Loan #1 and Loan #2), or defaults in the performance or observance of any obligation or in any agreement relating thereto, if the effect of such default is to cause or permit the holder or holders of such obligation to cause such obligation to become due prior to the stated maturity; or

All or any substantial part of the property of Borrower shall be condemned, seized, or otherwise appropriated, or custody or control of such property is assumed by any governmental agency or any court of competent jurisdiction, and is retained for a period of thirty (30) days.

Secured Promissory Note and Line of Credit Agreement
(*Loan #2*)

Remedies.  Upon the occurrence of an Event of Default as defined above (other than an Event of Default set forth in Sections 8(g), Lender shall notify Borrower of such Event of Default and Borrower shall have a period of ten (10) days to correct and cure such matter or provide Lender other assurance satisfactory to Lender.  If Borrower shall have failed to correct or cure such matter within ten (10) days following notice thereof from Lender, Lender may declare the entire unpaid principal balance, together with accrued interest thereon, to be immediately due and payable without presentment, demand, protest, or other notice of any kind.  Lender may suspend or terminate any obligation it may have hereunder to make additional Advances.  To the extent permitted by law, Borrower waives any rights to presentment, demand, protest, or notice of any kind in connection with this Agreement.  No failure or delay on the part of Lender in exercising any right, power, or privilege hereunder will preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.  The rights and remedies provided herein are cumulative and not exclusive of any other rights or remedies provided at law or in equity.  Borrower agrees to pay all costs of collection incurred by reason of the default, including court costs and reasonable attorney's fees, whether or not the attorney is a salaried employee of Lender, including such expenses incurred before or after any legal action or bankruptcy proceeding involving Borrower has commenced, during the pendency of such proceedings, and continuing to all such expenses in connection with any appeal to higher courts arising out of matters associated herewith.

Representations of Lender.  Lender hereby represents and warrants to Borrower as follows:

Lender represents that Lender is aware of the business affairs and financial condition of Borrower, including, but not limited to the Borrower's chapter 11 reorganization, and has acquired sufficient information about Borrower to reach an informed and knowledgeable decision to acquire the Promissory Notes (Loan #1 and Loan #2).

Lender acknowledges that he has received and reviewed the Promissory Notes (Loan #1 and Loan #2) and all the information Lender considers necessary or appropriate for deciding whether to make the loan contemplated herein and accepted the Promissory Notes (Loan #1 and Loan #2).  Lender further represents that Lender has had an opportunity to ask questions and receive answers from Borrower regarding the business, properties, prospects and financial condition of Borrower.

Lender is a lender to companies in the development stage and acknowledges that he can bear the economic risk of its financing obligations, and has such knowledge and experience in financial or business matters that he is capable of evaluating the merits and risks of this investment.

General Provisions.  All representations and warranties made in this Agreement and the Promissory Notes (Loan #1 and Loan #2) shall survive the execution and delivery of this Agreement and the making of any Advances hereunder.  This Agreement will be binding upon and inure to the benefit of Borrower and Lender, their respective successors and assigns, except that neither party shall assign or transfer its respective rights or delegate its respective duties hereunder without the prior written consent of the other party; provided, however, that Lender may assign its respective rights and duties hereunder to an entity controlled by or under common control with Lender.  This Agreement, the Promissory Notes (Loan #1 and Loan #2) and all documents and instruments associated herewith will be governed by and construed and interpreted in accordance with the laws of the State of Idaho.  Time is of the essence hereof.  This Agreement will be deemed to express, embody, and supersede any previous understanding, agreements, or commitments, whether written or oral, between the parties with respect to the general subject matter hereof.  This Agreement may not be amended or modified except in writing signed by the parties.

EXHIBIT "A" TO
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 7

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

**THIS AGREEMENT AND CORRESPONDING SECURED PROMISSORY NOTES (LOAN #1 AND LOAN #2) SHALL BE SECURED BY A DEED OF TRUST. THE DEED OF TRUST'S LIENHOLD POSITION, REGARDLESS OF ACTUAL DATE OF RECORDATION AND PERFECTION, SHALL BE THE DATE OF COURT APPROVAL OF THIS POST-PETITION LOAN TO THE BORROWER .**

*Reserved.*

IN WITNESS WHEREOF, the parties have executed, or caused to be executed by their duly authorized representatives, this Agreement as of the date first above written.

Equity Trust Company custodian FBO Neal C. Hocklander IRA (Lender)

THE LEED CORPORATION (Borrower)

By: _____

By: _____
　　　Its:

Its:　　　President

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

---

UPON RECORDATION, RETURN TO:

---

## DEVELOPMENT LOAN DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEVELOPMENT LOAN DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING (the "Deed of Trust") is made and entered into effective as of the ___ day of _____, 2011, by and between , THE LEED CORPORATION, an Idaho corporation whose address is P.O. Box 2292, Twin Falls, ID 83303-2292 ("Trustor") in favor of Brian T. Tucker, Attorney at Law ("Trustee") at 490 Memorial Drive, Idaho Falls, ID 83401, for the benefit of Equity Trust Company custodian FBO Neal C. Hocklander IRA ("Beneficiary") whose address is _____.

### RECITALS:

A.      Trustor is the owner of fee simple title in and to certain real property located in Lincoln County, Idaho, consisting of fifteen partially constructed homes, as more particularly described in Exhibit "A", which is attached hereto and by this reference incorporated herein (the "Property").

B.      Borrower applied to Beneficiary for financing in the principal amount of THREE HUNDRED FORTY-TWO THOUSAND AND NO/100 DOLLARS ($342,000.00), such amounts representing the loan amounts disbursed pursuant to two promissory notes:  (1) Secured Promissory Note (*Loan #1*) and (2) Secured Promissory Note and Line of Credit Agreement (*Loan #2*) the proceeds of which shall be used by Trustor as development financing for the improvements to be installed on the Property and to fund settlements with two lien holders on the Property.

C.      Beneficiary has committed to extend the financing to Borrower, provided that Beneficiary obtains a lien against the Property in a first priority position upon approval of the two loans (Loan #1 and Loan #2) and the related settlements by the United States Bankruptcy Court for the District of Idaho.

NOW, THEREFORE, upon the terms, covenants and conditions set forth in this Deed of Trust, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, TRUSTOR HEREBY CONVEYS AND WARRANTS TO TRUSTEE, IN TRUST, WITH POWER OF SALE, and hereby grants to Beneficiary, as a secured party, a security interest in the following described real and personal property:

EXHIBIT "A" TO
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 0

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

GRANTING CLAUSE I:
<u>REAL PROPERTY</u>

All right, title, interest and estate of Trustor in and to the Property.

GRANTING CLAUSE II:
<u>ASSIGNED CONTRACTS</u>

All right, title, interest and estate of Trustor, now owned or hereafter acquired, in and to the following to the extent applicable to the Property or the Improvements (as defined in Article I of this Deed of Trust):

(1)     All contract and agreements relating to the planning, design, engineering, or architecture of the Improvements;

(2)     All drawings, models, plans specifications, budgets, cost estimates, bid packages, bids, and other related documents relating to the development, installation or construction of the Improvements;

(3)     All contracts and agreements relating to the installation, construction or demolition of any of the Improvements, including all retainages, payment and performance bonds, and performance escrows described in or required by any of the foregoing;

(4)     All contracts and agreements relating to the development of the Property or the improvements, including all contacts with governmental authorities granting entitlements or development rights with respect to the Property, appraisals, soil reports, feasibility studies, environmental assessment reports, and engineering, mechanical and wetlands reports;

(5)     All contracts and agreements between Trustor and any utility company, water company or user association, or telecommunications company for the purpose of: (a) furnishing electricity, natural gas or oil, telephone, sewer, water, cable television, Internet or other such services to the Property; (b) providing hook-ups, connection, lines or other necessary laterals, or tie-ins to the Property and the Improvements installed or constructed on the Property, including any "will serve" letters benefiting the Property; or (c) granting any such utility or other company access to the Improvements or to space in or on the Property or the improvements to provide service to the Property;

(6)     All contracts and leases granted by Trustor, as lessor, to any individual or entity for the use of roof-top space or other areas on the Improvements or the Property for the placement of telecommunications equipment, antennae or transmission devices, or for the placement of billboards, signs or other advertising media;

(7)     All contracts and agreements for marketing, leasing, advertising, use or sale of the Improvements or any portion of the Improvements;

(8)     All contracts and agreements relating to the management of the Property and the Improvements, or with any franchisor relating to the operation or use of the Improvements;

(9)     All security deposits, connection fees, prepayments, reservation fees and other payments made by Trustor with respect to any of the foregoing; and

(10)     All modifications, amendments substitutions and replacements of any of the foregoing.

EXHIBIT "A" TO
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 1

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

GRANTING CLAUSE III:
<u>AWARDS</u>

All right, title, interest and estate of Trustor, now owned, or hereafter acquired in and to:

(1)      All awards made for the taking by eminent domain or by any proceeding or purchase in lieu thereof of the Property or any portion of the Property of any Improvements now or hereafter situate thereon or of any estate or easement in the Property (including any awards for change of grade of streets); and

(2)      The proceeds of insurance paid on account of partial or total destruction of the Improvements now or hereafter located upon the Property or any portion thereof (regardless of whether or not Trustor is required to carry such insurance under this Deed of Trust or any other Loan Document).

GRANTING CLAUSE IV:
<u>CONSTRUCTION MATERIALS</u>

All right, title, interest and estate of Trustor, now owned or hereafter acquired, in and to all building materials, supplies and inventories acquired by Trustor with proceeds of the Loan (as defined in Article I of this Deed of Trust) and delivered to the Property for use in connection with or for incorporation into the Improvements of the Property.

GRANTING CLAUSE V:
<u>EQUIPMENT</u>

All right, title, interest and estate of Trustor, now owned or hereafter acquired, in and to:

(1)      All machinery, equipment, good, supplies, appliances, floor coverings, furnishings, window coverings, security systems, communications systems and equipment, artwork,  light fixtures, and other articles of tangible personal property of Trustor used or acquired for use on the Property;

(2)      All attachments, accessories and accessions thereto and all substitutions and replacements thereof and all parts therefore.

EXHIBIT "A" TO
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 2

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

GRANTING CLAUSE VI:
<u>FIXTURES AND INTERESTS</u>

All rights, title, interest and estate of Trustor, now owned or hereafter acquired, in and to:

(1)    All buildings, improvements, renovations, works, structures, facilities and fixtures, including any future additions to, and improvements and betterments upon, and all renewals and replacements of, any of the foregoing and which are owned or acquired by Trustor and which are now or hereafter shall be constructed or affixed or constructively affixed to the Property, or to any portion of the Property; and

(2)    All easements, licenses, streets, ways, alleys, roads, passages, rights-of-way, waters, watercourses, water rights, ditches and ditch rights (whether now owned or hereafter acquired by Trustor and whether arising by virtue of land ownership, contract or otherwise), of any kind and nature, relating to or in any way appurtenant or appertaining to the Property or any portion of the Property.

GRANTING CLAUSE VII:
<u>INTANGIBLES</u>

All rights, titles, interest and estate of Trustor, now owned or hereafter acquired, in and to:

(1)    All general intangibles of every nature and intellectual property owned by Trustor pertaining to the Property or the Improvements including, without limitation, any software, and any trade names, service names, trademarks, service marks, marketing materials, telephone numbers, domain names and any other names, numbers or materials used to identify, advertise or promote the Property or the Improvements; and

(2)    All now existing or hereafter acquired chattel paper, account, deposit accounts, payment intangibles, letter of credit rights, supporting obligations, good will and other intangible personal property owned by Trustor and pertaining to the Property or the Improvements.

GRANTING CLAUSE VIII:
<u>PERMITS AND LICENSES</u>

All right, title, interest and estate of Trustor, now existing or hereafter acquired, in and to all permits, franchises, privileges, grants, consents, licenses, authorizations and approvals heretofore or hereafter granted by the United States, by the State of Idaho, or by any departments or agencies thereof, or any other governmental or public bodies, agencies or authorities (including, without limitation, City of Shoshone, Lincoln County, Idaho) to or for the benefit of Trustor and utilized in connection with the development, construction operation of the Improvements.

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

GRANTING CLAUSE IX:
RENTS, ISSUES, ETC.

All right, title, interest and estate of Trustor, now owned or hereafter acquired, in and to: all sales proceeds, rents, subrents, issues, royalties, income and profits of and from the Property or any portion of the Property.

GRANTING CLAUSE X:
TENEMENTS AND HEREDITAMENTS

All right, title, interest and estate of Trustor, now owned or hereafter acquired, in and to all and singular the tenements, hereditaments, rights, privileges and appurtenances belonging, relating, or in any way appertaining to any of the Property, or any portion of the Property, or which shall hereafter in any way belong, relate or in any way appertain thereto (including, without limitation, any and all development rights, air rights or similar or comparable rights), and the reversion and reversions, remainder and remainders, and estates, rights, titles, interests, possessions, claims and demands of every nature whatsoever, at law or in equity, which Trustor may have or may hereafter acquire in and to the Property or an portion of the Property.

GRANTING CLAUSE XI:
PROCEEDS AND PRODUCTS

All cash and noncash proceeds and all products of any of the foregoing, including, without limitation, insurance proceeds; however, to the extent the Borrower is not in default under its obligations hereunder, upon the sale of each of the respective fifteen homes, the proceeds due and payable at closing of any such sale shall be the Advances related to that specific home.

ARTICLE I
DEFINITIONS

Unless the context clearly indicates otherwise, certain terms used in this Deed of Trust shall have the meanings set forth below:

"Event of Default" means the occurrence and continuance of any one of the events listed in Section 11.1 of this Deed of Trust.

"Hazardous Materials" includes, but shall not be limited to, substances defined as "hazardous substances," "hazardous wastes," "hazardous materials," "extreme hazardous waste," "restricted hazardous waste," or "toxic substances" or words of similar import under any applicable local, state or federal law or under the regulations adopted or publications promulgated pursuant thereto, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. 6901 et seq.; the Hazardous Materials Transportation Act, as amended, 49 U.S.C. Section 9601 et seq.; the Resource Conservation and Recovery Act, as amended 42 U.S.C. et seq.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. Section 1251 et seq., as the same may be amended from time to time; and in all rules adopted and regulations promulgated pursuant to any of the foregoing.

"Impositions" means all real property taxes and assessments, general and special and all other tax assessments and other governmental, municipal or other charges or impositions of any kind or nature whatsoever (including, without limitation, charges and assessments on water or water stocks used on or with the Property and levies or charges resulting from covenants conditions and restrictions affecting the Trust Estate) which are assessed or imposed upon the Trust Estate, or become due and payable, and which create or may create a lien upon the Property or any portion of the Property, equipment or other facility used I the construction, renovation, operation or maintenance of the Trust Estate.

EXHIBIT "A" TO
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 4

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

"Improvements" means any improvements now or hereafter installed or constructed on the Property.

"Loan" means the financing facility advanced or to be advanced by Beneficiary to or for the account of the Trustor under the terms of the Loan Agreement in the maximum principal amount of THREE HUNDRED FORTY-TWO THOUSAND AND NO/100 DOLLARS ($342,000.00), such amounts representing the loan amounts disbursed pursuant to two promissory notes: (1) Secured Promissory Note (*Loan #1*) and (2) Secured Promissory Note and Line of Credit Agreement (*Loan #2*).

"Loan Agreement" means that certain Loan Agreement dated the same date as this Deed of Trust, by and between Trustor, as borrower, and Beneficiary, as lender, relating to the Loan, together with any and all amendments and modifications thereto.

"Loan Documents" means the Loan Agreement, the Note, this Deed of Trust, one or more guaranties, all other deeds of trust and security instruments given by of for the benefit of Trustor to Beneficiary as security for the Note, and any and all other documents between Trustor and Beneficiary evidencing or securing the Loan, as the same may now be or may hereafter be amended or modified.

"Note" means the Promissory Notes (Loan #1 and Loan #2) executed by Trustor, as maker, in favor of Beneficiary, as payee, under the terms of the Loan Agreement, together with any and all amendments and modifications thereto, in the maximum principal amount of the Loan.

"Obligations" means the obligations of Trustor described in Section 2.1 of this Deed of Trust, the payment and performance of which are secured by this Deed of Trust.

"Property" means that certain real property situate in Lincoln County, Idaho, described in Recital A above and referred to in Granting Clause I of this Deed of Trust, as more particularly described on Exhibit "A", attached to this Deed of Trust.

"Trustee Estate" means all of the items, documents, interests and properties referred to in Granting Clauses I through XI of this Deed of Trust.

ARTICLE II
OBLIGATIONS SECURED

2.1    Obligations.    This Deed of Trust is given for the purpose of securing the following Obligations of Trustor:

(a)    The payment and performance of each and every obligation of Trustor, evidenced by the Note, including, without limitation, the payment of principal of and interest on the Loan;

(b)    The payment and performance of each and every agreement and obligation of Trustor under this Deed of Trust, and under any other instrument given to evidence or further secure the payment and performance of any obligation of Trustor under the Loan, the Loan Agreement and all of the other Loan Documents; and

(c)    The payment of all sums expended and advanced by Trustee or Beneficiary pursuant to the terms of this Deed of Trust, together with interest thereon as provided in the Loan Agreement.

ARTICLE III
REPRESENTATIONS AND WARRANTIES

3.1    Property.    Trustor represents and warrants to Beneficiary as follows:

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

(a)   Except for the Permitted Encumbrances, Trustor is, or simultaneously with the execution of this Deed of Trust shall become, the owner of fee simple title in and to the Property;

(b)   Trustor possesses all requisite power and authority to execute and deliver this Deed of Trust;

(c)   Trustor shall defend title to the Property against all claims and demands whatsoever;

(d)   The lien created by this Deed of Trust upon the Property is a valid and will create the lien priority as described in paragraph C of the Recitals;

(e)   Any and all obligations incurred by Trustor in connection with the acquisition of all or any portion of the Property are current and without default on the part of Trustor;

(f)   To the best of Trustor's actual knowledge:  (1) the Trust Estate is not in violation of any federal , state or local law, ordinance or regulation relating to industrial hygiene or to environmental conditions on, under or about the Trust Estate, including without limitation, soil and ground water conditions; (2) there are no Hazardous Materials constructed, deposited, stored, disposed, placed or located in, on or under the Trust Estate; and (3) Trustor has not received notice from any federal, state or local agency or department regarding the noncompliance by Trustor or the Trust Estate with respect to  any federal, state or local law, ordinance or regulation governing the use, handling, storage, generation, transportation or disposal of Hazardous Materials or the Mere presence of Hazardous Materials on the Property.

3.2   *Reserved.*

## ARTICLE IV
## MAINTENANCE OF TRUST ESTATE

Trustor shall: (a) maintain the Trust Estate at all times in good condition and repair (b) not commit any waste of the Trust Estate, or, except with the prior written permission of Beneficiary, remove damage, demolish, or structurally alter and of the Improvements now on the Property, or to be constructed on the Property hereafter; (c) complete promptly and in good and workmanlike manner the Improvements, or any other improvements on the Property, which may for any reason be constructed; (d) restore promptly and in good and workmanlike manner any of the Improvements, or any portion of the Property, which may for any reason be damaged or destroyed; (e) comply at all times with all laws, ordinances, regulations, covenants and restrictions in any manner affecting the Trust Estate; (f) not commit or knowingly permit any act upon the Trust Estate in violation of law; and (g) do all acts which by reason of the character or use of the Trust Estate may be reasonably necessary to maintain and care for the same, the specific enumeration herein not excluding the general. None of the foregoing shall prohibit Trustor from installing tenant improvements in connection with Trustor's leasing of space in the Improvements.

## ARTICLE V
## INSURANCE

5.1   <u>Insurance</u>   Trustor or Trustor's general contractor, as applicable, shall secure and at all times maintain and promptly pay when due all premiums for the following types of insurance:

(a)   During any period of construction, builder's risk extended coverage insurance against loss or damage by fire, lightning, windstorm, hail, explosion, riot, civil commotion, motor vehicles, aircraft, smoke, theft, vandalism, malicious mischief, and other risks from time to time included under

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

extended coverage policies in an amount not less than (100%) of the full replacement value of the Improvements. All policies secured and carried in accordance with this Section 5.1 (a) shall contain the "Replacement Cost Endorsement," a lender's loss payable endorsement 438 BFU naming Lender as loss payee, and shall name Beneficiary as an additional insured.

(b)      During any period of construction, worker's compensation insurance against liability arising from claims of workmen with respect to and during the period of any work on or about the Property.

(c)      Following any period of construction, insurance against loss or damage to the Property andthe Improvements by fire, vandalism, malicious mischief, and any of the risks covered by insurance of the type now known as "Causes of Loss--Special Form" or comparable coverage in an amount not less than One Hundred Percent (100%) of the full replacement value of the Improvements. Such insurance policy or policies shall contain the "Replacement Cost Endorsement," a lender's loss payable endorsement 438 BFU naming Beneficiary as loss payee, and shall name Beneficiary as an additional insured.

(d)      If the Property is located in a special flood hazard area as identified by the Federal Insurance Administration, federally subsidized flood insurance covering the risk of damage to the Improvements to be constructed on the Property caused by flooding in the total amount of the Loan or for the maximum amount of subsidized insurance available, whichever is less. In lieu of such flood insurance, Trustor shall submit to Beneficiary satisfactory to Beneficiary that no part of the Property is, or will be, within an area designated as a flood hazard area by the Federal Insurance Administration.

(e)      Commercial General Liability insurance applicable to the Trust Estate in the minimum amounts of One Million Dollars ($1,000,000.00) per person and Two Million Dollars ($2,000,000.00) in the aggregate. Such liability insurance shall be issued by one or more insurance companies reasonably satisfactory to Beneficiary and shall name Beneficiary as an additional insured.

(f)      Equipment and machinery insurance covering vessels, machinery, piping, and other equipment, provided the Improvements contain equipment of such nature, and insurance against loss of use arising from any such breakdown, in such amounts as are reasonably satisfactory to Beneficiary.

(g)      Such other insurance and in such amounts as may from time to time reasonably be required by Beneficiary against the same to other hazards.

All policies of builder's risk and other casualty and bodily injury insurance required by the terms of this Deed of Trust shall contain an endorsement or agreement by the insurer that any loss shall be payable in accordance with the terms of such policy notwithstanding any act or negligence of Trustor which might otherwise result in forfeiture of the insurance. The policies shall provide that the insurer will waive all rights of set-off, counterclaim or deduction against Trustor.

5.2      <u>Policies and Premiums</u>. All policies of insurance shall be issued by insurance companies which have a company rating of not less than "A" and financial performance rating of not less than "7" by A.M. Best Co. in "Best's Insurance Reports." All policies of commercial liability and other casualty insurance shall have included therein a standard mortgagee protection clause. Trustor shall furnish Beneficiary with an original policy of all policies of required insurance or an original certificate of insurance together with a true and correct copy of each such policy. All such policies shall contain a provision that such policies will not be cancelled or materially amended or altered, including reduction of coverage, without at least thirty (30) days prior written notice to Beneficiary. If Beneficiary consents to Trustor providing any of the required insurance through blanket policies carried by Trustor and covering more than on location, then Trustor shall cause the insurance company to furnish Beneficiary with an endorsement to such policy which sets forth the coverage, the limits of liability, the name of the carrier, the policy number, the expiration date and a statement that the insurance company will not cancel or materially

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

modify or alter the coverage evidenced by the endorsement without first affording Beneficiary at least thirty (30) days prior written notice. In the vent Trustor fails to provide, maintain, keep in force or deliver and furnish to Beneficiary the policies of insurance required by Section 5.1, Beneficiary may, but without any obligation to do so, procure such insurance for such risks covering Beneficiary's interest, and Trustor shall pay all premiums thereon promptly upon demand by Beneficiary. If Trustor fails to pay any premium after demand by Beneficiary, Beneficiary, at Beneficiary's option, may advance any sums necessary to maintain and to keep in force such insurance. Any sums so advanced, together with interest thereon at the default rate as provided for in the Loan Agreement, shall be secured by this Deed of Trust.

5.3    Occurrence and Notice of Casualty. In the event of loss or damage to the Trust Estate; or any portion of the Trust Estate, Trustor shall immediately give notice thereof to Beneficiary. Beneficiary may, but without any obligation to do so, make proof of loss, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Beneficiary. The insurance proceeds or any part thereof shall be deemed part of the security for the Obligations and shall be applied to restore or repair the portion of the Trust Estate damaged, provided that any insurance proceeds not so applied may be applied by Beneficiary, at Beneficiary's option, to reduce the indebtedness secured by this Deed of Trust (whether or not then due and payable). Except to the extent that insurance proceeds are received by Beneficiary and applied to the indebtedness secured by this Deed of Trust, nothing herein contained shall be deemed to excuse Trustor from repairing or maintaining the Trust Estate as provided in Article IV of this Deed of Trust or restoring all damage or destruction to the Trust Estate, regardless of whether there are insurance proceeds available or whether any such proceeds are sufficient in amount. The application or release by Beneficiary of any insurance proceeds shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

5.4    Disposition of Policies on Foreclosure. In the event Beneficiary exercises the power of sale provisions of this Deed of Trust or takes any other transfer of title or assignment of the Trust Estate in extinguishment in whole or in part of the Obligations, all right, title and interest of Trustor in and to the policies of insurance required by Section 5.1, shall inure to the benefit of and pass to the successor in interest of Trustor or the purchaser or grantee of the Trust Estate.

Secured Promissory Note and Line of Credit Agreement
(*Loan #2*)

ARTICLE VI
INDEMNIFICATION AND OFF-SET

6.1    <u>Indemnification by Trustor</u>.  Trustor hereby indemnifies and holds Beneficiary harmless in accordance with the following:

(a)    If Beneficiary is made a party defendant to any litigation (except litigation wherein Trustor asserts a claim against Beneficiary and prevails) concerning this Deed of Trust or the Trust Estate or any part of the trust Estate or interest therein, or the occupancy thereof by Trustor, then Trustor shall indemnify, defend and hold Beneficiary harmless from any and all liability by reason of such litigation, including reasonable attorney fees and costs incurred by Beneficiary in any such litigation, whether or not the litigation is prosecuted to judgment.  If following the occurrence and continuance of an Event of Default, Beneficiary commences an action against Trustor to enforce any of the material terms, covenants or conditions of this Deed of Trust or because of the breach by Trustor of any of the material terms, covenants or conditions, or for the recovery of any sum secured hereby, Trustor shall pay the reasonable attorney fees and costs actually incurred by Beneficiary in such action.  The right to such attorney fees and costs shall be deemed to have accrued on the commencement of such action and shall be enforceable whether or not such action is prosecuted to judgment.  If Trustor breaches any material term, covenant or condition of this Deed of Trust, Beneficiary may employ an attorney or attorneys to protect Beneficiary's rights hereunder and in the event of such employment following any breach by Trustor, Trustor shall pay Beneficiary reasonable attorney fees and costs in an amount equal to the amount of such fees and costs actually incurred by Beneficiary, whether or not an action is actually commenced against Trustor by reason of such breach.

(b)    If Beneficiary is held liable or could be held liable for, or is subject to any losses, damages, costs, charges ore expenses, directly or indirectly on account of any claims for work, labor or materials furnished in connection with or arising from the construction, repair or reconstruction of any of the improvements, then Trustor shall indemnify, defend and hold Beneficiary harmless from all liability or expense arising therefrom including reasonable attorney fees and costs.

(c)    Trustor, to the full extent permitted by law, shall indemnify, defend and hold harmless Beneficiary, Beneficiary's managers, members, employees, agents, participants, successors and assigns from and against any and all lost, cost, expense or liability incurred in connection with any and all claims and proceedings (whether brought by private party or governmental agency) for bodily injury, property damage abatement or remediation, environmental damage or impairment, or any other injury or damage resulting from or relating to any Hazardous Materials located under or upon or migrating into, under, from or through the Property, which Beneficiary may incur due to the making of the Loan, the exercise of any of Beneficiary's rights under this Deed of Trust or under any other document evidencing or securing the Loan, or otherwise.  The foregoing indemnity shall apply:  (1) whether or not the release of the Hazardous Materials was caused by Trustor, a tenant or subtenant of Trustor, or a prior owner or tenant of the Property; and (2) whether or not the alleged liability is attributable to the handling, storage, generation, transportation or disposal of Hazardous Materials or the mere presence of Hazardous Materials on the Property.  The obligations of Trustor under this Section 6.1(c) shall survive the foreclosure of this Deed of Trust, a conveyance in lieu of foreclosure, the repayment of the Loan proceeds and the discharge and release of the lien and encumbrance of this Deed of Trust.

6.2    <u>Off-Set</u>.  All sums payable by Trustor under this Deed of Trust shall (unless otherwise specifically provided in this Deed of Trust) be paid without notice, demand, counterclaim, set-off, deduction or defense and without abatement, suspension, deferment, diminution or reduction.  The Obligations and liabilities of Trustor hereunder shall in no way be released, discharged or otherwise affected (except as expressly provided herein) by reason of:  (a) any damage to or destruction of, or any condemnation or similar taking of the Trust Estate or any part thereof; (b) any restriction or prevention or interference with any use of the Trust Estate or any part thereof; (c) any title defect or encumbrance or any eviction from the Trust Estate or any part thereof by title paramount or otherwise; (d) any bankruptcy,

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Beneficiary, or any action taken with respect to this Deed of Trust by any trustee or receiver of Beneficiary, or by any court, in any such proceeding; (e) any claim which Trustor has or might have against Beneficiary; (f) any default or failure on the part of Beneficiary  to perform or comply with any of the terms, covenants or conditions of this Deed of Trust or of any other agreement with Trustor or (g) any other occurrence whatsoever, whether similar or dissimilar to the foregoing.

ARTICLE VII<br>IMPOSITIONS

7.1     <u>Payment of Impositions</u>.  Subject to Section 7.3 of this Deed of Trust, Trustor shall pay, prior to delinquency, all Impositions.  However, if, by law, any Imposition is payable, or may at the election of the taxpayer be paid in installments, Trustor may pay the same together with any accrued interest on the unpaid balance of such Imposition in installments as the same become due and before any fine, penalty, interest or cost may be added thereto for the nonpayment of any such installment and interest.

7.2     <u>Evidence of Payment</u>.  Trustor shall, upon request by Beneficiary, furnish to Beneficiary, within thirty (30) days after the date upon which such Imposition is due and payable by Trustor, official receipts of the appropriate taxing authority, or other proof satisfactory to Beneficiary, evidencing the payments thereof.

7.3     <u>Right to Contest</u>.  Trustor shall have the right, before any date set for forfeiture, whether at tax sale, foreclosure on a tax lien, or otherwise, to contest or object to the amount of validity of any Imposition by appropriate legal proceedings, but such contest shall not be deemed or construed in any way as relieving, modifying or extending Trustor's covenant to pay any such Imposition at the time and in the manner provided in Section 7.1, unless Trustor has given prior written notice to Beneficiary of Trustor's intent so to contest or object to any Imposition, and, unless, at Beneficiary's option:  (a) Trustor shall demonstrate to Beneficiary's satisfaction that the legal proceedings shall conclusively operate to prevent the sale of the Trust Estate, or any part thereof, to satisfy such Imposition prior to final determination of such proceedings; or (b) Trustor shall furnish good and sufficient undertaking and sureties as may be required or permitted by law to accomplish a stay of such proceedings.

7.4     <u>Tax on Deed of Trust</u>.  If at any time after the date hereof there shall be assessed or imposed:  (a) a tax or assessment on the Trust Estate in lieu of or in addition to the Impositions payable by Trustor; or (b) a license fee, tax or assessment imposed on Beneficiary and measured by or based in whole or in part upon the amount of the outstanding Obligations or upon payments on the Note (whether principal or interest), then all such taxes, assessments and fees shall be deemed to be included within the term "Impositions" as defined in Article I of this Deed of Trust, and Trustor shall pay and discharge the same as herein provided with respect to the payment of Impositions.  Trustor shall have no obligation to pay any franchise, income, excess profits or similar tax levied on Beneficiary or on the Obligation s secured hereby.

7.5     <u>Reserves for Taxes and Insurance</u>.  In furtherance of Article V and Section 7.1 of this Deed of Trust and anything to the contrary herein notwithstanding, Trustor, upon request by Beneficiary following the occurrence and continuance of an Event of Default, shall pay to Beneficiary, on the date monthly installments of principal and accrued interest are payable under the Note, until the Note is paid on full, an amount equal to one-twelfth of the annual Impositions reasonably estimated by Beneficiary to pay the installment of Impositions next due on the Trust Estate; and one-twelfth of the annual aggregate insurance premium on all policies of insurance required in Article V.  Upon such request, Trustor shall thereafter cause all bills, statements or other documents relating to Impositions and insurance premiums to be sent to Beneficiary.  Provided Trustor has deposited sufficient funds with Beneficiary pursuant to this Section 7.5, Beneficiary shall pay such amounts as may be due thereunder out of the funds so deposited with Beneficiary.  If at any time and for any reason the funds deposited with Beneficiary pursuant to this Section 7.5 are or will be insufficient to pay such amounts as may then or subsequently be due, Beneficiary shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with

Secured Promissory Note and Line of Credit Agreement
(*Loan #2*)

Beneficiary.  Nothing contained herein shall cause Beneficiary to be deemed a trustee of such funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Beneficiary pursuant to this Section 7.5.  Beneficiary shall not be obligated to pay any interest on any sums held by Beneficiary pending disbursement or application hereunder and Beneficiary may impound or reserve for future payment of Impositions and insurance premiums such portion of payments as Beneficiary, in Beneficiary's absolute discretion, may deem proper.  In the event that upon request from Beneficiary pursuant to this Section 7.5 Trustor fails to deposit with Beneficiary sums sufficient to pay fully such Imposition sand insurance premiums at least thirty (30) days before delinquency thereof, Beneficiary, at Beneficiary's election, but without any obligation to do so, may advance any amounts required to make up the deficiency, which advances, if any, shall be secured by this Deed of Trust, and shall be repayable to Beneficiary, with interest from the date advanced, at the default rate of interest specified in the Loan Agreement.

ARTICLE VIII
ADDITIONAL COVENANTS

8.1    Payment of Utilities.  Trustor shall pay when due all utility charges relating to the Trust Estate which may become a lien or charge against the Trust Estate or any portion thereof, for gas, electricity, water or sewer services furnished to the Trust Estate and all assessments or charges of a similar nature, whether public or private, affecting the Trust Estate or any portion thereof whether or not such assessments or charges are liens thereon.

8.2    Defense of Title.  Trustor shall appear in and defend any action or proceeding purporting to affect the security hereof, the Truest Estate, or the rights or powers of Beneficiary or Trustee.  Should Beneficiary elect in good faith to appear in or defend any such action or proceeding, Trustor shall pay all costs and expenses, including costs of evidence of title and reasonable attorney fees and costs, incurred by Beneficiary or Trustee.

8.3    Performance in Trustor's Stead.  Should Trustor fail to make any payment or to do any act as provided in this Deed of Trust, then Beneficiary or Trustee, but without any obligation to do so, without notice to or demand upon Trustor and without releasing Trustor from any obligation hereunder, may:  (a) make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof (Beneficiary or Trustee being authorized to enter upon the Trust Estate for such purposes); (b) commence, appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; (c) pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either Beneficiary or Trustee appears to be superior to the lien of this Deed of Trust, and (d) in exercising any such powers, incur any liability, expend such reasonable amounts as Beneficiary may deem necessary therefore, including cost of evidence of title, employment of attorneys, and payment of reasonable attorney fees and costs.  All such amounts expended by either or both Trustee or Beneficiary shall, at the election of Beneficiary, be added to the principal indebtedness secured by this Deed of Trust and shall accrue interest in accordance with the terms of the Note.

8.4    Repayment of Advances.  Trustor shall immediately repay to beneficiary all sums, other than loan proceeds, with interest thereon as provided in the Note, which at any time may be paid or advanced by Beneficiary for the payment of insurance premiums, taxes, assessments, other governmental, municipal, or other charges or Imposition, title searches, title reports or abstracts, and any other advances made by Beneficiary which are reasonably necessary to maintain this Deed of Trust as a valid and subsisting lien upon the Trust Estate, to preserve and protect Beneficiary's interest in this Deed of Trust, or to preserve, repair or maintain the Trust Estate.  All such advances shall be wholly optional on the part of Beneficiary, and Trustor's obligation to repay the same, with interest, to Beneficiary shall be secured by the lien of this Deed of Trust.

8.5    No Removal of Fixtures.  Trustor shall not, during the existence of this deed of Trust and without the prior written consent of Beneficiary, remove from the Property any of the Improvements,

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

except in the ordinary course of Trustor's business and except to the extent replaced by items of comparable quality and value.

8.6    <u>Further Assurance</u>.  Trustor shall execute (when applicable) and deliver to Beneficiary such further instruments, including, without limitation, Uniform Commercial Code Financing Statements and Continuation Statements and do such further acts as may be necessary or as may be reasonably be required by Beneficiary to carry out more effectively the purposes of this Deed of Trust and to subject to the lien and encumbrance created or intended to be created hereby any property, rights or interests covered or intended to be covered by this Deed of Trust.  Trustor hereby authorizes (to the extent such authorization is valid under applicable law) Beneficiary to execute and file, without Trustor's signature, such Uniform Commercial Code Financing Statements and Continuation Statements as Beneficiary may deem necessary in order to perfect or continue the perfection of the security interests created by this Deed of Trust.

8.7    <u>No Further Encumbrances</u>.  Except for the lien and encumbrance of this Deed of Trust, Trustor shall not create, permit or suffer to exist, and, at Trustor's expense, will defend the Trust Estate and take such other action as is necessary to remove any lien, claim charge, security interest or encumbrance in or to the Trust Estate, or any portion of the Trust Estate.

8.8    <u>No Conveyance of Property</u>.  Trustor shall not sell, convey or alienate the Property or any portion thereof, or any interest therein to any person or entity, without the prior written consent of Beneficiary.  In the event Trustor shall sell, convey or alienate all or any portion of the Property, or any interest therein, in violation of the foregoing, or be divested of title to the Property in any manner, whether voluntarily or involuntarily, then the entire principal indebtedness of the Loan, as evidenced by the Note and the other Loan Documents, and all other Obligations secured by this Deed of Trust, irrespective of the maturity date expressed therein, at the option of Beneficiary, and without prior demand or notice, shall become immediately due and payable.

8.9    <u>Application of Payments</u>.  If at any time during the term of this Deed of Trust Beneficiary receives or obtains a payment, installment or sum which is less than the entire amount then due under the Note secured by this Deed of Trust and any of the other Loan Documents, then Beneficiary shall, notwithstanding any instructions which may be given by Trustor, have the right to apply such payment, installment or sum, or any part thereof to such of the items or Obligations then due from Trustor or to Beneficiary, in Beneficiary's sole discretion, may determine.

8.10    <u>Hazardous Materials</u>.  Trustor shall comply with all applicable federal, state, and local laws, regulations, rules and ordinance governing the handling, storage, generation, transportation and disposal of Hazardous Materials as the same affect or may affect the operation of Trustor's present business on or with respect to the Trust Estate.  In addition, Trustor shall not, without the prior written consent of Beneficiary, undertake any new business venture or operation on or affecting the Trust estate which now requires or may hereafter require compliance with and federal state or local law, regulation, rule or ordinance governing Hazardous Materials.  If requested by Beneficiary from time to time during the continuance of this Deed of Trust, Trustor shall submit to Beneficiary report, in form satisfactory to Beneficiary, certifying that the Trust Estate is not being used in any regulated activities directly or indirectly involving the use, handling, storage, generation, transportation and disposal of Hazardous Materials.  Beneficiary reserves the right, in Beneficiary's sole and absolute discretion, to retain, at Trustor's expense, an independent professional consultant to review any report prepared by Trustor and to conduct its own investigation of the Trust Estate.  Trustor hereby grants to Beneficiary, its agents, employees, consultants and contractors, the right to enter upon the Trust Estate and to perform such tests as are reasonably necessary to conduct such a review or investigation.

8.11    <u>Partial Releases</u>.  The Loan Agreement provides that upon satisfaction of certain conditions described in the Loan Agreement, portions of the Property may be released from the lien and encumbrance of this Deed of Trust.  Trustor shall have the right, upon the satisfaction of the conditions and

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

requirements set forth in Article II of the Loan Agreement, to require that Trustee shall execute and deliver to Trustor a deed of partial Reconveyance to the applicable property.

ARTICLE IX
CONDEMNATION AWARDS

Trustor shall promptly give notice to Beneficiary of any condemnation proceeding or any taking for public improvements. If the Trust Estate or any portion thereof should be taken or damaged by reason of any public improvement or condemnation proceeding, Beneficiary shall be entitled: (1) to receive all compensation, awards and other payments or relief for such taking or condemnation; (2) at Beneficiary's option and in Beneficiary's own name, to commence, appear in and prosecute in Beneficiary's own name any action or proceeding relating to such taking or condemnation; and (3) to make any compromise or settlement in connection with any such taking or condemnation. All such compensation, awards, damages, causes of action, proceeds or other payments shall be deemed part of the security for the Obligation and are hereby assigned to Beneficiary. Beneficiary, after deducting therefrom all costs and expenses (regardless of the particular nature thereof and whether incurred with or without suit or before or after judgment), including reasonable attorney fees incurred by Beneficiary in connection with such compensation, shall apply and an all moneys so received by Beneficiary to restore or repair damage to the remaining Trust Estate, provided that any proceeds not so applied may be applied by Beneficiary, at Beneficiary's option, to reduce the indebtedness secured by this Deed of Trust (whether or not then due). The application or release by beneficiary of any condemnation awards or other compensation shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice. Subject to the foregoing, Trustor shall execute and deliver to Beneficiary such further assignments of such compensation, awards, damages, causes of action, proceeds or other payments as Beneficiary may from time to time require.

ARTICLE X
ASSIGNMENT OF RENTS AND LEASES

10.1   Assignment.  As additional security for the Obligations secured by this Deed of Trust, Trustor hereby assigns, sells, transfers and conveys to Beneficiary during the continuance of this Deed of Trust, all contracts, leases, subleases and agreements relating to the sale, lease, sublease or use of any portion of the Trust Estate or the Property, together with all sales proceeds, rents, subrents, issues, royalties, income and profits of and from the Trust Estate. Until the occurrence of an Event of Default, Trustor may collect and use all such sales proceeds, rents, subrents, issues, royalties, income and profits, as they become due and payable, and may retain, use and enjoy the Trust Estate. Upon the occurrence and continuance of an Event of Default hereunder, Trustor's right to collect and use any of such proceeds shall cease, and beneficiary, shall have the right, with or without taking possession of the Trust Estate, and, either in person, by agent or through a court appointed receiver (Trustor hereby consents to the appointment of beneficiary or Beneficiary's designee as such receiver), to sue for or otherwise collect all such sales proceeds, rents, subrents, issues, royalties, income and profits, including those past due and unpaid. Any sums so collected, after the deduction of all costs and expenses of operation and collection (regardless of the particular nature thereof and whether incurred with or without suit or before or after judgment), including reasonable attorney fees, shall be applied toward the payment of the Obligations. Such right of collection and use of such proceeds by Beneficiary shall obtain both before and after the exercise of the power of sale provisions of this Deed of Trust, the foreclosure of this Deed of Trust and throughout any period of redemption. The rights granted under this Section 10.1 shall in no way be dependent upon and shall apply without regard to whether all or a portion of the Trust Estate is in danger of being lost, removed or materially injured, or whether the Trust Estate or any other security is adequate to discharge the Obligations secured by this Deed of Trust. Beneficiary's failure or discontinuance at any time to collect any of such proceeds shall not in any manner affect the right, power and authority of Beneficiary thereafter to collect the same. Nothing contained herein, nor Beneficiary's exercise of Beneficiary's right to collect such proceeds, shall be, or be construed to be, an affirmation by Beneficiary of any contractual interest, tenancy, lease, sublease, option or other interest in the Trust Estate or an assumption of liability under, or a subordination of the lien or

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

charge of this Deed of Trust to any contractual interest, tenancy, lease, sublease, option or other interest in the Trust Estate. All purchasers, tenants, lessees, sublessees and other persons who have any obligation to make any payment to Trustor in connection with the trust Estate or any potion thereof are hereby authorized and directed to pay the rents, subrents, issues, royalties, income, profits and other payments payable by them with respect to the Trust Estate, or any portion thereof directly to Beneficiary on the demand of Beneficiary. Beneficiary's receipt of such sales proceeds, rents, subrents, issues, royalties, income and profits shall be a good and sufficient discharge of the obligation of the purchaser, tenant, lessee, sublessee or other person concerned to make the payment connected with the amount so received by Beneficiary.

       10.2    No Waiver of Rights by Collection of Proceeds. The entering upon and taking possession of the Trust Estate or any portion of the Trust Estate or the collection of sale proceeds, rents, subrents, issues, royalties, income, profits, proceeds of fire and other insurance policies, or compensation or awards for any taking or damaging of the Trust Estate, or the application or release thereof as aforesaid, shall not cure or waive any Event of Default or notice of default hereunder, shall not invalidate any act done pursuant to such notice of default, and shall not operate to postpone or suspend the obligation to make, or have the effect of altering the size of, any scheduled installments provided for in any of the Obligations secured by this Deed of Trust.

       10.3    Indemnification. Trustor shall indemnify and hold Beneficiary harmless from and against all claims, demands, judgments, liabilities, actions, costs and fees (including reasonable attorney fees and costs) arising from or related to receipt by Beneficiary of the sale proceeds, rents, subrents, issues, royalties, income and profits from the Trust Estate or any portion of the Trust Estate, except negligent willful acts of Beneficiary.

ARTICLE XI
EVENTS OF DEFAULT AND REMEDIES

       11.1    Events of Default. The occurrence and continuance of any one of the following shall constitute an Event of Default under this Deed of Trust:

       (a)    Failure by Trustor to observe and perform any term, covenant or condition to be observed or performed by Trustor contained in this Deed of Trust, the Loan Agreement, the Note or any of the other Loan Documents.

       (b)    Any representation or warranty of Trustor contained in this Deed of Trust, the Loan Agreement, the Note or any of the other Loan Documents was untrue when made.

       (c)    A default by Trustor under the terms of any other promissory note, deed of trust, security agreement, undertaking or arrangement between Trustor and Beneficiary now in existence or hereafter arising.

       11.2    Notice. Unless otherwise expressly provided by the terms of this Deed of Trust or the other Loan Documents, if an Event of Default shall occur, Beneficiary shall give written notice of such occurrence to Trustor as provided in the Loan Agreement.

       11.3    Division of Trust Estate. Upon the occurrence and continuance of an Event of Default and if there are Hazardous Materials then present on the Property, Beneficiary, at Beneficiary's election and without any obligation to do so, may divide the Trust Estate into any number of parcels to facilitate the sale of the Trust Estate at a foreclosure sale. In connection therewith, Beneficiary may: (a) enter upon the Trust Estate and conduct or cause to be conducted inspections and surveys of the Trust Estate; (b) divide the Trust Estate in such manner as to segregate any Hazardous Materials into one or more distinct parcels; and (c) elect to sell at foreclosure sale only those portions of the Trust Estate that are not contaminated by

EXHIBIT "A" TO
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 14

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

or do not contain Hazardous Materials.  Trustor hereby consents to such division and sale of the Trust Estate.

11.4    <u>Acceleration Notice</u>.  Upon the occurrence and continuance of an Event of Default, Beneficiary shall have the option, in addition to any other remedy Beneficiary may have under the Note, to declare by notice to Trustor all sums secured by this Deed of Trust immediately due and payable and elect to have the Trust Estate sold in the manner provided herein.  In the event Beneficiary elects to sell the Trust Estate, Beneficiary shall execute or cause Trustee to execute a written notice of default, and election to cause the Trust Estate to be sold to satisfy the Obligations.  Such notice shall be filed for record in Utah County, Utah.

11.5    <u>Exercise of Power of Sale</u>.  After the lapse of such time as may then be required by law following recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, except as provided by law, shall sell the Trust Estate on the date and at the time and place designated in the notice of sale, either as a whole or in separate parcels, and in such order as Beneficiary may determine (but subject to any statutory right to Trustor to direct the order in which the Property, if consisting of several known lots or parcels, shall be sold), at public auction to the highest bidder, the purchase price payable in lawful money of the United States at the time of Sale.  The person conducting the sale may, for any cause deemed expedient, postpone the sale from time to time until it shall be completed.  In every such case, notice or postponement shall be given by public declaration thereof by such person at the time and place last appointed for the sale or as otherwise provided by law.  Trustee shall execute and deliver to the purchaser a Trustee's Deed conveying the property so sold, but witout any covenant or warranty, expressed or implied.  The recitals in the Trustee's Deed of any matters or facts relating to the exercise of the power of sale and the sale of the Trust Estate shall be conclusive proof of the truthfulness thereof.  Any person, including Beneficiary, may bid at the sale.  Trustee shall apply the proceeds of the sale to payment of:  (a) the costs and expenses of exercising the power of sale and of the sale, including the payment of the Trustee's fees and attorney fees and costs; (b) all sums expended or advanced by Beneficiary in conjunction with any provisions of this Deed of Trust, not then repaid, with accrued interest thereon from the date of expenditure, at the default rate of interest provided in the Loan Agreement; (c) all sums then secured by this Deed of Trust, including interest and principal on the Note; and (d) the remainder, if any, to the person or persons legally entitled thereto, or Trustee, in Trustee's discretion, may deposit the balance of such proceeds with the Clerk of the District Court of Utah County, Utah.

11.6    *Reserved.*

11.7    <u>Foreclosure as a Mortgage</u>.  If an Event of Default occurs and continues hereunder, Beneficiary shall have the option to foreclose this Deed of Trust in the manner provided by law for the foreclosure of mortgages on real property, and Beneficiary shall be entitled to recover in such proceedings all costs and expenses incident thereto, including reasonable attorney fees and costs, in such amounts as shall be fixed by the Court.

11.8    <u>Receiver</u>.  If an Event of Default occurs and continues, Beneficiary, as a matter of right and without regard to the then value of the Trust Estate or the interest of Trustor therein, shall have the right upon notice to Trustor to apply to any court having jurisdiction over the subject matter to appoint a receiver or receivers of the Trust Estate.  Any such receiver or receivers shall have all the usual powers and duties of a receiver and shall continue as such and may exercise all such powers until completion of the sale of the Trust Estate or the foreclosure proceeding, unless the receivership is sooner terminated.

11.9    <u>No Remedy Exclusive</u>.  No remedy conferred upon or reserved to Beneficiary under this Deed of Trust shall be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Deed of Trust, the Loan Agreement, the Note or the other Loan Documents, or now or hereafter existing at law or in equity or by statute.  No delay or failure to exercise any right or power accruing upon any Event of Default

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient.

     11.10   <u>Cross Default</u>.  The occurrence and continuance of an Event of Default under this Deed of Trust, the Note, the Loan Agreement, any other Loan Document, or any other agreement or arrangement between Trustor and Beneficiary now existing or entered into hereafter, shall constitute a default under all such documents, including, without limitation, this Deed of Trust, the Note, the Loan Agreement, and other Loan Documents as well as any other such agreement or arrangement.

ARTICLE XII
<u>MISCELLANEOUS PROVISIONS</u>

     12.1   <u>Notices</u>.  Except as otherwise provide in this Deed of Trust or in any other Loan Document, whenever Beneficiary or Trustor desire to give or serve any notice, demand, request or other communication with respect to this Deed of Trust or any other Loan Document, each such notice shall be in writing and shall be effective only if the notice is delivered by personal service, by nationally recognized overnight courier, by facsimile, or by mail, postage prepaid, addressed as follows:

|  |  |
|---|---|
| If to Trustor: | The Leed Corporation<br>Lon Montgomery, President<br>P.O. Box 2292<br>Twin Falls, ID 83303-2292 |
| With a copy to: | Robert J. Maynes<br>Attorney at Law<br>P.O. Box 3005<br>Idaho Falls, ID 83403 |
| If to Beneficiary, to: | Equity Trust Company custodian FBO Neal C. Hocklander IRA<br>_____<br>_____<br>_____<br>_____ |
| If to Trustee, to: | Brian T. Tucker<br>Attorney at Law<br>490 Memorial Drive<br>Idaho Falls, ID 83401 |

Any notice delivered personally or by courier shall be deemed to have been given when delivered.  Any notice sent by facsimile shall be presumed to have been received on the date transmitted.  Any notice sent by mail shall be presumed to have been received five (5) business days after deposit in the United States mail, with postage prepaid and properly addressed.  Any party may change its address by giving notice to the other party of its new address in the manner provided above.

     12.2   <u>Severability</u>.  If any provision of this Deed of Trust shall be held or deemed to be or shall, in fact, be illegal, inoperative or unenforceable, the same shall not affect any other provision or provisions contained in this Deed of Trust or render the same invalid, inoperative or unenforceable to any extent whatsoever.

     12.3   <u>Amendments, Changes and Modifications</u>.  This Deed of Trust may not be amended, changed, modified, altered or terminated without the prior written consent of both Beneficiary and Trustor.

EXHIBIT "A" TO
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 16

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

12.4 <u>Governing Law</u>.  This Deed of Trust shall be governed exclusively by and construed in accordance with the applicable laws of the State of Idaho, without giving effect to principles of conflicts of laws.

12.5 <u>Interpretation</u>.  Whenever the context shall require, the plural shall include the singular, the whole shall include any part thereof, and any gender shall include both other genders.  The article and section headings contained in this Deed of Trust are for purposes of reference only and shall not limit, expand or otherwise affect the construction of any provisions hereof.

12.6 <u>Binding Effect</u>.  This deed of Trust shall be binding upon shall inure to the benefit of the respective successors and assigns of Beneficiary and Trustor; however, it shall only be effective upon approval by the United States Bankruptcy Court for the District of Idaho.

12.7 <u>Waivers</u>.  Beneficiary's failure at any time or times hereafter to require strict performance by Trustor o any of the undertakings, agreements or covenants contained in this Deed of Trust shall not waive, affect or diminish any right of Beneficiary hereunder to demand strict compliance and performance therewith.  Any waiver by Beneficiary of any Event of Default under this Deed of Trust shall not waive or affect any Event of Default hereunder, whether such Event of Default is prior to subsequent thereto and whether of the same or a different type.  None of the undertakings, agreements or covenants of Trustor under this Deed of Trust shall be deemed to have been waived by Beneficiary, unless such waiver is evidenced by an instrument in writing signed by a manager of Beneficiary and directed to Trustor specifying such waiver.

12.8 <u>Access</u>.  Beneficiary, or Beneficiary's authorized agents and representatives, is hereby authorized and shall have the right, at all reasonable times during the existence of this Deed of Trust and without prior written notice to Trustor, to enter upon the Trust Estate or any portion of the Trust Estate for the purpose of inspecting the Trust Estate or for the purpose of performing any of the acts that Beneficiary is authorized under this Deed of Trust to perform.

12.9 <u>Successor Trustee</u>.  Beneficiary may appoint a successor trustee at any time by filing for record in the office of the County Recorder of each county in which the Trust Estate or some part hereof is situated a substitution of trustee.  From the time the substitution is filed of record, the new Trustee shall succeed to all the powers, duties, authority and title of the Trustee named herein or of any successor trustee. Each such substitution shall be executed and acknowledged, and notice thereof shall be given and proof thereof made in the manner provided by law.

12.10 <u>Acceptance of Trust</u>.  Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or any action or proceeding in which Trustor, Beneficiary, or Trustee shall be party, unless brought by Trustee.

12.11 <u>Request for Notice of Default</u>.  Trustor requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Trustor at the address set forth in Section 12.1 of this Deed of Trust.

12.12 <u>Counterparts</u>.  This Deed of Trust may be executed in any number of counterparts, each of which when so executed and delivered, shall be deemed an original, but all such counterparts taken together shall constitute only one instrument.

DATED effective as of the date first above written.

TRUSTOR:

The Leed Corporation, an Idaho corporation

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

By: _____

Its:    President


STATE OF IDAHO                )
                              :*SS*
County of _____         )


    The foregoing instrument was acknowledged before me this _____ of May, 2011, by Lon E. Montgomery, who is the President of The Leed Corporation, an Idaho corporation.


_____
NOTARY PUBLIC
Residing at:
Commission Expires:


EXHIBIT "A" TO
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 18

**Secured Promissory Note and Line of Credit Agreement**
(*Loan #2*)

# EXHIBIT "A"
## Legal Descriptions
### [15 OLD SCHOOL LOT DESCPRIPTIONS TO BE INSERTED BY TITLE COMPANY]

SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement") is made May __, 2011, among Steven M. Notinger, Chapter 7 Trustee ("Bankruptcy Trustee") of the bankruptcy estates of Financial Resources Mortgage, Inc., C L & M, Inc., Greatland Project Development, Inc., SGSB Realty Trust, RMBZ 2009 Realty Trust, JP 2009 Realty Trust, D & M 2009 Realty Trust, MGZ 2009 Realty Trust, MSCRN 2009 Realty Trust, WHRS2009 Realty Trust, and BZ 2009 Realty Trust and many other debtors jointly administered in Case No. 09-14565-JMD (collectively, "Bankruptcy Estates"), and Leed Corporation and Lon Montgomery (collectively, "Leed").   The Trustee and Leed are sometimes referred to herein collectively as "the Parties."

<u>Background</u>

A.      The Bankruptcy Estates are the title holders of various loans to Leed secured by mortgagee interests in real property or other collateral.  Said loans and security interests are memorialized in certain Commercial Construction Loan Agreements, Promissory Notes, Deeds of Trust, Collateral Assignment of Rents and Leases, and addendums related to the foregoing, between the Parties.

B.      On November 20, 2009 (the "Petition Date") involuntary petitions for relief, pursuant to Chapter 7 of the Bankruptcy Code, were filed against C L & M, Inc. ("CLM") and Financial Resources Mortgage, Inc. ("FRM") by three unsecured creditors with the assistance of the New Hampshire Attorney General's Office.  The Bankruptcy Trustee was appointed as chapter 7 trustee for the CLM and FRM bankruptcy estates, and ultimately for approximately 100 related corporate and trust entities.  FRM and CLM operated a large fraudulent scheme that used a mortgage brokerage business to steal millions of dollars from investors.  The Bankruptcy Trustee filed a complaint in the U.S. Bankruptcy Court for the District of New Hampshire alleging that all loans arranged by CLM and/or FRM were property of the Bankruptcy Estates and seeking an injunction against any collection activities by any party set up as a lender by CLM and/or FRM.  The Court issued a preliminary injunction on December 22, 2009, to preserve the status quo, in <u>Notinger v. Tebbe <i>et al.</i></u>, Adv. Pro. No. 09-1184-JMD (the "Adversary Proceeding"). The Court extended the preliminary injunction by an Order dated April 1, 2010 and again by an Order dated June ____, 2010 (the "Injunction").

C.      CLM arranged and funded approximately 15 loans to Leed Corporation (the "Leed Loans").  CLM set up the following as the lenders on the Leed Loans: BFH 2009 Realty Trust, BZ 2009 Realty Trust, D&M 2009 Realty Trust, Greatland Project Development, Inc., JP 2009 Realty Trust, MGZ 2009 Realty Trust, MSCRN 2009 Realty Trust, RMBZ 2009 Realty Trust, SBSB 2009 Realty Trust, WHRS 2009 Realty Trust, Richard M. Frucci, Louis Gargasz, Richard N. Krauth, Equity Trust Co., Custodian FBO Bruce A. Quimby IRA, Spruce Mountain Associates, LLC, Equity Trust Co., Custodian FBO Raymond P. Kleopper II IRA, Pensco Trust Co., Custodian FBO David L. DeVeber IRA, NTC and Company, FBO Robert T. Keating IRA, Equity Trust Co., Custodian FBO Andrea S. Quimby, and Equity Trust Co., Custodian FBO Bruce A. Quimby IRA (collectively, the "Purported Leed Lenders").  The Leed Loans were approximately 15 construction loans for the construction of houses on approximately 15 lots in a subdivision in Shoshone, Idaho.  CLM established a contract with each of the Purported Leed Lenders providing that CLM was the mortgage servicer with the power to represent each Purported Leed Lender with respect to each Leed Loan.

C.1.    Of the 15 loans to Leed Corporation, the loans of Louis Gargasz, Richard M. Frucci Trust, Richard N. Krauth and Spruce Mountain Associates, LLC Loans (the "Enjoined Loans") have not yet been adjudged to be part of the Bankruptcy Estates' assets pursuant to 11 U.S.C. § 541; however, the Enjoined Loans remain subject to the Injunction and corresponding adversary proceeding.

D.      Although CLM was purportedly only the mortgage servicer on the Leed Loans, CLM was in reality the lender on the Leed Loans.  The Purported Leed Lenders paid their funds to CLM in advance of any of the Leed Loans being closed or funded.  CLM commingled all investor funds into one operating account (the "Commingled Account").  The limited funds in the Commingled Account were $10 million to

$20 million less than would have been necessary to pay all of CLM's obligations related to all of its loans. When the Leed Loans closed, CLM funded only closing costs and purported reserved interest. Then CLM funded the Leed Loans over a period of months. As a result of the shortage of funds in the Commingled Account, the Leed Loans were actually funded with the funds of later investors in CLM. CLM used the funds of the Purported Leed Lenders to fund loans for earlier CLM investors.

        E.      Each of the Leed Loans was in the face amount of $180,000, and there being 15 separate construction loan agreements, notes and mortgages.

        F.      CLM extended between approximately $800,000 and $1.3 million in credit to the Leed Corporation, but did not extend the full amount called for under any of the 15 construction loan agreements.

        G.      Leed alleges that as a result of the failure of the Purported Leed Lenders to extend all of the funds required under the 15 construction loan agreements, that it was not able to complete the homes in the Shoshone, Idaho subdivision. Leed alleges that the Purported Leed Lenders are personally liable to Leed on various lender liability claims. The Purported Leed Lenders deny such claims.

        F.      On April 29, 2010 Leed filed a chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the District of Idaho, Case No. 10-40743 JDP and further asserts claims under chapter 5 of the Bankruptcy Code for the benefit of the Leed Bankruptcy Estate against CLM and the Purported Leed Lenders, including, by way of illustration, claims under 11 U.S.C. § 510(c) and § 544.

    H.   The Parties wish to settle all claims between and among them, and each buy their peace.

    NOW THEREFORE, intending to be legally bound, the Bankruptcy Trustee and Leed agree as follows:

    1.   <u>Court Approval.</u>        The Bankruptcy Trustee shall submit this Agreement to the U.S. Bankruptcy Court for the District of New Hampshire for approval and Leed shall submit this Agreement for Bankruptcy Court approval in the U.S. Bankruptcy Court for the District of Idaho and each shall diligently pursue such approval, and all Parties shall support such approval. If either Bankruptcy Court does not approve this Agreement, then this Agreement shall be void and have no further effect.

    2.   <u>Settlement Payment.</u>      In exchange for the assignment of all rights, title and interest in the Leed Loans and security interests arising thereunder, including but not limited to all rights arising under that Agreement for Subordination on Terms and Conditions, recorded as Instrument No. 186510 on the records of Lincoln County, Idaho, and any other subordination agreements, Leed shall pay the Bankruptcy Trustee $6,666.67 for each of the Leed Loans for a total settlement payment of $100,000 in immediately available funds in United States dollars. The Settlement Payment required in this paragraph shall be made within 15 days after the Orders of both the Bankruptcy Courts for the District of New Hampshire and the District of Idaho approving this Settlement Agreement and granting the motion to approve compromise and settlement, and the Order of the Bankruptcy Court for the District of Idaho granting approval of Leed's motion for approval of post-petition financing become final and the loan approved thereby is funded and loan proceeds received by Leed. The Parties understand and agree that the settlement payment shall constitute a portion of the loan proceeds from the post-petition loan to be approved by the U.S. Bankruptcy Court for the District of Idaho. Such funds shall be paid to Steven M. Notinger, Trustee for the Estate of C L & M, Inc., who shall hold them pending further order of the U.S. Bankruptcy Court for the District of New Hampshire. With regards to the Enjoined Loans, the sum of $26,666.68 ($6,666.67 multiplied by 4) shall not be otherwise disbursed, dissipated or exhausted in any fashion by Leed to the Bankruptcy Trustee until such time as he can provide either the consent and ratification of this settlement agreement by the lenders of the Enjoined Loans or an Order of the U.S. Bankruptcy Court for the District of New Hampshire determining that the Enjoined Loans are property of the Bankruptcy Estates and transferable to Leed pursuant to this agreement. In the event the Bankruptcy Trustee is unable to obtain the consent/ratification or the requisite determination by the U.S. Bankruptcy Court for the District of New Hampshire in a timely

fashion, but in no event later than 6 months from the date of final approval of this agreement by the respective Idaho and New Hampshire Bankruptcy Courts, then the remaining escrow balance of the $26,666.68 shall be forfeit to Leed and Leed may take such further steps at it determines in its discretion as and against the Enjoined Lenders..

3.    <u>No Releases of Tortfeasors.</u>        Except for the release of the mutual releases of the Parties, this Agreement does not release, nor covenant not to sue, any person or entity, including, but not limited to, Scott Farah, Susan Farah, Donald Dodge, any lawyer, any law firm, any accountant, any accounting firm, any appraiser, any appraisal firm, any debtor, or any joint tortfeasor.  To the extent any of the Enjoined Loans are not determined to comprise part of the Bankruptcy Estates, such releases contained herein shall not extend to the lenders of the Enjoined Loans.

4.    <u>Release of the Lenders.</u>     Subject to Court approval, Leed Corporation and Lon Montgomery, each on behalf of itself or himself, and its and his respective successors and assigns, shall be deemed to have fully and forever released, remised, acquitted and discharged each of the Lenders, including but not limited to Steven M. Notinger, Chapter 7 Trustee of the bankruptcy estates of FRM, CLM, Greatland Project Development, Inc., SGSB Realty Trust, RMBZ 2009 Realty Trust, JP 2009 Realty Trust, D & M 2009 Realty Trust, MGZ 2009 Realty Trust, MSCRN 2009 Realty Trust, WHRS2009 Realty Trust, BZ 2009 Realty Trust, Richard N. Krauth, Equity Trust Co., Custodian FBO Bruce A. Quimby IRA, Spruce Mountain Associates, LLC, Equity Trust Co., Custodian FBO Raymond P. Kleopper II IRA, Pensco Trust Co., Custodian FBO David L. DeVeber IRA, NTC and Company, FBO Robert T. Keating IRA, Equity Trust Co., Custodian FBO Andrea S. Quimby, and Equity Trust Co., Custodian FBO Bruce A. Quimby IRA, joint and severally, and any of their related persons, corporations or other entities, including corporate parents, subsidiaries, affiliates, shareholders, officers, directors, partners, employees, agents, servants, representatives, attorneys and their predecessors, successors, heirs and assigns of and from any and all actions, causes of action, claims and/or liabilities, of each and every kind, nature and description whatsoever related to the Loans, including but not limited to lender liability claims, including, without limitation, those that are known or unknown, matured or unmatured, liquidated or unliquidated, contingent or non-contingent, asserted or non-asserted, in tort, contract, law, or equity, all claw back claims, and all claims under Chapter 5 of  Title 11, U.S.C.  Leed reserves all rights to assert any and all claims related to the loans made by Louis Gargasz, Richard M. Frucci Trust, Richard N. Krauth and Spruce Mountain Associates (i.e. the "Enjoined Loans") to the extent that such persons or entities do not agree or consent to this Agreement, to the extent the Bankruptcy Trustee may ultimately be unsuccessful, either in the Adversary Proceeding or in obtaining the consent of such parties to this Settlement Agreement in a timely fashion, but in no event less than six (6) months from the date of execution hereof.

5.    <u>Release of Leed.</u>  Subject to Court approval, the Bankruptcy Trustee, each of the Lenders, each on behalf of itself or himself, and its and his respective successors and assigns, shall be deemed to have fully and forever released, remised, acquitted and discharged Leed Corporation and Lon Montgomery, joint and severally, and any of their related persons, corporations or other entities, including corporate parents, subsidiaries, affiliates, shareholders, officers, directors, partners, employees, agents, servants, representatives, attorneys and their predecessors, successors, heirs and assigns of and from any and all actions, causes of action, claims and/or liabilities, of each and every kind, nature and description whatsoever related to the Loans, including but not limited to claims for payment of funds loaned, including, without limitation, those that are known or unknown, matured or unmatured, liquidated or unliquidated, contingent or non-contingent, asserted or non-asserted, in tort, contract, law, or equity, all claw back claims, and all claims under Chapter 5 of  Title 11, U.S.C.  CLM shall execute such documentation as Leed deems reasonably necessary to transfer and assign title to the Leed Loans and liens related thereto to Leed in furtherance of this agreement.

6.    <u>Further Assurances and Forms.</u>     All Parties hereto agree to execute any and all documents, and to do and perform any and all acts and things, upon request by the other, reasonably necessary or proper, to effectuate or further evidence the terms and provisions of this Settlement Agreement.  The Bankruptcy Trustee will execute said documents on behalf of each of the Lenders.

EXHIBIT "B" TO
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 3

7.  <u>Expenses.</u>        All Parties shall each bear and be responsible for their own costs and attorney's fees incurred in connection with these matters.

8.  <u>Counterparts.</u>        This Settlement Agreement may be executed in one or more counterparts, and delivered by facsimile or e-mail; each counterpart is an original; and all together comprise one agreement.

9.  <u>Settlement Only.</u> This Settlement Agreement is executed in settlement and compromise of disputed claims and does not admit any wrongdoing or liability of any kind.

10  <u>Severability.</u>        If for any reason any provision of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement nevertheless shall be construed, performed, and enforced as if the invalidated or unenforceable provision had not been included in the text of the agreement.

11.  <u>Construction.</u>        Each party acknowledges (i) that it has participated in the negotiation of this Agreement, and no provision of this Agreement shall be construed against or interpreted to the disadvantage of any  hereto or thereto by any court or other governmental or judicial authority by reason of such  having or being deemed to have structured, dictated or drafted such provision; (ii) that it at all times has had access to an attorney in the negotiation of the terms of and in the preparation and execution of this Agreement, and it has had the opportunity to review, analyze, and discuss with its counsel this Agreement, and the underlying factual matters relevant to this Agreement for a sufficient period of time prior to the execution and delivery hereof and thereof; (iii) that all of the terms of this Agreement were negotiated at arm's-length; (iv) that this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the others; and (v) that the execution and delivery of this Agreement is its free and voluntary act, that the persons executing this Agreement are authorized to do so by the Parties to this Agreement.

12.  <u>Entire Agreement.</u>        This Agreement contains the entire agreement relating to the subject matter hereof, and supersedes all prior agreements, understandings, negotiations, and discussions, oral or written, relating to such subject matter.    There are no warranties, representations, agreements, arrangements, or understandings, oral or written, relating to the subject matter hereof that are not fully expressed or provided for herein and the Parties are not bound by or liable for any alleged warranty, representation, agreement, arrangement, or understanding not so set forth.  There is no agreement about the substantive consolidation of the Debtors or the Bankruptcy Estates.

13.  <u>Benefit, Binding Effect.</u>    This Agreement is for the sole benefit of the Parties hereto and no other entity shall accrue any rights, benefits or obligations by reason hereof.  This Agreement shall be binding upon the Bankruptcy Trustee, the Bankruptcy Estates (in any Chapter), and each Party, including their respective heirs, successors, assigns, agents, employees, legal representatives, and all other persons or entities acting on their behalf.  Each party shall bear its own costs and expenses.  This Agreement shall not otherwise affect claims that any Lender may have against any other Lender.

14.  <u>Jury Trial Waiver.</u>        THE PARTIES WAIVE TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER (WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE) IN ANY WAY ARISING OUT OF, RELATED TO, THIS AGREEMENT OR THE RELATIONSHIP ESTABLISHED THEREUNDER.    EACH ACKNOWLEDGES AND AGREES THAT THIS PROVISION IS A SPECIFIC AND MATERIAL ASPECT OF THE AGREEMENT BETWEEN THE PARTIES AND THAT THEY WOULD NOT ENTER INTO THIS TRANSACTION IF THIS PROVISION WERE NOT PART OF THEIR AGREEMENT.

15.  <u>Dispute Resolution.</u>        Given that the Commercial Loan Agreements, Promissory Notes and Deeds of Trust expressly provided that Idaho Law governs the agreements, this agreement shall be governed by Idaho Law, as well. The U.S. Bankruptcy Court for the District of Idaho shall retain sole and exclusive jurisdiction to determine all disputes arising from, or related to, this Settlement Agreement.

IN WITNESS WHEREOF, the parties have executed this Settlement Agreement dated as of May _____, 2011.

_____
Steven M. Notinger, Bankruptcy Trustee of the bankruptcy estates of Financial Resources Mortgage, Inc, C L & M, Inc., Greatland Project Development, Inc., SGSB Realty Trust, RMBZ 2009 Realty Trust, JP 2009 Realty Trust, D & M 2009 Realty Trust, MGZ 2009 Realty Trust, MSCRN 2009 Realty Trust, WHRS2009 Realty Trust, and BZ 2009 Realty Trust and many other debtors jointly administered in Case No. 09-14565-JMD

_____
Lon Montgomery

THE      LEED     CORPORATION,      Debtor-in-possession, Case No. 10-40743 JDP

_____
By: Lon E. Montgomery
Title: President

AGREED AND ACCEPTED,

Date:  May __, 2011

Date:  May __, 2011

_____
Louis Gargasz

_____
Richard M. Frucci Trust

Date:  May __, 2011

Date:  May __, 2011

_____
Richard N. Krauth

_____
Spruce Mountain Associates, LLC

EXHIBIT "B" TO
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 5

EXHIBIT "C" TO
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
June 23, 2011
Page 1

ROBERT J. MAYNES, ISB No. 6905
*Attorney at Law*
P. O. Box 3005
Idaho Falls, ID 83405
Telephone: (208) 552-6442
Facsimile: (208) 522-1334
Email: mayneslaw@hotmail.com

*Debtor's counsel*

U.S. COURTS

JUN 0 8 2011

Rcvd_____Filed_____Time 9:39 AM
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 10-40743 JDP |
| LEED CORPORATION (THE), | Chapter 11 |
| Debtor. | |

## STIPULATION MODIFYING FIRST AMENDED PLAN AND FOR RELIEF FROM STAY

COME NOW The Leed Corporation, the Debtor-in-possession ("Leed"), by and through its attorney of record, Robert J. Maynes Esq., David and Martha "Jody" Orr (the "Orrs"), by and through their attorneys of record, Bruce H. Orr, Esq. and Monte C. Gray, Esq., (collectively the "Parties") and hereby enter into the following Stipulation Modifying First Amended Plan and for Relief from Stay as follows:

### RECITALS

WHEREAS on or about June 21, 2007, the Parties entered into an Agreement for the sale of certain real property, commonly known as "The Old School Project;"

WHEREAS the Parties' Agreement provided for seller financing of the purchase price, in part, which was secured by a corresponding Promissory Note and Deed of Trust for the benefit of the Orrs in the face amount of $540,000.00;

WHEREAS the Deed of Trust was recorded on or about November 6, 2007, as Instrument No. 183988 in the records of Lincoln County, Idaho;

WHEREAS on or about April 6, 2009 the Orrs signed a document titled Subordination Agreement as a part of the Debtor's obtaining financing from CL&M and related lenders;

WHEREAS on or about April 30, 2009, the Debtor executed that certain Deed of Trust, whereby the Orrs were given a lien in second position on the Riverview Subdivision.

WHEREAS the Parties have disagreements with respect to numerous issues including, but not limited to, the enforceability and interpretation of the Subordination Agreement;

WHEREAS in response to the Debtor's previous Motion to Approve Compromise with the NH Trustee and Motion for Authority to Incur Secured Debt, the Orrs filed objections and the Parties were involved in a time consuming evidentiary hearing;

WHEREAS the Orrs currently assert an interest in the Riverview Subdivision and twelve (12) lots of the Old School Project; and

WHEREAS the Parties wish to avoid the time and expense of litigation with regards to the anticipated Motions to Approve Compromise and for Authority to Incur Secured Debtor by the Debtor, and with respect to confirmation issues, as related to the Old School Project;

**THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:**

1. *Article Four – Distributions—Treatment of Claims and Interests, Paragraph 2 – Secured Claims, Subparagraph C. Class SC3* (commencing at page 17) of the First Amended Chapter 11 Plan of Reorganization dated May 27, 2011 (the "Plan") shall be modified as follows:

C. Class SC3: Class SC3 consists of the allowed secured claim of David and Martha Orr. Members of this class have liens in two subdivisions:

The Old School Lots and the Riverview Subdivision. The secured claim held by members of this class shall be paid, and the lien(s) released, as follows:

Upon Court approval of the loan(s) described *supra* and attached to the Plan as Exhibit A, and in exchange for the release of all of the Orrs' rights, title and interest in the Old School Project and Riverview Subdivision and security interests arising thereunder, said releasing being conditional upon receipt of all payments set forth in this Agreement (i.e. $240,000.00), including but not limited to all rights arising under that Agreement for Subordination on Terms and Conditions, recorded as Instrument No. 186510 on the records of Lincoln County, Idaho, and any other subordination agreements, Leed shall pay the Orrs $10,000.00 for each of the remaining twelve (12) remaining Old School Project lots in which the Orrs assert an interest, for a total settlement payment of ONE HUNDRED TWENTY THOUSAND DOLLARS AND NO CENTS ($120,000.00) in immediately available funds in United States dollars. The Settlement Payment required in this paragraph shall be made upon closing of the above referenced loan. The Parties understand and agree that the lien release payment shall constitute a portion of the loan proceeds from the post-petition loan to be approved by the U.S. Bankruptcy Court for the District of Idaho.

In addition to the Settlement Payment referenced above, the Orrs shall also receive from the Debtor's portion of the gross sale proceeds of each of the twelve (12) Old School Project lots an additional TEN THOUSAND AND NO CENTS ($10,000.00) for an additional $120,000.00 (collectively the "Lot Payments"), without interest, payable *pro rata* as a part of the closing of each such sale. Orrs'

interest under this Plan provision shall be junior to the post-petition loans attached to the Plan as Exhibit "A"; however, Orrs shall retain a lien senior to all other creditors (excepting the post-petition lender) on each of the respective lots for the pro rata portion of the Lot Payments. Within 30 calendar days of receipt of the Settlement Payment and all of the Lot Payments, the Orrs shall release their interest in the Riverview Subdivision.

The Orrs shall be permitted to participate as an unsecured creditor in the balance of their obligation exceeding $240,000.00 as a member of class UC2.

Further Assurances and Forms: The Debtor and the Orrs hereto agree to execute any and all documents, and to do and perform any and all acts and things, upon request by the other, reasonably necessary or proper, to effectuate or further evidence the terms and provisions of this Stipulation.

Expenses. All Parties shall each bear and be responsible for their own costs and attorney's fees incurred in connection with these matters.

2.      The Debtor hereby agrees that in consideration for the terms and conditions stated herein that the Orrs are hereby granted relief from the stay effective September 1, 2011, unless the Debtor pays the Orrs $120,000 on or before September 1, 2011, and may reinstate the stay if there is such a payment on or before September 30,, 2011. The Orrs shall be granted relief from the automatic stay to foreclose their deeds of trust and otherwise enforce their rights and remedies against a co-debtor and all guarantors of the obligations, and the Debtor waives any objection to such a request. In said event, or upon any breach of the terms of the confirmed plan as to the Orrs, the Orrs may proceed to foreclosure on the property securing their obligation for the amounts owing on their original obligation minus any payments received, and the Debtor

waives any defenses to foreclosure by the Orrs, including those related to the subordination agreement, and specifically waives any rights it might have as an "assignee" of the W H Trustee or those who may have benefitted from the subordination agreement.

3. Counterparts. This Agreement may be executed in one or more counterparts, and delivered by facsimile or e-mail; each counterpart is an original; and all together comprise one agreement.

4. Severability. If for any reason any provision of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement nevertheless shall be construed, performed, and enforced as if the invalidated or unenforceable provision had not been included in the text of the agreement.

5. Construction. Each party acknowledges (i) that it has participated in the negotiation of this Agreement, and no provision of this Agreement shall be construed against or interpreted to the disadvantage of any hereto or thereto by any court or other governmental or judicial authority by reason of such having or being deemed to have structured, dictated or drafted such provision; (ii) that it at all times has had access to an attorney in the negotiation of the terms of and in the preparation and execution of this Agreement, and it has had the opportunity to review, analyze, and discuss with its counsel this Agreement, and the underlying factual matters relevant to this Agreement for a sufficient period of time prior to the execution and delivery hereof and thereof; (iii) that all of the terms of this Agreement were negotiated at arm's-length; (iv) that this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the others; and (v) that the execution and delivery of this Agreement is its free and voluntary act, that the persons executing this Agreement are authorized to do so by the Parties to this Agreement.

6.    <u>Entire Agreement.</u>    This Agreement contains the entire agreement relating to the subject matter hereof, and supersedes all prior agreements, understandings, negotiations, and discussions, oral or written, relating to such subject matter.    There are no warranties, representations, agreements, arrangements, or understandings, oral or written, relating to the subject matter hereof that are not fully expressed or provided for herein and the Parties are not bound by or liable for any alleged warranty, representation, agreement, arrangement, or understanding not so set forth.

7.    <u>Benefit, Binding Effect.</u>    This Agreement is for the sole benefit of the Parties hereto and no other entity shall accrue any rights, benefits or obligations by reason hereof.  This Agreement shall be binding upon each Party, including their respective heirs, successors, assigns, agents, employees, legal representatives, and all other persons or entities acting on their behalf. Each party shall bear its own costs and expenses.

8.   <u>Court Approval.</u>      This Agreement is contingent on approval by the United

States Bankruptcy Court for the District of Idaho.  In the event the Court fails to approve this

Agreement, this Agreement shall be void and of no force or effect.

SO STIPULATED:

June 8, 2011                                                           June 8, 2011

_____                  _____
Monte C. Gray, Esq. or Bruce H. Orr, Esq.         Robert J. Maynes, Esq.
Counsel for David & Martha Orr                    Debtor's counsel

ACCELERATED
LENDING GROUP INC.

Your Project and Success
is Our Business

Lon Montgomery

LEED Corporation

May 13th, 2011

RE: Contracting Project

Dear Mr. Montgomery,


    We are pleased to issue our Letter of Intent (LOI) with respect to a loan in the amount of **$6,500,000.00** ("Loan"). We ask that you authorize and contract Accelerated Lending Group, Inc. (ALGI) to direct the due diligence necessary to obtain a commitment for your loan request. Based on the information submitted by you to date, ALGI and/or its affiliates has reviewed your file and enclosed is an outline of the loan program we are proposing:

**Purpose of Loan:**    Joint Venture

**Borrower/Guarantor:**    LEED Corporation
c/o Lon Montgomery

| **Loan Details:** | | |
|---|---|---|
| | $6,500,000.00 | Loan Amount |
| | 5yrs | Loan Term |
| | 3% | Interest Rate |
| | 300 Months | Amortization |
| | • Payments deferred 24 months | |
| | 30% | Joint Venture |
| | 5 year | Prepayment Penalty |

**Security:**    A first lien against any/all real property/assets owned by LEED Corporation.

**Documentation:**    Borrowers shall provide to ALGI, at their expense, all documentation listed but not limited to Exhibit A, which is attached hereto and made a part hereof.

| | |
|---|---|
| **Due Diligence:** | Due Diligence Fee in the amount of $15,900.00 US Dollars is due by **5pm EST, Monday, August 1st, 2011**.  Due Diligence is **REFUNDABLE**\* if funds are not secured due to non performance by ALGI. |
| | \*(minus costs associated with securing site visit accommodations, transportation, airfare, meals, staff hours, reports, legal, etc.) |
| **Compensation:** | Upon the consummation of securing funding, Borrower/Guarantor agrees to pay ALGI a cash compensation of three and one half percent (3.5%) of the total funds raised, payable to ALGI in equal shares. This compensation shall be paid on the business day/at closing of the initial funding that the Company receives. This DOES include fees/costs paid to ALGI for due diligence. |

This letter outlines the terms and conditions as proposed by ALGI and /or its affiliates. <u>THIS LETTER IS NOT TO BE CONSTRUED AS A COMMITMENT TO LEND</u> but is merely an outline of the intent of ALGI and/or its affiliates. Unless accepted prior to **5pm EST on Monday, August 1st, 2011,** ALGI reserves the right to cancel or amend the terms and conditions of this letter without notification. Your signatures on this letter will indicate your understanding and acceptance of all terms and conditions and will grant ALGI authorization to perform any necessary due diligence. No changes of the enclosed documentation are deemed acceptable by ALGI without prior written consent and initialized by ALGI.  If any changes are made by the Borrower/Guarantor without prior consent by ALGI, or if ALGI deems fit at any time for any reason, ALGI at its discretion can immediately terminate the terms and conditions of this loan request.


Very truly yours,

Sean Morrison
President
Accelerated Lending Group, Inc.



ACCEPTANCE OF LETTER OF INTENT / BUSINESS USE AFFIDAVIT

The undersigned hereby agrees to be corporately bound by each and every condition and term herein. We also hereby acknowledge the funds are being used for the Contracting Project.

_____
Lon Montgomery

_____
Signature   5 - 26 - 11

_____
Date

_____
Sean Morrison

_____
Signature

_____
Date

**EXHIBIT A (included but not limited to)**

- Last 2 years personal and business Financial Statements and Tax Returns (Audited)
- Current personal and business YTD P&L/PFS
- Detailed Business Plan
- Organizational Chart
- Marketing Analysis / Viability Report
- Appraisal (if property backed)
- Use of funds/Pro-forma
- Resume on principal(s)
- Photos of subject property (if applicable)
- Details on exit strategy- Presales, preleases, etc.
- Details on construction company, costs, timeline, etc. (if new co.)
- Details on permits, approvals, etc.

**Wire Instructions**

Wachovia Bank, N.A.
Accelerated Lending Group, Inc.
Routing Number: 063000021
Account Number: 2000053917287
SWIFT: PNBPUS33