ROBERT J. MAYNES, ISB No. 6905
*Attorney at Law*
P. O. Box 3005
Idaho Falls, ID 83405
Telephone: (208) 552-6442
Facsimile: (208) 522-1334
Email: mayneslaw@hotmail.com

*Attorney for Debtor*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 10-40743 JDP |
| LEED CORPORATION (THE), | |
| Debtor. | |

**DEBTOR AND DEBTOR-IN-POSSESSION'S OBJECTION TO MR. CAMPBELL'S (1) MOTION TO TAKE DEPOSITIONS AND FOR PRODUCTION OF DOCUMENTS FROM DEBTOR LEED CORPORATION (DOCKET NO. 407) AND RELATED DISCOVERY MOTIONS (DOCKET NOS. 408, 409, 410, 411, and 412) AND (2) MOTION TO EXPAND TIME TO FILE AN AMENDED OBJECTION TO DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION AND TO CONTINUE CONFIRMATION HEARING (DOCKET NO. 431); AND REQUEST FOR A PROTECTIVE ORDER**

COMES NOW the Debtor-in-possession, by and through his counsel of record, and objects to the Motions by Mr. Mitchell R. Campbell to take depositions and for production of documents from the Debtor and other parties and to expand time to file an amended objection to confirmation and to continue the confirmation hearing, and requests a protective order from the ongoing harassment and litigation tactics of Mr. Campbell.  The Debtor respectfully requests a protective order setting forth the limits and scope of such response, if any, the Debtor may be required to provide to Mr. Campbell. The Debtor further requests that Mr. Campbell to continue the confirmation hearing be denied.

## LIMITED
## BACKGROUND AND FACTS

1.      On April 29, 2010, the Debtor filed the above captioned bankruptcy case under Chapter 11.

2.      On or about July 7, 2010, Mr. Mitch R. Campbell filed Proof of Claim No. 38 asserting a claim for $380,800.00 and asserting an interest in certain real property commonly known as 141 Syringa.

3.      On or about April 8, 2011, Mr. Campbell filed his Objection to the Disclosure Statement (Docket No. 270) and his Motion to Dismiss or Convert (Docket No. 272).

4.      In response to Mr. Campbell's Motions, the Debtor deposed Mr. Campbell and inquired as to Mr. Campbell's interest in 141 Syringa.  Mr. Campbell was questioned as follows:

> Q: Is Linda Heinrich the owner of the note on 141 Syringa?
> A: Yeah.  Yeah, she is."
> *See Campbell Deposition Excerpt* p.121, lines 20-22 attached hereto as Exhibit "A."

Mr. Campbell further testified that "I owe her the money that that house was purchased with" and that Mrs. Heinrich held the equitable interest in the 141 Syringa property.  *Id.* at 122, lines 18-19 and pages 123-124 generally.

5.      At his deposition Mr. Campbell further testified regarding his purported *pro se* status as follows:

> Q: Okay.  And do you have an attorney advisor that is assisting you in this bankruptcy?
> A: Me personally?
> Q: Yeah.
> A: No. Well, wait a minute.  Let me clarify that.  I don't think so.  I mean, I've got an attorney that represents, you know, American Escrow, and—and there's attorneys—I guess that attorney, Matt, would be available if I needed to ask him

questions on a personal basis.  But I don't officially have one representing me, if that was the question.

. . .

Q: Okay.  So no one else has assisted you with the preparation of those pleadings.

A: No.

Q: And you filed those completely on your own?

A: Yep. Now, there has been on occasion attorneys that have reviewed those. You know, Matt has reviewed a couple of them, and—and I also occasionally will—I'm trying to think if there's anybody else that's been involved.  And I think on a couple of occasions, I usually, you know, set it up and—and have Matt take a look at it and say, you know, "Do you see any problem with that?" So there may have been a couple of times that I've done that.

Q. Okay.  Did you do that with respect to your motion to dismiss?

A. I believe I did.

Q. And when you refer to Matt, I believe you're referencing Matt Christensen?

A. Yes. Sorry.

*Id.* at pp. 27-29.

6.    On or about May 23, 2011, after a formal request to withdraw his Motion to Dismiss, the Debtor filed a Motion for Sanctions pursuant to Rule 9011 (Docket No. 305) against Mr. Campbell.  The Motion for Sanctions is incorporated herein by this reference.

7.    On June 3, 2011, shortly before the Hearing on his Motion to Dismiss, Mr. Campbell withdrew his Motion to Dismiss.  See Docket No. 316.

8.    Since the Withdrawal of his Motion to Dismiss, Mr. Campbell continues to incorporate his unsupported allegations and statement of fact in subsequent pleadings, including his current Objection to Confirmation of First Amended Plan (Docket No. 341). Additionally, Mr. Campbell continues to harass the Debtor and creditors in this case with numerous and ongoing discovery requests.

ADVERSARY PROCEEDING STATUS

9.    On or about September 29, 2010, the Debtor-in-possession filed an Adversary Complaint (Adv. No. 10-08086), including, inter alia, an objection to Mr. Campbell's claim (Claim No. 38 regarding 141 Syringa).

OBJECTION AND REQUEST FOR A PROTECTIVE ORDER

10.    To date, Debtor has produced a voluminous amount of documents in response to ongoing requests for production of documents, in excess of 2,800 pages.

11.    On or about September 2, 2011, Mr. Campbell's counsel in the adversary proceeding filed a Notice of Rule 30(b)(6) Deposition of the Debtor, setting a deposition for September 22 and 23, 2011.  A copy of the Notice of Deposition is attached hereto as Exhibit "B."  As demonstrated by Exhibit B, the scope of the deposition is extensive and overlaps with the items requested by Mr. Campbell in his Motions.

## GOOD CAUSE EXISTS FOR A PROTECTIVE ORDER.

F.R.Civ.P. Rule 26(c) provides, in part, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Mr. Campbell's discovery requests in the main case are related to his defense of the adversary proceeding.  Given the extent of discovery provided in the adversary proceeding, the fact that Mr. Christensen ostensibly represents Mr. Campbell in the main case according to Mr. Campbell's own admissions, and the currently scheduled depositions in the adversary proceeding, Mr. Campbell's current requests are overly broad and burdensome for this estate.

Additionally, Mr. Campbell's requests for production are extremely broad and duplicative of information provided in the adversary proceeding.  To date, the Debtor has incurred a significant amount of time and expense to address Mr. Campbell's requests, objections, motions and myriad of pleadings filed with tacit representation of his "attorney advisors."  Despite these attorney advisors, Mr. Campbell's motions have continued to be filed without any basis in fact and Mr. Campbell continues to cost this estate thousands of dollars in legal fees and expenses.

OBJECTION AND REQUEST FOR A PROTECTIVE ORDER

## MR. CAMPBELL'S STANDING IS QUESTIONABLE

Mr. Campbell has represented that he is a major creditor in this case at a number of hearings.  In reality, Mr. Campbell has a single Proof of Claim, No. 38, which has been objected to by the Debtor.  Mr. Campbell's deposition testimony (Exhibit A) raises the question of Mr. Campbell's standing and whether he is, in fact, a real party in interest.  As Mr. Campbell admits, Linda Heinrich appears to be the real party in interest with regards to 141 Syringa (i.e. Proof of Claim 38).  Additionally, Mr. Campbell's purported *pro se* status is in direct contradiction of his testimony regarding his "attorney advisors" referenced above.  See Exhibit "A."

## RULE 26(c) PROTECTS THIS ESTATE

Mr. Campbell's continuing antics fall squarely within F.R.Civ.P. Rule 26(c) protections, to protect the Debtor from "annoyance, embarrassment, oppression, or undue burden or expense."  To date, the Debtor has incurred thousands of dollars dealing with Mr. Campbell's myriad of pleadings, including objections to employment applications, objections to the disclosure statements, motions to dismiss, correspondence to other creditors, various deposition and discovery requests, etc., as well as various demands to other creditors in this case.  Mr. Campbell's actions, given his limited interest in this estate, are particularly egregious given the fact that Mr. Campbell may not be the real party of interest.  Even assuming Mr. Campbell is the proper claim holder, his single claim in this case is scarce justification for the expense his ongoing activities continue to cost this estate.

OBJECTION AND REQUEST FOR A PROTECTIVE ORDER

## CONCLUSION

The Debtor-in-possession respectfully requests a protective order protecting this estate from Mr. Campbell's ongoing activities in this case and his specious *pro se* filings. The DIP further respectfully suggests that Court consider that it may now be appropriate to consider the DIP's Rule 9011 Motion.  With respect to Mr. Campbell's request to continue the confirmation date, given the foregoing, such request should be denied.


DATED:        September 5, 2011

/s/*Robert J. Maynes*_____
ROBERT J. MAYNES

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 5, 2011, I filed a copy of the attached pleading with the Court via CM/ECF and the following parties are reflected as receiving the Notice of Electronic Filing as CM/ECF Registered Participants:

**PARTIES SERVED:**

Matthew Todd Christensen on behalf of Creditor Alternative Funding Retirement Plan, LLC
mtc@angstman.com,
mindy@angstman.com;mtcecf@gmail.com;danelle@angstman.com;claudia@angstman.com

Craig R Jorgensen on behalf of UCC
biggunlaw@cableone.net, lwilmot@cableone.net

Mary P Kimmel on behalf of U.S. Trustee US Trustee
ustp.region18.bs.ecf@usdoj.gov

US Trustee
ustp.region18.bs.ecf@usdoj.gov

And as otherwise noted on the Notice of Electronic Filing.

I HEREBY CERTIFY FURTHER that on September 5, 2011, I served a copy of the above referenced pleading(s) on the following parties via postage prepaid, first class, U.S. Mail:

PARTIES SERVED:

| | | |
|---|---|---|
| Almer Huntley, Jr. | Kent McBride | Dale H. Sluder |
| ASH International, Ltd. | Sun Valley Properties | Central Idaho Construction Co. |
| 2721 S. 900 E. | 204 N. Greenwood | P.O. Box 793 |
| Hagerman, ID 83332 | Shoshone, ID 83352 | Shoshone, ID 83352 |
| *Committee Member* | *Committee Member* | *Committee Member* |

Mitch Campbell, individually and
dba Avauntae Property
Management
P.O. Box 1785
Twin Falls, ID 83303
*2002(g) RFN*

DATED:        September 5, 2011

/s/*Robert J. Maynes*_____
ROBERT J. MAYNES

OBJECTION AND REQUEST FOR A PROTECTIVE ORDER

Deposition of:                     Mitch Campbell                     May 20, 2011

Page 27

1          A.    It's been a while.

2              Oh, wait a minute.  I can remember.

3    Robert Galley was the one that did the last one for

4    me, and I think that was probably, I want to say,

5    three years ago.

6          Q.    Okay.  And as I understood it, these

7    attorney advisors would maybe ghostwrite pleadings or

8    provide direction on how to address the matter

9    procedurally or substantively?

10          A.    Well, after the -- after the attorney

11    drafted the first complaint, you know, I pretty much

12    figured it out after that.  You know, you don't need

13    to go back and have them do the same thing over and

14    over again.  You just use the paperwork you got

15    before.

16          Q.    Okay.  And do you have an attorney

17    advisor that is assisting you in this bankruptcy?

18          A.    Me personally?

19          Q.    Yeah.

20          A.    No.  Well, wait a minute.  Let me

21    clarify that.  I don't think so.  I mean, I've got an

22    attorney that represents, you know, American Escrow,

23    and -- and there's attorneys -- I guess that

24    attorney, Matt, would be available if I needed to ask

25    him questions on a personal basis.  But I don't

EXHIBIT "A"

Deposition of:                  Mitch Campbell                    May 20, 2011

Page 28

1   officially have one representing me, if that was the

2   question.

3            Q.    That wasn't the question.

4            A.    Okay.

5            Q.    All right.  I was using your term,

6   "attorney advisors," and you indicated that you've

7   used attorney advisors in the past to go strike

8   pleadings and to assist you with legal process.  And

9   do you have somebody that has done the same for you

10  with respect to this bankruptcy case?

11           A.    You mean to the pleadings that I have

12  filed?

13           Q.    Yes.

14           A.    No.

15           Q.    Okay.  So no one else has assisted you

16  with the preparation of those pleadings?

17           A.    No.

18           Q.    And you filed those completely on your

19  own?

20           A.    Yep.  Now, there has been on occasion

21  attorneys that have reviewed those.  You know, Matt

22  has reviewed a couple of them, and -- and I also

23  occasionally will -- I'm trying to think if there's

24  anybody else that's been involved.

25                 And I think on a couple of occasions, I

Deposition of:                    Mitch Campbell                    May 20, 2011

Page 29

1    usually, you know, set it up and -- and have Matt

2    take a look at it and say, you know, "Do you see any

3    problem with that?"

4              So there may have been a couple of times

5    that I've done that.

6         Q.   Okay.  Did you do that with respect to

7    your motion to dismiss?

8         A.   I believe I did.

9         Q.   And when you refer to Matt, I believe

10   you're referencing Matt Christensen?

11        A.   Yes.  Sorry.

12        Q.   He represents Alternative Funding?

13        A.   Alternative Funding, American Escrow

14   Service, Alternative Funding Retirement account.

15   Every- -- everybody but me.  Every entity but me.

16        Q.   All right.  Well, you just referenced

17   Alternative Funding Retirement account.  Is that an

18   additional business that you have an ownership

19   interest in?

20        A.   Well, I wouldn't call it -- categorize

21   it as a business.  It's just a retirement fund for

22   Alternative Funding 401(k).

23        Q.   Is that an LLC?

24        A.   Yes.

25        Q.   But you don't consider an LLC to be a

Deposition of:                    Mitch Campbell                    May 20, 2011

Page 121

1    reasonable market value at the time, then that's what

2    we went with because the properties weren't

3    completed, so...

4                    If we would have relied on that, I guess

5    they would have been really overinflated because that

6    would have just been the land cost and not the

7    improvements.

8                    Q.    When you loaned money personally, did

9    you ever sell the notes to a third party?

10                    A.    Occasionally, yes.

11                    Q.    Who were the parties that you would sell

12   those notes to?

13                    A.    Some of them were, I think, the Haights

14   that we mentioned before, Linda Heinrich, and, of

15   course, the Meyers.

16                    Q.    Okay.  And did you sell the note on 141

17   Syringa?

18                    A.    Did I sell the note?  God, I can't

19   recall.

20                    Q.    Is Linda Heinrich the owner of the note

21   on 141 Syringa?

22                    A.    Yeah.  Yeah, she is.

23                    Q.    So Linda Heinrich owns the note on 141

24   Syringa?

25                    A.    The note that I have with her?

Deposition of:                    Mitch Campbell                    May 20, 2011

Page 122

1          Q.    The note on the property.

2          A.    Well, I'm not sure what your question

3     is.

4          Q.    Well, explain what her interest in 141

5     Syringa is to me, if you would, please.

6          A.    Okay.  There was a -- she was involved

7     in a couple of the other construction loans.  And at

8     this one point in time, she was -- there was an -- I

9     think I offered her that, and she said she didn't

10    want to buy it, but she would just loan me the money.

11    And so we did a promissory note, and I gave her a

12    note and deed of trust on the -- on that house.

13              Now, apparently, you know, I guess from

14    what we've been able to determine since then, she

15    didn't record that, but -- and so when all of this

16    stuff came up and I turned out to be the legal owner,

17    I was a little bit surprised.  But, you know,

18    that's -- in other words she still owns -- I owe her

19    the money that that house was purchased with.

20         Q.    Okay.  So she's one that has the

21    equitable interest in the home --

22         A.    Correct.

23         Q.    -- on 141 Syringa Plains?

24         A.    Correct.

25         Q.    And you just hold their legal title?

Deposition of:                    Mitch Campbell                    May 20, 2011

Page 123

1    You're the legal title holder?

2            A.   Right.

3            MR. RITCHIE:  Can I ask a question just for

4    clarification?  You hold legal title, or you hold the

5    note and the deed of trust?

6            THE WITNESS:  No, there is no note and deed

7    of trust on there.  Okay.  Here -- the way it was

8    originally set up was I was going to borrow some

9    money from Linda --

10           MR. RITCHIE:  It's all right.  I don't mean

11   to interrupt you, Rob.  I --

12           MR. MAYNES:  Let him answer the question.

13               Go ahead and answer the question.

14           MR. RITCHIE:  Oh, okay.  If you're

15   interested, I just --

16           MR. MAYNES:  I am.  I am.

17           MR. RITCHIE:  I thought you said he sold the

18   note to Linda Heinrich and then you're telling me

19   that he has titled it.

20           MR. MAYNES:  I'm trying to understand what

21   happened.

22               So explain that again, would you,

23   please.

24           THE WITNESS:  Okay.  I borrowed money from

25   Linda Heinrich and used that property for security.

Deposition of:                    Mitch Campbell                    May 20, 2011

Page 124

1    Okay.  And, you know, we did the note, we did the

2    deed of trust, and sent the whole package to her.

3    And, apparently, she didn't record the deed of trust.

4           But I mean, she's got, you know, copies

5    of the note, and the loan, and all of that, so...

6    And she hasn't until up to this point, because, you

7    know, I don't know where this thing is going, she

8    hasn't asserted any claim against that.  I suppose

9    she has a right to do that if it gets to that point.

10          MR. MAYNES:  The deed of trust has never been

11   recorded, though.

12          THE WITNESS:  Well, apparently not.  I mean,

13   because when all of this stuff came back, you know,

14   it came back in my name.  There wasn't any mortgage

15   on it.  So, apparently, she didn't record that.

16          MR. MAYNES:  Turn over to page 5 of the

17   motion, please.  I'm looking at subparagraph L.

18          THE WITNESS:  Okay.

19          Q.   (By Mr. Maynes)  You indicate that the

20   102 River View Drive property was foreclosed and that

21   the bid at auction was $70,000.  Do you know that for

22   a fact?

23          A.   No, I know that to be -- I know that to

24   be incorrect at this point.  It was an assumption

25   that we made that the house had sold.  And then the

Matthew T. Christensen
ANGSTMAN JOHNSON
3649 Lakeharbor Lane
Boise, Idaho 83703
Telephone: (208) 384-8588
Facsimile:  (208) 853-0117
Christensen ISB: 7213

Attorney for Defendants Mitchell R. Campbell,
Laura "Jane Doe" Campbell, American Escrow Service,
and Alternative Funding

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re: THE LEED CORPORATION, | Case No.: 10-40743-JDP |
| | Chapter 11 |
| Debtor | |
| _____ | Adversary Case No. 10-08086-JDP |
| THE LEED CORPORATION, Debtor-in-session, | NOTICE OF RULE 30(B)(6) DEPOSITION OF THE LEED CORPORATION |
|         Plaintiff, | |
| vs. | |
| ROBERT J. and KATHI L. MEYERS, husband and wife; MITCHELL R. CAMPBELL and JANE DOE, husband and wife, a/k/a MITCH R. CAMPBELL, a/k/a MITCH CAMPBELL and d/b/a AVAUNTAE | |

NOTICE OF RULE 30(B)(6) DEPOSITION OF THE LEED CORPORATION
- PAGE 1
Matter: 7065-001

**EXHIBIT "B"**

PROPERTY MANAGEMENT; AMERICAN
ESCROW SERVICES, LTD., an unknown
business entity; AMERICAN ESCROW
SERVICES, LLC, an Idaho limited liability
company; AMERICAN ESCROW
SERVICES, an unknown business entity;
ALTERNATIVE FUNDING RETIREMENT
PLAN, LLC, an Idaho limited liability
company; AMERICAN ESCROW SERVICE
PROFIT SHARING, LLC, an unknown
business entity; AMERICAN ESCROW
SERVICE RETIREMENT ACCOUNT, LLC,
an unknown business entity; AMERICAN
ESCROW RETIREMENT PLAN, LLC, an
unknown business entity; ALTERNATIVE
FUNDING, LTD., an Idaho limited liability
company; JOHN DOES 1 TO 50,

       Defendants.

_____

ROBERT J. MEYERS and KATHI L.
MEYERS, husband and wife

       Counterclaimants,

  vs.

THE LEED CORPORATION,

       Counterdefendant.

_____

ROBERT J. MEYERS and KATHI L.
MEYERS, husband and wife,

       Third-Party Plaintiffs/
       Third-Party Counterdefendants,

  vs.

LON MONTGOMERY

       Third-Party Defendant
       Third-Party Counterclaimant.

NOTICE OF RULE 30(B)(6) DEPOSITION OF THE LEED CORPORATION
- PAGE 2
Matter: 7065-001

LON MONTGOMERY

       Third-Party Counterclaimant,

      vs.

MITCH CAMPBELL

       Third-Party Counterdefendant.

YOU WILL PLEASE TAKE NOTICE THAT Matthew T. Christensen of Angstman, Johnson & Associates, PLLC, attorney of record for Mitch Campbell, Laura Campbell, American Escrow Service, LLC (and related entities – collectively "AES") and Alternative Funding Ltd (and related entities – collectively "AFL"), in the above-named matter, will take the 30(b)(6) deposition upon oral examination of Plaintiff The Leed Corporation ("Leed Corp"), on the 22nd and 23rd days of September, 2011, at the hour of 9:00 a.m., at the offices of Coleman, Ritchie & Robertson, 156 2nd Avenue West, Twin Falls, Idaho 83301, and continuing from time to time until completed, at which place and time you are invited to appear and take part in such deposition as you deem proper.

The Deponent is required to designate one or more officers, directors or managing agents to testify on the following areas:

1.     Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding any of the Leed Corp's responses to any discovery (written or oral) in the above-named proceedings.

2.     Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations made in the Verified Amended Complaint (hereinafter the "Complaint") that Defendants Mitch Campbell, Laura Campbell, AES or AFL were the agents, principals, employees, servants,

NOTICE OF RULE 30(B)(6) DEPOSITION OF THE LEED CORPORATION
- PAGE 3
Matter: 7065-001

partners, joint venturers, or representatives of the other Defendants to this action.

3.      Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the facts upon which Leed Corp relies in making any of the allegations in the Complaint.

4.      Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that Mitch Campbell, Laura Campbell, AES or AFL engaged in inequitable conduct.

5.      Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that injury to Leed Corp's other creditors, or unfair advantages conferred upon Mitch Campbell, Laura Campbell, AES or AFL, as a result of any inequitable conduct of Campbell, AES or AFL.

6.      Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the assertions that Mitch Campbell, Laura Campbell, AES or AFL are "insiders" of the Debtor, including all facts supporting said assertions.

7.      Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding any alleged unfair or deceptive acts or practices engaged in by Mitch Campbell, Laura Campbell, AES or AFL.

8.      Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding any alleged damage suffered by Leed Corp as a result of any unfair or deceptive acts or practices engaged in by Mitch Campbell, Laura Campbell, AES or AFL.

9.      Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that Mitch Campbell, Laura Campbell, AES or AFL have security interests in various properties that have not been properly perfected.

10.     Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that any lease agreements between Leed Corp and Mitch Campbell, Laura Campbell, AES or AFL are, in fact, "disguised financing agreements."

11.     Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding any alleged changes which any of the Defendants made to any lending agreements between them and the Leed Corp.

NOTICE OF RULE 30(B)(6) DEPOSITION OF THE LEED CORPORATION - PAGE 4
Matter: 7065-001

12.    Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that Mitch Campbell, Laura Campbell, AES or AFL engaged in wire fraud.

13.    Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that Mitch Campbell, Laura Campbell, AES or AFL engaged in mail fraud.

14.    Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that Mitch Campbell, Laura Campbell, AES or AFL engaged in collection of unlawful debt.

15.    Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that any collection of debt was in furtherance of a scheme or artifice to defraud or obtain money by false pretenses.

16.    Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that the transactions between Leed Corp and Mitch Campbell, Laura Campbell, AES or AFL were activities that affect interstate or foreign commerce.

17.    Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding Leed Corp's belief that delay in making repayment of various loans could result in collection by criminal means.

18.    Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that Mitch Campbell, Laura Campbell, AES or AFL engaged in "extortionate extensions of credit" to the Debtor.

19.    Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding harm to Leed Corp's business reputation or property caused by any alleged action of the Defendants.

20.    Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding any agreement between the Defendants to violate the RICO statute referenced in the Complaint.

21.    Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that transfers to Mitch Campbell, Laura Campbell, AES or AFL constitute "preference transfers" as defined by the Bankruptcy Code.

22.    Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that transfers to Mitch Campbell,

Laura Campbell, AES or AFL constitute "fraudulent transfers" as defined by the Bankruptcy Code and Idaho state law.

23. Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that any claims of Mitch Campbell, Laura Campbell, AES or AFL in the underlying bankruptcy case are subject to set off; undersecured or represent unlawful debts.

24. Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding all costs and expenses incurred preserving property to which Mitch Campbell, Laura Campbell, AES or AFL claim an interest.

25. Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding all statements made by Mitch Campbell, Laura Campbell, AES or AFL which Leed Corp claims "assail [Leed Corp's] management, ascribing conduct, characteristics or conditions incompatible with the proper conduct of [Leed Corp's] business.

26. Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding all third parties to whom said statements (described in paragraph 23 above) were published.

27. Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding all contracts with which Leed Corp believes Mitch Campbell, Laura Campbell, AES or AFL interfered, including all damages or injury allegedly suffered by Leed Corp as a result of any alleged interference.

28. Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding all contracts which Leed Corp believes Mitch Campbell, Laura Campbell, AES or AFL breached, including any damages allegedly suffered by Leed Corp as a result of any alleged breach.

29. Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding any statutory licensing requirements that Leed Corp believes any of the Defendants failed (intentionally or unintentionally) to comply with.

30. Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that Mitch Campbell, Laura Campbell, AES or AFL breached any implied covenant of good faith and fair dealing.

31. Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that Mitch Campbell, Laura Campbell, AES or AFL converted Leed Corp property, including a description of what property Leed Corp believes was converted, and what facts Leed Corp

believes support the allegations that Campbell, AES or AFL exercised dominion or control over the property.

32.  Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the allegations in the Complaint that Mitch Campbell, Laura Campbell, AES or AFL misrepresented any licensure status of any Defendant, and any damage suffered by Leed Corp as a result of any alleged misrepresentation.

33.  Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding any fiduciary duties owed to Leed Corp by Mitch Campbell, Laura Campbell, AES or AFL, any breach of those fiduciary duties, and any damages suffered by Leed Corp as a result of any alleged breach of fiduciary duties.

34.  Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the identity of all persons having knowledge of the claims made by Leed Corp in this action.

35.  Leed Corp's knowledge or knowledge reasonably available to Leed Corp regarding the contents, execution and surrounding circumstances of all documents produced by Leed Corp in this action.

   The Deponent is further required to designate one or more officers, directors or managing agents to identify and bring with him/her at the above-mentioned time and place all books, papers, documents, recordings, electronic data, emails, satellite communications, photographic pictures, or other documentary evidence and tangible items not previously produced in discovery in this matter which are relevant to the claims or defenses of the Plaintiffs or Defendants.  The Designee is further required to identify and bring with him/her any and all documents or items reviewed in preparation for this 30(b)(6) deposition.

NOTICE OF RULE 30(B)(6) DEPOSITION OF THE LEED CORPORATION
- PAGE 7
Matter: 7065-001

The above deposition will be conducted pursuant to the Federal Rules of Civil Procedure before a Notary Public of the State of Idaho, or such other officer authorized by law to administer oaths.

DATED this 2ND day of September, 2011.

/s/
MATTHEW T. CHRISTENSEN
Attorney for the Defendants Mitchell R. Campbell, Laura "Jane Doe" Campbell, American Escrow Service, and Alternative Funding

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of September, 2011, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Matthew Christensen        mtc@angstman.com
David Coleman              davidacoleman@msn.com
Robert J. Maynes           mayneslaw@hotmail.com
John S. Ritchie            crrtflaw@msn.com
Aaron J. Tolson            ajt@aaronjtolsonlaw.com
Nathan M. Olsen            nolsen@pmholaw.com

And any others as noticed on the court's ECF notice.

/s/
Matthew T. Christensen

NOTICE OF RULE 30(B)(6) DEPOSITION OF THE LEED CORPORATION
- PAGE 8
Matter: 7065-001