Robert J. Maynes, ISB No. 6905
Steven L. Taggart, ISB No. 8551
MAYNES TAGGART PLLC
P. O. Box 3005
Idaho Falls, ID 83405
Telephone: (208) 552-6442
Facsimile: (208) 522-1334
Email: mayneslaw@hotmail.com
Email: staggart101@gmail.com

*Debtor's counsel*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 10-40743 JDP |
| LEED CORPORATION (THE), | Chapter 11 |
| Debtor. | |

**MOTION FOR AUTHORITY TO SELL PROPERTY**
**FREE AND CLEAR OF LIENS AND INTERESTS**

1.      Debtor, LEED CORPORATION, by and through its attorney of record, hereby moves this Court pursuant to 11 USC § 363(f), FRBP 2002(a)(2), and FRBP 6004, and Local Bankruptcy Rule 2002.1 for authority to sell certain real and personal property, as described hereinafter, free and clear of all liens and interests.

2.      CASE STATUS.  The Debtor filed its petition on April 29, 2009 under chapter 11 and continues as the Debtor-in-possession to the present time.   The confirmation hearing date on the Debtor's Second Amended Plan is currently scheduled for October 26, 2011 at 1:30 p.m.

3.      PROPERTY DESCRIPTION.  The following property constitutes assets belonging to the estate of the Debtor:  404 N. Birch Street, Shoshone, ID  83352 with a legal description of:

Part of Block "J" Richard's Addition of the Original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereof, on record in the Office of the Recorder of said County, described as follows:

Commencing at the Southwest corner of Block "J" Richard's Addition of the original Shoshone Townsite, Lincoln County, Idaho as platted in the official plat thereof, on record in the Office of the recorder of said County said point being North 89°46'09" East 30.00 feet and North 00°12'05" West 30.00 feet from the intersection point of West 4th Street and Birch Street; Thence North 00°12'05" West 70.00 feet and being the TRUE POINT OF BEGINNING.
Thence North 00°12'05" West 50.00 feet;
Thence North 89°46'09" East 150.02 feet;
Thence South 00°12'05" East 50.00 feet;
Thence South 89°46'09" West 150.02 feet to the TRUE POINT OF BEGINNING.

HEREWITH CALLED LOT 14j

Such property remains in the control or possession of the Debtor. There are no co-owners. Debtor proposes to sell such property, free and clear of all liens and other interests, both real and personal as described hereinafter.

4.    PURCHASE PRICE.  Debtor proposes a private sale to Irish Witbeck. The proposed sale shall be for cash or cash equivalent at the time of closing. The closing shall be within thirty (30) days after this Court enters its order approving this sale. The sales price for such real and personal property shall be as follows:

| Property Description | Amount of Purchase Price |
|---|---|
| 404 N. Birch Shoshone, ID 83352 *Including fixtures and items noted in Paragraph 5(A )in the Real Estate Purchase and Sale Agreement, namely the hood fan, dishwasher & stove.* | 95,000.00 |
| Total | 95,000.00 |

A true and correct copy of the RE-21 Real Estate Purchase and Sale Agreement and addendum are attached hereto as Exhibit "A."

5.    SALE PROCEEDS.  Debtor proposes to pay from the gross sale proceeds the following estimated amounts at the time of closing. The amounts described hereinafter are the best estimates of the Debtor, but do not necessarily take into account

additional interest or attorney's fees owing since the petition date or changes in prorations based upon the action closing date.

| Name of Creditor | Estimated Amount of Payment |
|---|---|
| 1. Payoff First Mortgage to Equity Trust FBO Neal C. Hocklander IRA and associated costs | 46,162.53 |
| 2. Payoff NH Lien owed to DIP[1] | 24,998.21 |
| 3. Payoff DOT to David & Martha Orr[2] | 10,000.00 |
| 4. Lincoln County Taxes | 3,294.17 |
| 5. Shoshone City irrigation assessment | 45.84 |
| 6. Costs of Sale[3] | 10,499.25 |
| Total | 95,000.00 |

6.      FREE AND CLEAR OF LIENS.  Such sale shall be free and clear of any and all liens or other interests, under Bankruptcy Rule 363(f), including (1), (2), (4) or (5), as applicable, including all liens and interest described hereinbefore and listed in this motion here:

        a.      Deed of Trust securing an original indebtedness of $540,000.00 dated June 21, 2007 naming David W. Orr and Martha J. Orr as beneficiaries, Instrument No. 183817, Instrument No. 183988 and Instrument No. 186510.[4]

        b.      2008 irrigation assessment by City of Shoshone recorded July 31, 2008 as Instrument No. 185437.

---

[1] Specifically, pursuant to the Settlement Agreement dated July 21, 2011 between the Debtor-in-possession and Steven M. Notinger (the NH Bankruptcy Trustee), this bankruptcy estate is the owner of the NH Bankruptcy Trustee's lien hold interest in 404 N. Birch.  As such, the Debtor-in-possession has the right to foreclose out the junior liens under applicable state law, *i.e. Idaho Code* § 45-114.
[2] This payoff to the Orrs is pursuant to the previously approved Stipulation Modifying First Amended Plan and for Relief from Stay dated June 8, 2011 (Docket 324) at pp. 3-4.
[3] Seller agreed to pay $4,000 towards Buyer's closing costs.  Additional closing costs are as follows: $5,700 in commissions paid at closing, wire transfer fee of $40.00, closing fee of $143.75, recording of bankruptcy order cost of $28.00 and owner's title policy of $587.50.
[4] Please see Note 2.

c.    Deed of Trust securing an original indebtedness of $75,000.00 dated April 6, 2009 naming Equity Trust Company, Custodian FBO Raymond P. Kloepper, II, IRA as the beneficiary, Instrument No. 186472.[5]

d.    Collateral Assignment of Rents and Leases for benefit of Equity Trust Company, Custodian FBO Raymond P. Kloepper, II, IRA, dated April 6, 2009, Instrument No. 186473.[6]

e.    Deed of Trust securing an original indebtedness of $105,000.00 dated April 6, 2009 naming Dodge Financial, Inc. Trustee of the D&M 2009 Realty Trust beneficiary, Instrument No. 186474.[7]

f.    Collateral Assignment of Rents and Leases for benefit of Equity Trust Company, Dodge Financial, Inc. Trustee of the D&M 2009 Realty Trust dated April 6, 2009, Instrument No. 186475.[8]

g.    Deed of Trust securing an original indebtedness of $42,000.00 dated April 6, 2009 naming Keith D. Thomas as beneficiary, Instrument No. 186476.

h.    Claim of mechanics lien by John Deere Landscapers, Inc. for $19,063.87 plus interest dated December 15, 2009, Instrument No. 188077.

i.    Claim of mechanics lien by Manuel M. Cardona for $7,144.00 plus additional fees dated January18, 2010, Instrument No. 188337.

j.    Claim of mechanics lien by Volco, Inc. for $21,659.70 dated February 9, 2010, Instrument No. 188431.

---

[5] Please see Note 1.
[6] Please see Note 1.
[7] Please see Note 1.
[8] Please see Note 1.

MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS

     k.      Idaho state tax lien by Idaho State Tax Commission for $1,177.55 dated April 6, 2010, Lien No. 457947.

     l.      Idaho state tax lien by Idaho Department of Labor for $1,086.35 dated May 4, 2010, Instrument No. 460715.

     7.      ADDITIONAL TERMS.  The following additional information is provided as required by Local Bankruptcy Rule 2002.1:

| *Additional Requirements* | *Additional Information* |
|---|---|
| Estimated fair market value: | 95,000.00 |
| Proposed compensation to brokers or others: | (5,700.00) |
| Closing costs including $4,000 in Buyer closing costs | (7,222.20) |

     8.      RULE 6004(h) STAY:  The Debtor further requests that the 14-day stay under Rule 6004(h) not apply to the order approving this sale.

     9.      REQUEST TO SHORTEN TIME:  As noted in the concurrently filed Motion to Shorten Time for Hearing, the Buyer has indicated that she is unwilling to proceed with the sale absent court approval on shortened notice.  Notably, this Buyer first agree to purchase the home in March 2011.  Due to delays associated with negotiating the settlement with the first and second lien holders at that time, regarding the terms and conditions of the post-petition loan, the Buyer has been extremely patience and understanding with the vicissitudes and process presented in this case..  The Debtor is fearful the Buyer may lose interest if the property is unable to close in the immediate future.

     9.      A copy of the proposed order on this motion is attached hereto as Exhibit "B" and incorporated herein by reference.

## NOTICE OF NEED TO FILE WRITTEN OBJECTIONS

10.    OBJECTION REQUIRED.  If any party in interest desires to object to the
Motion described hereinbefore, such party must file a written objection with this Court
and serve a copy of such objection on all appropriate parties, including the Debtor and the
undersigned Debtor's attorney.  Such written Objection shall be filed not less than seven
(7) days before the hearing on the Motion, pursuant to Federal Rule of Bankruptcy
Procedure 6004(b).

DATED:         September 29, 2011

                       MAYNES TAGGART, PLLC

                        _/s/ Robert J. Maynes_____
                       ROBERT J. MAYNES

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 29, 2011, I filed a copy of the attached pleading with the Court via CM/ECF and the following parties are reflected as receiving the Notice of Electronic Filing as CM/ECF Registered Participants:

**PARTIES SERVED:**
Charles W Fawcett on behalf of Creditor John Deere Landscapes, Inc.
cfawcett@skinnerfawcett.com

Monte C Gray on behalf of Creditor David Orr
montegray@cableone.net, livg@cableone.net

R Ron Kerl on behalf of Counter-Defendant Deere & Company
Ron@cooper-larsen.com, jamieb@cooper-larsen.com

Mary P Kimmel on behalf of U.S. Trustee US Trustee
ustp.region18.bs.ecf@usdoj.gov

Bruce H Orr on behalf of Creditor David Orr
bho@wysekadish.com

Janine Patrice Reynard on behalf of Creditor Steven Notinger
jreynard@hawleytroxell.com, sschwager@hawleytroxell.com

Sheila Rae Schwager on behalf of Creditor Steven Notinger
sschwager@hawleytroxell.com

US Trustee
ustp.region18.bs.ecf@usdoj.gov

And as otherwise noted on the Notice of Electronic Filing.

I HEREBY CERTIFY FURTHER that on September 16, 2011, I served a copy of the above referenced pleading(s) on the following parties via postage prepaid, first class, U.S. Mail:

PARTIES SERVED:

| | | |
|---|---|---|
| Mitch Campbell, individually and dba Avauntae Property Management P.O. Box 1785 Twin Falls, ID 83303 *2002(g) RFN* | City of Shoshone P.O. Box Shoshone, ID 83352-0208 | Equity Trust Company, Custodian FBO Raymond P. Kloepper, II, IRA 601 E. Rollins St. Orlando, FL 32803-01248 |
| Dodge Financial, Inc. Trustee of the D&M 2009 Realty Trust Donald E. Dodge, RA 15 Northview Drive Meredith, NH 03253 | Keith Thomas 113 Julasar Dr. Winchester, VA 22602-4359 | Manuel M. Cardona MCM Drywall P.O. Box 563 Hailey, ID 83333 |

MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS

Volco, Inc.                     Idaho State Tax Commission    Idaho Department of Labor
Rhonda Millick, RA/Secretary    P.O. Box 36                   317 W. Main Street
9222 W. Barnes Drive            Boise, ID 83722-0036          Boise, ID 83735-0002
Boise, ID 83709

Irish Witbeck
404 N. Birch
Shoshone, ID 93352


        DATED:        September 29, 2011


                      _/s/ Robert J. Maynes_____
                      ROBERT J. MAYNES


MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS
8

04/16/2008   05:39     2088862200               SUN VALLEY PROP.                    PAGE   02/10



# RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT

JULY 2010 EDITION
Page 1 of 7

Idaho Association of REALTORS

THIS IS A LEGALLY BINDING CONTRACT. READ THE ENTIRE DOCUMENT, INCLUDING ANY ATTACHMENTS.
IF YOU HAVE ANY QUESTIONS, **CONSULT YOUR ATTORNEY AND/OR ACCOUNTANT BEFORE SIGNING.**

1  ID#____322011svpk-a_____                                    DATE_____March 2, 2011_____

3  **LISTING AGENCY**_____Exit Realty Idaho falls_____ Office Phone #_____  Fax #_____
4  Listing Agent_____ E-Mail_____  Phone #_____
6  **SELLING AGENCY**_____Sun Valley Properties_____ Office Phone #_____  Fax #_____
8  Selling Agent_____K C McBride_____ E-Mail_____  Phone #_____

9  **1. BUYER:**_____Irish Witbeck_____
   (Hereinafter called **"BUYER"**) agrees to purchase, and the undersigned SELLER agrees to sell the following described real estate hereinafter referred to as
10 **"PROPERTY" COMMONLY KNOWN AS** _____404 N Birch_____
11 _____Shoshone_____ City _____Lincoln_____ County, ID, Zip ___83352___ legally described as: __Lot 14 J Richards addition__
12 _____
13 OR Legal Description Attached as addendum # _____  **(Addendum must accompany original offer.)**

15 **2.** $95,000.00_____ **PURCHASE PRICE:** _____Ninety-Five Thousand and Zero/100_____ **DOLLARS,**
16 payable upon the following **TERMS AND CONDITIONS** (not including closing costs):

18 **3. FINANCIAL TERMS: Note: A+C+D+E must add up to total purchase price.**

20 **(A).** $1,000.00_____ **EARNEST MONEY:** BUYER hereby deposits _____One Thousand and Zero/100_____
21 DOLLARS as Earnest Money evidenced by: ☐ cash ☒ personal check ☐ cashier's check ☐ note (due date):_____
22 ☐ Other_____  and a receipt is hereby acknowledged. Earnest Money to be
23 deposited in trust account ☐ upon receipt, or ☐ upon acceptance by BUYER and SELLER and shall be held by: ☐ Listing Broker ☐ Selling Broker
24 ☐ Other_____  for the benefit of the parties hereto.
25 **THE RESPONSIBLE BROKER SHALL BE:** _____Tello Baird_____

27 **(B). ALL CASH OFFER:** ☒ NO ☐ YES   If this is an all cash offer do not complete Sections 3C and 3D, fill blanks with "0" (ZERO). IF CASH
28 OFFER, BUYER'S OBLIGATION TO CLOSE SHALL NOT BE SUBJECT TO ANY FINANCIAL CONTINGENCY. BUYER agrees to provide SELLER
29 within_____business days (five [5] if left blank) from the date of acceptance of this agreement by all parties, evidence of sufficient funds and/or proceeds
30 necessary to close transaction. Acceptable documentation includes, but is not limited to, a copy of a recent bank or financial statement or contract(s) for
31 the sale of BUYER'S current residence or other property to be sold.

33 **(C).** $0.00_____ **NEW LOAN PROCEEDS:** This Agreement is contingent upon BUYER obtaining the following financing:
34 ☐ **FIRST LOAN** of $_____ not including mortgage insurance, through ☒ FHA, ☐ VA, ☐ CONVENTIONAL, ☐ IHFA, ☐ RURAL
35 DEVELOPMENT, ☐ OTHER_____ with interest not to exceed ___6___ % for a period of
36 _____year(s) at: ☒ Fixed Rate ☐ Other_____. BUYER shall pay no more than ___1___ point(s) plus origination fee if any. SELLER shall pay
37 no more than ___1___ point(s). Any reduction in points shall first accrue to the benefit of the ☐ BUYER ☐ SELLER ☒ Divided Equally ☐ N/A.

39 ☐ **SECOND LOAN** of $0.00____ with interest not to exceed_____% for a period of_____year(s) at: ☐ Fixed Rate
40 ☐ Other_____. BUYER shall pay no more than_____point(s) plus origination fee if any. SELLER shall pay no more than
41 _____point(s). Any reduction in points shall first accrue to the benefit of the ☐ BUYER ☐ SELLER ☐ Divided Equally ☐ N/A.

43 **LOAN APPLICATION:** BUYER ☒ has applied ☐ shall apply for such loan(s) within_____business days (five [5] if left blank) of SELLER'S acceptance.
44 Within_____business days (ten [10] if left blank) of final acceptance of all parties, BUYER agrees to furnish SELLER with a **written confirmation**
45 **showing lender approval** of credit report, income verification, debt ratios, and evidence of sufficient funds and/or proceeds necessary to
46 **close transaction in a manner acceptable to the SELLER(S)** and subject only to satisfactory appraisal and final lender underwriting. If such
47 written confirmation is not received by SELLER(S) within the strict time allotted, SELLER(S) may at their option cancel this agreement by notifying
48 BUYER(S) in writing of such cancellation within ___3___ business days (three [3] if left blank) after written confirmation was required. If SELLER does not
49 cancel within the strict time period specified as set forth herein, SELLER shall be deemed to have accepted such written confirmation of lender approval
50 and shall be deemed to have elected to proceed with the transaction. SELLER'S approval shall not be unreasonably withheld. If an appraisal is
51 **required by lender, the PROPERTY must appraise** at not less than purchase price or BUYER'S Earnest Money may be returned at BUYER'S
52 request. BUYER may also apply for a loan with different conditions and costs and close transaction provided all other terms and conditions of this
53 Agreement are fulfilled, and the new loan does not increase the costs or requirements to the SELLER. FHA / VA: If applicable, it is expressly agreed
54 that notwithstanding any other provisions of this contract, BUYER shall not be obligated to complete the purchase of the PROPERTY described herein or
55 to incur any penalty or forfeiture of Earnest Money deposits or otherwise unless BUYER has been given in accordance with HUD/FHA or VA
56 requirements a written statement by the Federal Housing Commissioner, Veterans Administration or a Direct Endorsement lender setting forth the
57 appraised value of the PROPERTY of not less than the sales price as stated in the contract. SELLER agrees to pay fees required by FHA or VA.

59 **(D).** $_____ **ADDITIONAL FINANCIAL TERMS:**
60 ☒ Additional financial terms are specified under the heading "OTHER TERMS AND/OR CONDITIONS" (Section 4).
61 ☐ Additional financial terms are contained in a FINANCING ADDENDUM of same date, attached hereto, signed by both parties.

63 **(E).** $94,000.00_____ **APPROXIMATE FUNDS DUE FROM BUYERS AT CLOSING (Not including closing costs):** Cash at
64 closing to be paid by BUYER at closing in GOOD FUNDS, includes: **cash, electronic transfer funds, certified check or cashier's check. NOTE:** If
65 any of above loans being Assumed or taken "subject to", any net differences between the approximate balances and the actual balance of said loan(s)
66 shall be adjusted at closing of escrow in: ☐ Cash ☐ Other_____

**BUYER'S Initials** (____)(____) Date _3/3/11_          **SELLER'S Initials** (_LEM_)(____) Date _3-3-11_

This form is printed and distributed by the Idaho Association of REALTORS, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
National Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. © Copyright Idaho Association of REALTORS, Inc. All rights reserved.
**JULY 2010 EDITION**                    RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT                    Page 1 of 7

04/16/2008  05:39   2088862200   SUN VALLEY PROP.   PAGE  03/10

PROPERTY ADDRESS: _____404 N Birch_____ Shoshone _____ ID#: _322011svpk-a_

67 **4. OTHER TERMS AND/OR CONDITIONS:** This Agreement is made subject to the following special terms, considerations and/or contingencies which
68 must be satisfied prior to closing Buyer agrees to assist sellers with clean up and necessary repairs, including painting if necessary
69 cleaning and repair of carpet or replacement if necessary. Buyer understands the house is not under warranty. House sold
70 as is. Buyers conditional financing approval letter is attached. Seller will pay up to $4000.00 of buyer's closing costs.
71 Additionally buyer is aware the U S Bankruptcy Court in Pocatello Id. must approve this transaction.
72 _____
73 _____
74 _____
75 _____
76 _____
77 _____
78 _____

79 **5. ITEMS INCLUDED & EXCLUDED IN THIS SALE:** All existing fixtures and fittings that are attached to the PROPERTY are **INCLUDED IN THE**
80 **PURCHASE PRICE** (unless excluded below), and shall be transferred free of liens. These include, but are not limited to, all seller-owned attached floor
81 coverings, attached television antennae, satellite dish, attached plumbing, bathroom and lighting fixtures, window screens, screen doors, storm doors, storm
82 windows, window coverings, garage door opener(s) and transmitter(s), exterior trees, plants or shrubbery, water heating apparatus and fixtures, attached
83 fireplace equipment, awnings, ventilating, cooling and heating systems, all ranges, ovens, built-in dishwashers, fuel tanks and irrigation fixtures and
84 equipment, that are now on or used in connection with the PROPERTY and shall be included in the sale unless otherwise provided herein. BUYER should
85 satisfy himself/herself that the condition of the included items is acceptable. It is agreed that any item included in this section is of nominal value less than $100.
86 **(A). ADDITIONAL ITEMS SPECIFICALLY INCLUDED IN THIS SALE:** _Hood fan, Dishwasher, stove._
88 _____
89 _____
90 _____
91 _____
92 **(B). ITEMS SPECIFICALLY EXCLUDED IN THIS SALE:** _____
93 _____
94 _____
95 _____
96 _____

97 **6. MINERAL RIGHTS:** Any and all mineral rights appurtenant to the PROPERTY are included in and are part of the sale of this PROPERTY unless
98 otherwise agreed to by the parties in writing.

100 **7. WATER RIGHTS:** Any and all water rights including but not limited to water systems, wells, springs, lakes, streams, ponds, rivers, ditches, ditch rights,
101 and the like, if any, appurtenant to the PROPERTY are included in and are a part of the sale of this PROPERTY unless otherwise agreed to by the parties in
102 writing.

104 **8. TITLE CONVEYANCE:** Title of SELLER is to be conveyed by warranty deed, unless otherwise provided, and is to be marketable and insurable except
105 for rights reserved in federal patents, state or railroad deeds, building or use restrictions, building and zoning regulations and ordinances of any
106 governmental unit, and rights of way and easements established or of record. Liens, encumbrances or defects to be discharged by SELLER may be paid out
107 of purchase money at date of closing. No liens, encumbrances or defects which are to be discharged or assumed by BUYER or to which title is taken
108 subject to, exist unless otherwise specified in this Agreement.

110 **9. TITLE INSURANCE:** There may be types of title insurance coverages available other than those listed below and parties to this agreement
111 are advised to talk to a title company about any other coverages available that will give the BUYER additional coverage.

113 **(A). PRELIMINARY TITLE COMMITMENT:** Prior to closing the transaction, ☒ SELLER or ☐ BUYER shall furnish to BUYER a preliminary commitment
114 of a title insurance policy showing the condition of the title to said PROPERTY. BUYER shall have_____ business days (five [5] if left blank) from receipt
115 of the preliminary commitment or not fewer than twenty-four (24) hours prior to closing, within which to object in writing to the condition of the title as set
116 forth on the preliminary commitment. If BUYER does not so object, BUYER shall be deemed to have accepted the conditions of the title. It is agreed that if
117 the title of said PROPERTY is not marketable, or cannot be made so within _____ business days (five [5] if left blank) after notice containing a written
118 statement of defect is delivered to SELLER, BUYER'S Earnest Money deposit will be returned to BUYER and SELLER shall pay for the cost of title
119 insurance cancellation fee, escrow and legal fees, if any.

121 **(B). TITLE COMPANY:** The parties agree that _____Land Title_____ Title Company
122 located at _____Jerome_____ shall provide the title policy and preliminary report of commitment.

124 **(C). STANDARD COVERAGE OWNER'S POLICY:** SELLER shall within a reasonable time after closing furnish to BUYER a title insurance policy in the
125 amount of the purchase price of the PROPERTY showing marketable and insurable title subject to the liens, encumbrances and defects elsewhere set out
126 in this Agreement to be discharged or assumed by BUYER unless otherwise provided herein. **The risk assumed by the title company in the standard**
127 **coverage policy is limited to matters of public record.** BUYER shall receive a ILTA/ALTA Owner's Policy of Title Insurance. A title company, at
128 BUYER's request, can provide information about the availability, desirability, coverage and cost of various title insurance coverages and endorsements. If
129 BUYER desires title coverage other than that required by this paragraph, BUYER shall instruct Closing Agency in writing and pay any increase in cost
130 unless otherwise provided herein.

132 **(D). EXTENDED COVERAGE LENDER'S POLICY (Mortgagee policy):** The lender may require that BUYER (Borrower) furnish an Extended Coverage
133 Lender's Policy. This extended coverage lender's policy considers matters of public record and additionally insures against certain matters not shown in
134 the public record. This extended coverage lender's policy is solely for the benefit of the lender and only protects the lender.

BUYER'S Initials (_____)(_____) Date 3/3/11   SELLER'S Initials (_LM_)(_____) Date 3-3-11

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
National Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. © Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

04/16/2008  05:39     2088862200          SUN VALLEY PROP.                    PAGE  04/10

PROPERTY ADDRESS: _____ 404 N Birch _____ Shoshone _____ ID#: _ 322011svpk-a _

135  **10.  INSPECTION:**
136      **(A).  BUYER chooses** ☒ to have inspection ☐ not to have inspection. If BUYER chooses not to have inspection, skip Section 10C. BUYER shall have
137      the right to conduct inspections, investigations, tests, surveys and other studies at BUYER'S expense. BUYER shall, within _____ business days (ten
138      [10] if left blank) of acceptance, complete these inspections and give to SELLER written notice of disapproved items. BUYER is strongly advised to
139      exercise these rights and to make BUYER'S own selection of professionals with appropriate qualifications to conduct inspections of the entire
140      PROPERTY. SELLER shall make PROPERTY available for inspection and agrees to accept the responsibility and expense for making sure all the
141      utilities are turned on for the inspection except for phone and cable. Some inspections, investigations, tests, surveys and other studies may require
142      additional days to complete. The parties agree that unless specifically set forth below, the above timeframe for investigations, tests, surveys and other
143      studies shall govern.
144      Additional inspections/timeframes: _____
145      _____
146      _____
147      _____
148      _____
149      _____
150      _____
151      _____
152      _____
153      _____
154
155      **(B).  FHA INSPECTION REQUIREMENT.** If applicable: "For Your Protection: Get a Home Inspection", HUD 92564-CN must be signed on or before
156      execution of this agreement.
157
158      **(C).  SATISFACTION/REMOVAL OF INSPECTION CONTINGENCIES:**
159
160      1). If BUYER **does not** within the strict time period specified give to SELLER written notice of disapproved items, BUYER shall conclusively be deemed
161      to have: (a) completed all inspections, investigations, review of applicable documents and disclosures; (b) elected to proceed with the transaction and
162      (c) assumed all liability, responsibility and expense for repairs or corrections other than for items which SELLER has otherwise agreed in writing to repair
163      or correct.
164
165      2). If BUYER **does** within the strict time period specified give to SELLER written notice of disapproved items, **BUYER shall provide to SELLER**
166      **pertinent section(s) of written inspection reports.** SELLER shall have _____ business days (three [3] if left blank) in which to respond in writing.
167      SELLER, at their option, may correct the items as specified by BUYERS in their letter or may elect not to do so. If SELLER agrees to correct the items
168      asked for in BUYER'S letter, then both parties agree that they will continue with the transaction and proceed to closing. **This will remove BUYER'S**
169      **inspection contingency.**
170
171      3). If SELLER elects not to correct the disapproved items, or does not respond in writing within the strict time period specified, then the BUYER(S) have
172      the option of either continuing the transaction without the SELLER being responsible for correcting these deficiencies or giving the BUYER written
173      notice within _____ business days (three [3] if left blank) that they will not continue with the transaction and will receive their Earnest Money back.
174
175      4). If BUYER **does not** give such written notice of cancellation within the strict time periods specified, BUYER shall conclusively be deemed to have
176      elected to proceed with the transaction without repairs or corrections other than for items which SELLER has otherwise agreed in writing to repair or
177      correct. SELLER shall make the PROPERTY available for all inspections. BUYER shall keep the PROPERTY free and clear of liens; indemnify and hold
178      SELLER harmless from all liability, claims, demands, damages and costs; and repair any damages arising from the inspections. No inspections may be
179      made by any governmental building or zoning inspector or government employee without the prior consent of SELLER unless required by local law.
180
181      **11.  LEAD PAINT DISCLOSURE:** The subject PROPERTY ☐ is ☒ is not defined as "Target Housing" regarding lead-based paint and/or lead-based paint
182      hazards. The term lead-based paint hazards is intended to identify lead-based paint and all residential lead-containing dusts and soils regardless of the
183      source of the lead. If yes, BUYER hereby acknowledges the following: (a) BUYER has been provided an EPA approved lead-based paint hazard
184      information pamphlet, "Protect Your Family From Lead In Your Home". (b) receipt of SELLER'S Disclosure of Information and Acknowledgment Form and
185      have been provided with all records, test reports or other information, if any, related to the presence of lead-based paint hazards on said PROPERTY,
186      (c) that this contract is contingent upon BUYERS right to have the PROPERTY tested for lead-based paint hazards to be completed no later than
187      _____ or the contingency will terminate, (d) that BUYER hereby ☐ waives ☐ does not waive this right, (e) that if test results show
188      unacceptable amounts of lead-based paint on the PROPERTY, BUYER has the right to cancel the contract subject to the option of the SELLER (to be given
189      in writing) to elect to remove the lead-based paint and correct the problem which must be accomplished before closing, (f) that if the contract is canceled
190      under this clause, BUYER'S earnest money deposit will be returned to BUYER. Additionally, if any structure was built before 1978 and is a residential home,
191      apartment or child-occupied facility such as a school or day-care center, federal law requires contractors that disturb lead-based paint in that structure to
192      provide the owner with a "Renovate Right" pamphlet. The contractor shall be certified and follow specific work practices to prevent lead contamination.
193
194      **12.  MOLD DISCLAIMER:** BUYER is hereby advised that mold and/or other microorganisms may exist at the Property. BUYER acknowledges
195      and agrees to accept full responsibility and risk for any matters that may result from mold and/or other microorganisms and to hold SELLER and
196      any Broker or agent representing SELLER or BUYER harmless from any liability or damages (financial or otherwise) relating to such matters.
197
198      **13.  SQUARE FOOTAGE VERIFICATION:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE REAL PROPERTY
199      OR IMPROVEMENTS IS APPROXIMATE. IF SQUARE FOOTAGE IS MATERIAL TO THE BUYER, IT MUST BE VERIFIED DURING THE INSPECTION
200      PERIOD.
201
202      **14.  SELLER'S PROPERTY CONDITION DISCLOSURE FORM:** If required by Title 55, Chapter 25 Idaho Code SELLER shall within ten (10)
203      calendar days after execution of this Agreement provide to BUYER or BUYER'S agent, "Seller's Property Condition Disclosure Form" or other acceptable
204      form. BUYER has received the "Seller's Property Condition Disclosure Form" or other acceptable form prior to signing this Agreement: ☐ Yes ☐ No ☐ N/A

BUYER'S Initials ( _____ )( ___ ) Date _3/3/11_          SELLER'S Initials ( _LM_ )( ___ ) Date _3-3-11_

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for the use by the real estate professionals who are members of the
National Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. © Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

JULY 2010 EDITION          RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT                    Page 4 of 7

PROPERTY ADDRESS: _____ 404 N Birch _____ Shoshone _____ ID#: __ 322011svpk-a __

205 **15. COVENANTS, CONDITIONS AND RESTRICTIONS (CC&Rs):**  As part of the BUYER'S inspection of the PROPERTY as set forth in Section 10,
206 BUYER is responsible for obtaining and reviewing a copy of any CC&Rs which may affect the PROPERTY. BUYER shall have _____ business days (ten
207 [10] if left blank) (but in no event shall such time period exceed that time period set forth for inspections in Section 10) to review and approve of any such
208 CC&Rs that may affect the PROPERTY. Unless BUYER delivers to SELLER a written and signed objection to the terms of any applicable CC&Rs with
209 particularity describing BUYER's reasonable objections within such time period as set forth above, BUYER shall be deemed to have conclusively waived any
210 objection to the terms of any CC&Rs affecting the PROPERTY.
211
212 **16. SUBDIVISION HOMEOWNER'S ASSOCIATION:**  BUYER is aware that membership in a Home Owner's Association may be required and
213 BUYER agrees to abide by the Articles of Incorporation, Bylaws and rules and regulations of the Association. BUYER is further aware that the PROPERTY
214 may be subject to assessments levied by the Association described in full in the Declaration of Covenants, Conditions and Restrictions. BUYER has
215 reviewed Homeowner's Association Documents: ☐ Yes  ☐ No  ☒ N/A. Association fees/dues are $ _____ per _____.
216 ☐ BUYER ☐ SELLER ☒ N/A to pay Homeowner's Association SET UP FEE of $ _____ and/or PROPERTY TRANSFER FEES of $ _____ at closing.
217
218 **17. HOME WARRANTY PLAN:** Home Warranty Plans available for purchase can vary in many respects including, but not limited to, scope of coverage,
219 options, exclusions, limitations, service fees, and pre-existing conditions. BUYER and SELLER are advised to investigate Home Warranty Plans before
220 purchasing a plan and BUYER and SELLER acknowledge that Home Warranty Plans vary from plan to plan. Further, BUYER and SELLER acknowledge
221 that a Home Warranty Plan is separate and apart from any terms contained within this Real Estate Purchase and Sale Agreement and does not create any
222 warranties, including, without limitation, any warranty of habitability, agreements or representations not expressly set forth herein.
223 A Home Warranty Plan ☐ will ☒ will not be included in this transaction.
224 ☐ BUYER  ☐ SELLER shall order a Home Warranty Plan which shall be issued by a company selected by ☐ BUYER ☐ SELLER.
225 The cost of the Home Warranty Plan shall not exceed $ N/A _____ and shall be paid for at closing by ☐ BUYER ☐ SELLER.
226
227 **18. COSTS PAID BY:** The parties agree to pay the following costs as indicated below. None of the costs to be paid by the parties in this section creates
228 an inspection or performance obligation other than strictly for the payment of costs. There may be other costs incurred in addition to those set forth below.
229 Such costs may be required by the lender, by law, or by other such circumstances.

| | BUYER | SELLER | Shared Equally | N/A | | BUYER | SELLER | Shared Equally | N/A |
|---|---|---|---|---|---|---|---|---|---|
| Appraisal Fee | | | | | Title Ins. Standard Coverage Owner's Policy | | X | | |
| Appraisal Re-Inspection Fee | | | | | Title Ins. Extended Coverage Lender's Policy – Mortgagee Policy | | | | |
| Closing Escrow Fee | | X | | | Additional Title Coverage | | | | |
| Lender Document Preparation Fee | | X | | | Fuel in Tank – Dollar Amount to be Determined by Supplier | | | | X |
| Tax Service Fee | | X | | | Domestic Well Water Potability Test | | | | X |
| Flood Certification/Tracking Fee | | X | | | Domestic Well Water Productivity Test | | | | X |
| Lender Required Inspections | | | | X | Septic Inspections | | | | X |
| Attorney Contract Preparation or Review Fee | | | | X | Septic Pumping | | | | X |
| | | | | | Survey | | | | X |

230 SELLER agrees to pay up to EITHER _____ % (N/A if left blank) of the purchase price OR $ 4000.00 _____ (N/A if left blank) of lender-approved
231 BUYER'S closing costs, lender fees, and prepaid costs which includes but is not limited to those items in BUYER columns marked above.
232 SELLER agrees to pay up to $ 0 _____ ($0 if left blank) of lender required repair costs only.
233 BUYER or SELLER has the option to pay any lender required repair costs in excess of this amount.
234
235 **19. OCCUPANCY:** BUYER ☒ does  ☐ does not intend to occupy PROPERTY as BUYER'S primary residence.
236
237 **20. RISK OF LOSS OR NEGLECT:**  Prior to closing of this sale, all risk of loss shall remain with SELLER. In addition, should the PROPERTY be
238 materially damaged by fire, neglect, or other destructive cause prior to closing, this agreement shall be voidable at the option of the BUYER.
239
240 **21. FINAL WALK THROUGH:** The SELLER grants BUYER and any representative of BUYER reasonable access to conduct a final walk through
241 inspection of the PROPERTY approximately _____ calendar days (three [3] if left blank) prior to close of escrow, NOT AS A CONTINGENCY OF THE
242 SALE, but for purposes of satisfying BUYER that any repairs agreed to in writing by BUYER and SELLER have been completed and PROPERTY are in
243 substantially the same condition as on the date this offer is made. SELLER shall make PROPERTY available for the final walk through and agrees to accept
244 the responsibility and expense for making sure all the utilities are turned on for the walk through except for phone and cable. If BUYER does not conduct a
245 final walk through, BUYER specifically releases the SELLER and Broker(s) of any liability.

BUYER'S Initials _____ X _____ ) Date 3/3/11          SELLER'S Initials ( _____ X _____ ) Date 3-3-11

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals and are members of the
National Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. © Copyright Idaho Association of REALTORS®, Inc. All rights reserved.
**JULY 2010 EDITION**          RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT                    Page 4 of 7

04/16/2008  05:39    2088862200              SUN VALLEY PROP.                    PAGE 06/10

PROPERTY ADDRESS: _____ 404 N Birch _____ Shoshone _____ ID#: ___ 322011svpk-a ___

246 **22. SINGULAR AND PLURAL** terms each include the other, when appropriate.
247

248 **23. FORECLOSURE NOTICE:** If the PROPERTY described above is currently involved in a foreclosure proceeding (pursuant to Idaho Code § 45-1506)
249 any contract or agreement with the owner or owners of record that involves the transfer of any interest in residential real property, as defined in § 45-
250 525(5)(b), Idaho Code, subject to foreclosure must be in writing and must be accompanied by and affixed to RE-42 Property Foreclosure Disclosure Form,
251

252 **24. MECHANIC'S LIENS - GENERAL CONTRACTOR DISCLOSURE STATEMENT NOTICE:** BUYER and SELLER are hereby notified that,
253 subject to Idaho Code §45-525 et seq., a "General Contractor" must provide a Disclosure Statement to a homeowner that describes certain rights afforded to
254 the homeowner (e.g. lien waivers, general liability insurance, extended policies of title insurance, surety bonds, and sub-contractor information). The
255 Disclosure Statement must be given to a homeowner prior to the General Contractor entering into any contract in an amount exceeding $2,000 with a
256 homeowner for construction, alteration, repair, or other improvements to real property, or with a residential real property purchaser for the purchase and sale
257 of newly constructed property. Such disclosure is the responsibility of the General Contractor and it is not the duty of your agent to obtain this information on
258 your behalf. You are advised to consult with any General Contractor subject to Idaho Code §45-525 et seq. regarding the General Contractor Disclosure
259 Statement.
260

261 **25. SALES PRICE INFORMATION:** Pursuant to Idaho Code §54-2083(6)(d), a "sold" price of real property is not confidential client information.
262

263 **26. FACSIMILE TRANSMISSION:** Facsimile or electronic transmission of any signed original document, and retransmission of any signed facsimile or
264 electronic transmission shall be the same as delivery of an original. At the request of either the BUYER or SELLER, or the LENDER, or the Closing Agency,
265 the BUYER and SELLER will confirm facsimile or electronic transmitted signatures by signing an original document.
266

267 **27. BUSINESS DAYS:** A business day is herein defined as Monday through Friday, 8:00 A.M. to 5:00 P.M. in the local time zone where the subject real
268 PROPERTY is physically located. A business day shall not include any Saturday or Sunday, nor shall a business day include any legal holiday recognized
269 by the state of Idaho as found in Idaho Code §73-108. The time in which any act required under this agreement is to be performed shall be computed by
270 excluding the date of execution and including the last day. The first day shall be the day after the date of execution. If the last day is a legal holiday, then the
271 time for performance shall be the next subsequent business day.
272

273 **28. CALENDAR DAYS:** A calendar day is herein defined as Monday through Sunday, midnight to midnight, in the local time zone where the subject real
274 PROPERTY is physically located. A calendar day shall include any legal holiday. The time in which any act required under this agreement is to be performed
275 shall be computed by excluding the date of execution and including the last day, thus the first day shall be the day after the date of execution. Any reference
276 to "day" or "days" in this agreement means the same as calendar day, unless specifically enumerated as a "business day."
277

278 **29. ATTORNEY'S FEES:** If either party initiates or defends any arbitration or legal action or proceedings which are in any way connected with this
279 Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney fees, including such costs and fees
280 on appeal.
281

282 **30. DEFAULT: If BUYER defaults** in the performance of this Agreement, SELLER has the option of: (1) accepting the Earnest Money as liquidated
283 damages or (2) pursuing any other lawful right and/or remedy to which SELLER may be entitled. If SELLER elects to proceed under (1), SELLER shall make
284 demand upon the holder of the Earnest Money, upon which demand said holder shall pay from the Earnest Money the costs incurred by SELLER'S Broker
285 on behalf of SELLER and BUYER related to the transaction, including, without limitation, the costs of title insurance, escrow fees, appraisal, credit report
286 fees, inspection fees and attorney's fees; and said holder shall pay any balance of the Earnest Money, one-half to SELLER and one-half to SELLER'S
287 Broker, provided that the amount to be paid to SELLER'S Broker shall not exceed the Broker's agreed-to commission. SELLER and BUYER specifically
288 acknowledge and agree that if SELLER elects to accept the Earnest Money as liquidated damages, such shall be SELLER'S sole and exclusive remedy, and
289 such shall not be considered a penalty or forfeiture. If SELLER elects to proceed under (2), the holder of the Earnest Money shall be entitled to pay the costs
290 incurred by SELLER'S Broker on behalf of SELLER and BUYER related to the transaction, including, without limitation, the costs of brokerage fee, title
291 insurance, escrow fees, appraisal, credit report fees, inspection fees and attorney's fees, with any balance of the Earnest Money to be held pending
292 resolution of the matter. **If SELLER defaults,** having approved said sale and fails to consummate the same as herein agreed, BUYER'S Earnest Money
293 deposit shall be returned to him/her and SELLER shall pay for the costs of title insurance, escrow fees, appraisals, credit report fees, inspection fees,
294 brokerage fees and attorney's fees, if any. This shall not be considered as a waiver by BUYER of any other lawful right or remedy to which BUYER may be
295 entitled.
296

297 **31. EARNEST MONEY DISPUTE / INTERPLEADER:** Notwithstanding any termination of this contract, BUYER and SELLER agree that in the event
298 of any controversy regarding the Earnest Money and things of value held by Broker or closing agency, unless mutual written instructions are received by the
299 holder of the Earnest Money and things of value, Broker or closing agency shall not be required to take any action but may await any proceeding, or at
300 Broker's or closing agency's option and sole discretion, may interplead all parties and deposit any monies or things of value into a court of competent
301 jurisdiction and shall recover court costs and reasonable attorney's fees.
302

303 **32. COUNTERPARTS:** This Agreement may be executed in counterparts. Executing an agreement in counterparts shall mean the signature of two
304 identical copies of the same agreement. Each identical copy of an agreement signed in counterparts is deemed to be an original, and all identical copies
305 shall together constitute one and the same instrument.
306

307 **33. "NOT APPLICABLE" DEFINED:** The letters "n/a," "N/A," "n.a.," and "N.A." as used herein are abbreviations of the term "not applicable." Where this
308 agreement uses the term "not applicable" or an abbreviation thereof, it shall be evidence that the parties have contemplated certain facts or conditions and
309 have determined that such facts or conditions do not apply to the agreement or transaction herein.

BUYER'S Initials (_____)(_____) Date 3/3/11          SELLER'S Initials (_____)(_____) Date 3-3-11

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the National Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. © Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

**JULY 2010 EDITION**                    RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT                    Page 6 of 7

PROPERTY ADDRESS: _____ 404 N Birch _____ Shoshone ___ ID#: 322011svpk-a

310 **34. SEVERABILITY:** In the case that any one or more of the provisions contained in this Agreement, or any application thereof, shall be invalid, illegal or
311 unenforceable in any respect, the validity, legality or enforceability of the remaining provisions shall not in any way be affected or impaired thereby.
312
313
314 **35. REPRESENTATION CONFIRMATION:** Check one (1) box in Section 1 and one (1) box in Section 2 below to confirm that in this transaction, the
315 brokerage(s) involved had the following relationship(s) with the BUYER(S) and SELLER(S).
316
317 Section 1:
318 ☒ A. The brokerage working with the BUYER(S) is acting as an AGENT for the BUYER(S).
319 ☐ B. The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S), without an ASSIGNED AGENT.
320 ☐ C. The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S) and has an ASSIGNED AGENT
321    acting solely on behalf of the BUYER(S).
322 ☐ D. The brokerage working with the BUYER(S) is acting as a NONAGENT for the BUYER(S).
323
324 Section 2:
325 ☒ A. The brokerage working with the SELLER(S) is acting as an AGENT for the SELLER(S).
326 ☐ B. The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S), without an ASSIGNED AGENT.
327 ☐ C. The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S) and has an ASSIGNED AGENT
328    acting solely on behalf of the SELLER(S).
329 ☐ D. The brokerage working with the SELLER(S) is acting as a NONAGENT for the SELLER(S).
330
331 Each party signing this document confirms that he has received, read and understood the Agency Disclosure Brochure adopted or approved by the Idaho
332 real estate commission and has consented to the relationship confirmed above. In addition, each party confirms that the brokerage's agency office policy
333 was made available for inspection and review. EACH PARTY UNDERSTANDS THAT HE IS A "CUSTOMER" AND IS NOT REPRESENTED BY A
334 BROKERAGE UNLESS THERE IS A SIGNED WRITTEN AGREEMENT FOR AGENCY REPRESENTATION.
335
336 **36. CLOSING:** On or before the closing date, BUYER and SELLER shall deposit with the closing agency all funds and instruments necessary to complete
337 this transaction. Closing means the date on which all documents are either recorded or accepted by an escrow agent and the sale proceeds are
338 available to SELLER. The closing shall be no later than (Date) _____ June 30, 2011 _____.
339
340 The parties agree that the CLOSING AGENCY for this transaction shall be _____ Land title _____
341
342 located at _____ Jerome Id _____.
343
344 If a long-term escrow / collection is involved, then the long-term escrow holder shall be _____ N/A _____.
345
346
347 **37. POSSESSION:** BUYER shall be entitled to possession ☒ upon closing or ☐ date _____ time _____ ☐ A.M. ☐ P.M. Property
348 taxes and water assessments (using the last available assessment as a basis), rents, interest and reserves, liens, encumbrances or obligations assumed,
349 fuel in fuel tank, and utilities shall be prorated as of _____ N/A _____.
350
351
352 **38. ASSIGNMENT:** This Agreement and any rights or interests created herein may be sold, transferred or otherwise assigned.
353
354
355 **39. ENTIRE AGREEMENT:** This Agreement contains the entire Agreement of the parties respecting the matters herein set forth and supersedes all prior
356 Agreements between the parties respecting such matters. No warranties, including, without limitation, any warranty of habitability, agreements or
357 representations not expressly set forth herein shall be binding upon either party.
358
359
360 **40. TIME IS OF THE ESSENCE IN THIS AGREEMENT.**
361
362
363 **41. AUTHORITY OF SIGNATORY:** If BUYER or SELLER is a corporation, partnership, trust, estate, or other entity, the person executing this
364 agreement on its behalf warrants his or her authority to do so and to bind BUYER or SELLER.
365
366
367 **42. ACCEPTANCE:** This offer is made subject to the acceptance of SELLER and BUYER on or before (Date) _____ March 7, 2011 _____ at (Local Time in
368 which PROPERTY is located) _____ 6:00 _____ ☐ A.M. ☒ P.M. If acceptance of this Agreement is not received within the time specified, the offer is
369 withdrawn and the entire Earnest Money, if any, shall be refunded to BUYER on demand.


BUYER'S Initials _____ ) Date 3/3/11          SELLER'S Initials _____ ) Date 3-3-11

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
National Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. © Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

04/16/2008   05:39   2088862200                    SUN VALLEY PROP.                    PAGE   08/10

**JULY 2010 EDITION**                    RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT                    Page 7 of 7

PROPERTY ADDRESS: _____ 404 N Birch _____ Shoshone _____ ID#: 322011svpk-a

370 **43. BUYER'S SIGNATURES:**
371
372 ☐ **SEE ATTACHED BUYER'S ADDENDUM(S):** _____ (Specify number of BUYER addendum(s) attached.)
373
374 BUYER ☐ does ☒ does not currently hold an active Idaho real estate license.
375
376 **BUYER Signature** _Irish Wiltbeck_                    **BUYER (Print Name)** _IRISH WILTBECK_
377
378 Date _March 3, 2011_ Time _12:25_ ☐ A.M. ☒ P.M.    Phone # ▮▮▮▮▮  Cell # ▮▮▮▮▮
379
380 Address _404 N. BIRCH ST._                          City _SHOSHONE_ State _ID_ Zip _83352_
381
382 E-Mail ▮▮▮▮▮▮▮▮▮▮                                   Fax # ▮▮▮▮▮
383
384
385 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
386 BUYER ☐ does ☐ does not currently hold an active Idaho real estate license.
387
388 **BUYER Signature** _____                           **BUYER (Print Name)** _____
389
390 Date _____ Time _____ ☐ A.M. ☐ P.M.               Phone # _____ Cell # _____
391
392 Address _____                                      City _____ State _____ Zip _____
393
394 E-Mail _____                                       Fax # _____
395
396
397
398
399 **44. SELLER'S SIGNATURES:** On this date, I/We hereby approve and accept the transaction set forth in the above Agreement and agree to carry out all
400 the terms thereof on the part of the SELLER.
401
402 ☐ **SIGNATURE(S) SUBJECT TO ATTACHED COUNTER OFFER**
403 ☐ **SIGNATURE(S) SUBJECT TO ATTACHED ADDENDUM(S) #** _____
404
405 SELLER ☐ does ☒ does not currently hold an active Idaho real estate license.
406
407 **SELLER Signature** _____                          **SELLER (Print Name)** _LON E. MONTGOMERY, PRES_
408
409 Date _3-3-11_ Time _3:15_ ☐ A.M. ☒ P.M.             Phone # ▮▮▮▮▮  Cell # ▮▮▮▮▮
410
411 Address _P.O. Box 2292_                              City _T.F._ State _ID_ Zip _83303_
412
413 E-Mail ▮▮▮▮▮▮▮▮▮▮                                    Fax # ▮▮▮▮▮
414
415 **CONTRACTOR REGISTRATION # (if applicable)** _____
416
417
418
419 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
420 SELLER ☐ does ☐ does not currently hold an active Idaho real estate license.
421
422 **SELLER Signature** _____                          **SELLER (Print Name)** _____
423
424 Date _____ Time _____ ☐ A.M. ☐ P.M.               Phone # _____ Cell # _____
425
426 Address _____                                      City _____ State _____ Zip _____
427
428 E-Mail _____                                       Fax # _____
429
**CONTRACTOR REGISTRATION # (if applicable)** _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
National Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. © Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

**JULY 2010 EDITION**                    RE-21 REAL ESTATE PURCHASE AND SALE AGREEMENT                    Page 7 of 7

Printed Using Professional Computer Forms Co. On-Line Forms Software 7716

04/16/2008  05:39   2088862200          SUN VALLEY PROP.                    PAGE  09/10



**ADDENDUM #** _____2_____  (All addendums shall be numbered sequentially.)      JULY 2011 EDITION
**RE-11 ADDENDUM**                                                               Page 1 of 1

Idaho Association of REALTORS®   THIS IS A LEGALLY BINDING CONTRACT, READ THE ENTIRE DOCUMENT, INCLUDING ANY ATTACHMENTS.
*The Voice for Real Estate™ in Idaho*   IF YOU HAVE ANY QUESTIONS, CONSULT YOUR ATTORNEY AND/OR ACCOUNTANT BEFORE SIGNING.

1  Date: _____ August 9, 2011 _____
2
3  This is an **ADDENDUM** to the  ☒ Purchase and Sale Agreement  ☐ Other _____
4  ("Addendum" means that the information below is added material for the agreement {such as lists or descriptions} and/or means the form is
5  being used to change, correct or revise the agreement {such as modification, addition or deletion of a term}).
6
7  **AGREEMENT DATED:** _____ March 2,2011 _____    ID # _____ 322011svpk _____
8
9  **ADDRESS:** _____ 404 N Birch st _____
10
11 **BUYER(S):** _____ Irish Whitbeck _____
12
13 **SELLER(S):** _____ Leed Corp _____
14
15 The undersigned parties hereby agree as follows:
16 Change proposed closing date to, on or before December 30, 2011
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48 To the extent the terms of this ADDENDUM modify or conflict with any provisions of the Purchase and Sale Agreement including all prior
49 Addendums or Counter Offers, these terms shall control. **All other terms of the Purchase and Sale Agreement including all prior**
50 **Addendums or Counter Offers not modified by this ADDENDUM shall remain the same. Upon its execution by both parties, this agreement**
51 is made an integral part of the aforementioned Agreement.
52
53
54 BUYER: _Irish Whitbeck_                                Date: _8-18-11_
55
56 BUYER: _____              Date: _____
57
58 SELLER: _Z.J. _____                         Date: _8-10-11_
59
60
61 SELLER: _____             Date: _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
National Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. © Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

**JULY 2011 EDITION**                        **RE-11 ADDENDUM**                        Page 1 of 1

Printed Using Professional Computer Forms Co. On-Line Forms Software 7/10

| ADDENDUM # _____ 3 _____ (All addendums shall be numbered sequentially.) | JULY 2011 EDITION Page 1 of 1 |
|---|---|

**RE-11 ADDENDUM**

Idaho Association of REALTORS®
The Voice for Real Estate in Idaho

THIS IS A LEGALLY BINDING CONTRACT. READ THE ENTIRE DOCUMENT, INCLUDING ANY ATTACHMENTS.
IF YOU HAVE ANY QUESTIONS, CONSULT YOUR ATTORNEY AND/OR ACCOUNTANT BEFORE SIGNING.

1  Date: _____ September 28, 2011 _____

3  This is an **ADDENDUM** to the  ☒ Purchase and Sale Agreement  ☐ Other _____
4  ("Addendum" means that the information below is added material for the agreement (such as lists or descriptions) and/or means the form is
5  being used to change, correct or revise the agreement (such as modification, addition or deletion of a term)).

7  AGREEMENT DATED: _____ MARCH 2, 2011 _____ ID # _____ 322011svpk-a _____

9  ADDRESS: _____ 404 N Birch St. Shoshone Id. _____

11  BUYER(S): _____ Irish Witbeck WITBECK (JW) _____

13  SELLER(S): _____ Lead Corp. _____

15  The undersigned parties hereby agree as follows:
16  Change closing date to october 17, 2011

48  To the extent the terms of this ADDENDUM modify or conflict with any provisions of the Purchase and Sale Agreement including all prior
49  Addendums or Counter Offers, these terms shall control. All other terms of the Purchase and Sale Agreement including all prior
50  Addendums or Counter Offers not modified by this ADDENDUM shall remain the same. Upon its execution by both parties, this agreement
51  is made an integral part of the aforementioned Agreement.

54  BUYER: _Irish Witbeck_____  Date: _9-29-11___

56  BUYER: _____  Date: _____

59  SELLER: _____, Pres  Date: _9-29-11___

61  SELLER: _____  Date: _____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the National Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. © Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

JULY 2011 EDITION  RE-11 ADDENDUM  Page 1 of 1

Printed Using Professional Computer Forms Co. On-Line Forms Software 7/10

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 10-40743 JDP |
| LEED CORPORATION (THE), | Chapter 11 |
| Debtor. | |

### ORDER GRANTING MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS

Debtor's Motion for Authority Sell Property Free and Clear of Liens and Interests came before the Court for hearing. No objections had been previously filed. The Debtor appeared through Steven L. Taggart There were no objections. The Court having been fully advised, and good cause appearing,

NOW THEREFORE THIS COURT HEREBY ORDERS THAT:

1.    The Debtor is hereby authorized and directed pursuant to this Order (the "Sale Order) to sell the following real and personal property to Irish Witbeck ("Purchaser") in accordance with the Idaho RE-21 Real Estate Purchase and Sale Agreement and any addendums thereto (collectively the "Purchase Agreement") which Purchase Agreement is hereby authorized and approved in all respects, and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the Purchase Agreement and the sale of the following real and personal property (collectively, the "Property"):

| *Property Description* | *Amount of Purchase Price* |
|---|---|
| 404 N. Birch Street | 95,000.00 |
| Shoshone, ID  83352 | |
| *Including fixtures and items noted in* | |
| *Paragraph 5(A) in the Real Estate* | |
| *Purchase and Sale Agreement, namely* | |

Exhibit "B"
Proposed Order

*the hood fan, dishwasher & stove.*

|  | Total | 95,000.00 |
|---|---|---|

2.      Subject to the payment of the sale price, the sale shall constitute a legal, valid and effective transfer of the Property and shall vest the Purchaser with all right, title and interest of the seller in and to the Property.  Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Property shall be free and clear of all liens, claims and interests and all liabilities of the seller whether known or unknown, including, but not limited to, liens, claims and interests asserted by any of the seller's creditors, vendors, suppliers, employees, executory contract counterparties, governmental units or lessors. The Purchaser shall not be liable in any way (as successor entity or otherwise) for any claims that any of the foregoing parties or any other third party may have against the seller.  Any and all valid and enforceable liens, claims and interests on, against or in the property shall be transferred, affixed and attached to any net proceeds of the sale with the same validity, priority, force and effect such liens, claims and interests had on the property immediately prior to the sale and subject to the rights, claims, defenses and objections, if any, of the seller and all interested parties with respect to any such asserted liens, claims and interests.   After the closing date, no person, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect liens or a security interest against any of the Property as to liabilities of the seller, or (b) collect or attempt to collect from the Purchaser, any tax (or other amount alleged to be owing by the seller) (i) for any period commencing before and concluding prior to or on the closing date or (ii) assessed prior to and payable after the closing date.

3.      Such authorized sale shall be for cash or cash equivalent at the time of closing.  The total sale price, including attribution of sale proceeds shall be as follows:

| *Property Description* | *Amount of Purchase Price* |
|---|---|
| 404 N. Birch Street | 95,000.00 |
| Shoshone, ID 83352 | |
| *Including fixtures and items noted in* | |
| *Paragraph 5(A)in the Real Estate* | |
| *Purchase and Sale Agreement, namely* | |
| *the hood fan, dishwasher & stove.* | |

4.      At the time of closing, Debtor is authorized to pay $4,000 towards buyer closing costs, the closing escrow fee, and the owner's title policy.

5.      Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the sale is authorized and approved in all respects.

6.      If any person that has filed any financing statement, mortgage, mechanic's lien, *lis pendens* or other document or instrument evidencing liens with respect to any of the Property shall have failed to deliver to the seller and the Purchaser prior to the closing of the Purchase Agreement, in proper form for filing and executed by the appropriate entity or entities, termination statements, instruments of satisfaction and releases of all liens, claims and interests which such Person has with respect to the Property, then (i) the seller is authorized to execute and file such statements, instruments, releases and other documents on behalf of such person, and (ii) the Purchaser is authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims and interests in the Property as of the closing date.

7.      This Sale Order (a) is and shall be effective as a determination that all claims and interests existing as to the property conveyed to the Purchasers have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) is and shall be binding upon and govern the acts of all entities,

including, all filing agents, filing officers, title agents, title companies, recorders of

mortgages, recorders of deeds, registrars of deeds, administrative agencies or units,

governmental departments or units, secretaries of state, federal, state and local officials

and all other persons who may be required by operation of law, the duties of their office

or contract, to accept, file, register or otherwise record or release any documents or

instruments, or who may be required to report or insure any title or state of title in or to

any of the property conveyed to the purchasers.  Each and every federal, state and local

governmental agency or department is hereby directed to accept any and all documents

and instruments necessary and appropriate to consummate the transactions contemplated

by the Purchase Agreement and this Sale Order

8.    The Purchaser is a good faith purchaser entitled to the benefits and

protections afforded by section 363(m) of the Bankruptcy); accordingly, the reversal,

modification on appeal or vacatur by subsequent order of the Court of the authorization

provided herein to consummate the sale of the Property shall not affect the validity of the

sale of the Property.

9.    The consideration provided by the Purchaser for the property under the

Purchase Agreement is fair and reasonable and shall be deemed for all purposes to

constitute a transfer for reasonably equivalent value and fair consideration under the

Bankruptcy Code and any other applicable law, and the sale may not be avoided under

section 363(n) of the Bankruptcy Code.

10.    The Purchase Agreement and the other sale documents or other related

instruments may be modified, amended or supplemented by the parties thereto, in a

writing signed by such parties, in accordance with the terms thereof without further order

of the Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the seller's estate.

11.     This Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the stay of (i) orders authorizing the sale, use or lease of property of the estate, as set forth in Bankruptcy Rule 6004(h); (ii) orders authorizing the assignment of an executory contract or unexpired lease, as set forth in Bankruptcy Rule 6006(d); and (iii) proceedings to enforce a judgment, as set forth in Bankruptcy Rule 7062, or otherwise shall not apply to this Sale Order.

Submitted by:
MAYNES TAGGART, PLLC
*/s/ Robert J. Maynes*
Debtor's counsel